**SHAWN THOMAS MEERKAMPER** (CA Bar No. 296964)
Transgender Law Center
P.O. Box 70976
Oakland, CA, 94612
Phone: (510) 587-9696, ext. 303
Fax: (510) 587-9699
shawn@transgenderlawcenter.org

**R. ANDREW FREE\*** (TN Bar No. 30513)
Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
Phone: (844) 321-3221
Fax: (615) 829-8959
Andrew@ImmigrantCivilRights.com
\* *Pro hac vice admission application forthcoming*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRANSGENDER LAW CENTER, and JOLENE K. YOUNGERS, as personal administrator for the wrongful death estate of Roxsana Hernandez,<br><br>    *Plaintiffs,*<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; OFFICE FOR CIVIL RIGHTS AND CIVIL LIBERTIES – UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>    *Defendants.* | Civil Action No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Complaint for Declaratory and Injunctive Relief
*Transgender Law Center et al. v. U.S. Immigration & Customs Enforcement*, Case No. _____

1

## **PRELIMINARY STATEMENT**

1. Roxsana Hernandez[1] (hereinafter "Roxsana") was a 33-year-old woman, who died in U.S. Immigration and Customs Enforcement (hereinafter "ICE") custody on May 25, 2018, two weeks after entering the United States. As a woman of transgender[2] experience, Roxsana fled the persecution she faced in her home country of Honduras and in Mexico during her journey to the United States.

2. On May 9, 2018, Roxsana entered into the U.S. and was taken into U.S. Customs and Border Protection (hereinafter "CBP") custody with several other transgender asylum seekers.

3. During the week that followed, Roxsana's health deteriorated rapidly. She frequently coughed and spat up bloody phlegm, vomited, and suffered from diarrhea, persistent fever, and severe weight loss.

4. Roxsana and the other transgender women were transported to a variety of holding, processing, and detention centers before arriving at Cibola Detention center the evening of May 16, 2018.

---

[1] Roxsana Hernandez's legal name was "Roy Alexander Hernandez Rodriguez" AKA "Jeffry Hernandez." However, she assumed the name of "Roxsana" and feminine titles and pronouns to better reflect her true gender. As such, this complaint, likewise, uses feminine titles and pronouns in reference to Roxsana.

[2] "Transgender" is an adjective that refers to a person whose gender does not correspond with the sex assigned at birth. For example, a transgender woman has the persistent internal sense that she is a woman despite being assigned the sex of "male" at birth. Prevailing medical and social science literature and research indicates that supporting transgender people to live authentically in accordance with their gender identity is critical to improving health and quality of life outcomes and to alleviate the symptoms of Gender Dysphoria, a diagnosis recognized by the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 5th edition, that many transgender people live with. *See, e.g.*, Cecilia Dhejne et al., *Mental Health and Gender Dysphoria: A review of the literature*, 28 International Review of Psychiatry 44 (2016) (finding that access to transition-related care results in reduction of dysphoria and improved psychological health outcomes); Annelou de Vries et al., *Young Adult Psychological Outcome After Puberty Suppression and Gender Reassignment*, 134 Pediatrics 696 (2014). Transgender people face pervasive and disproportionately high rates of violence and abuse globally. *See, e.g.*, Sandy E. James et al., National Center for Transgender Equality, The Report of the 2015 Transgender Survey (2016), *available at* https://www.transequality.org/sites/default/files/docs/USTS-Full-Report-FINAL.PDF (finding transgender people in the U.S. face disproportionately high rates of violence and discrimination, economic and housing insecurity, and criminalization).

5. Throughout their journey, the transgender asylum seekers, including Roxsana, were given little food, water, or opportunity to sleep.

6. On several occasions Roxsana and her cohort were denied access to the restroom for hours at a time, in one instance, for approximately seven hours during transport.

7. Roxsana disclosed to Department of Homeland Security ("DHS") officials no later than May 11, 2018 that she was living with untreated HIV and experiencing significant illness including cough and fever.

8. Despite repeated requests for medical attention, however, Roxsana did not receive vital medical care until May 17, 2018. This intervention came too late.

9. Roxsana died in the hospital during the early morning of May 25, 2018.

10. Her death caused widespread public outcry, inducing inquiries into the deficiencies in medical care and other basic necessities provided to those in ICE and CBP custody, and demands for accountability by ICE. [3]

11. This case is about Defendants' unlawful refusal to release agency records about Roxsana while in ICE and CBP custody in response to the Freedom of Information Act ("FOIA") requests Plaintiffs sent them on January 29 and February 5, 2019, respectively. To date, Defendants have not released any of the requested information.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over Plaintiffs' FOIA claims pursuant to 28 U.S.C. § 1331 (federal question) and 5 U.S.C. § 552(a)(4)(B) (FOIA). Plaintiffs' request for declaratory and other relief is properly subject to this Court's subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201(a), and 2202.

---

[3] *See, e.g.*, Associated Press, *3 U.S. Senators Request Reports on Death of Transgender Migrant in ICE Custody* (Dec. 6, 2018), https://ktla.com/2018/12/06/3-u-s-senators-request-reports-on-death-of-transgender-migrant-in-ice-custody (last visited May 30, 2019).

Complaint for Declaratory and Injunctive Relief
*Transgender Law Center, et al. v ICE, et al.*                3

13.     Venue is proper within this District under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(b)(1), (b)(2), and (e)(1) as Plaintiff, the Transgender Law Center, maintains its principal place of business, in Oakland, California.

**PARTIES**

14.     Plaintiff TRANSGENDER LAW CENTER ("TLC") is a 501(c)(3) organization with its headquarters in Oakland, California. TLC is the largest national organization led by and for transgender and gender non-conforming people advocating for the self-determination of all people utilizing legal, policy, and organizing strategies to keep transgender and gender nonconforming people alive, thriving, and fighting for liberation. TLC has been involved with migrant justice work through its programs, including the Black LGBTQIA+ Migrant Project and formerly, through its Trans Immigrant Defense Effort ("TIDE").[4] TLC staff travelled to the U.S.—Mexico border during Spring of 2018 to support the transgender asylum seekers when Roxsana and several other transgender women who sought asylum awaited entry to the U.S. from Tijuana. After Roxsana's untimely death, TLC staff visited her family in Honduras and were retained, along with the Law Office of R. Andrew Free, to represent Roxsana's three surviving siblings in an investigation into potential wrongdoing against ICE, its contractors, and the hospitals and providers who failed to adequately treat Roxsana. TLC recently organized a Congressional Briefing in Washington, DC to educate Members of Congress on issues facing LGBT migrants.

15.     In January and February of this year, Transgender Law Center submitted two requests pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, to each defendant on behalf of itself, three of Roxsana's surviving siblings, and the estate of Roxsana

---

[4] *See, e.g.,* Anna Castro, *Congressional Briefing: Centering LGBTQ Migrants* (May 16, 2019), https://transgenderlawcenter.org/archives/14538 (last visited May 30, 2019); Transgender Law Center, *Advocates Brief Congress on Trans Migrant Experience, Rally for #JusticeforRoxsana* (May 23, 2019), https://transgenderlawcenter.org/archives/14553 (last visited May 30, 2019).

Hernandez. *See* FOIA Requests annexed hereto as **Exhibits A & B**. The information requested from, and withheld by, Defendants, is critical to understanding what happened to Roxsana during the final two weeks of her life.[5]

16. As such, TLC has an interest in the circumstances surrounding Roxsana's death both because of its mission to advance the rights of transgender people, including those who are migrants, and, because TLC is retained counsel for the wrongful death suit. Further, TLC staff regularly speak at law schools and conferences around the country regarding issues connected to LGBT migration and asylum, and TLC authors resources connected to these issues that are disseminated nationwide.

17. Plaintiff, JOLENE K. YOUNGERS is the appointed personal representative of Roxsana's wrongful death estate. *See* Order Appointing Jolene K. Youngers as Personal Representative of Roxsana Hernandez's Wrongful Death Estate annexed hereto as **Exhibit C**. The authorization and releases executed by Ms. Youngers in that capacity allowed Plaintiffs to make the FOIA requests from defendants. *See* **Exhibits A & B**.

18. Plaintiffs have constructively exhausted all non-futile administrative remedies.

19. Defendant U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE") is an executive agency component of the U.S. Department of Homeland Security and an "agency" within the meaning of 5 U.S.C. § 552(f)(1).

20. Defendant OFFICE OF CIVIL RIGHTS AND CIVIL LIBERTIES ("CRCL"), is an executive agency component of the U.S. Department of Homeland Security and an "agency" within the meaning of 5 U.S.C. § 552(f)(1).

---

[5] During the summer of 2018, Plaintiffs submitted a FOIA request to CBP. The agency responded with limited records, and Plaintiffs are currently exhausting administrative remedies on that request.

Complaint for Declaratory and Injunctive Relief
*Transgender Law Center, et al. v ICE, et al.*         5

21. Defendant DEPARTMENT OF HOMELAND SECURITY is an executive agency and an "agency" within the meaning of 5 U.S.C. § 552(f)(1).

**FACTS**

**A. Roxsana's Rapid Health Decline and ICE's Failure to Provide Timely or Adequate Medical Care**

22. During the time Roxsana was in CBP and ICE custody her health rapidly deteriorated according to her medical records and as corroborated by interviews with several other transgender asylum seekers who were detained with her.

23. When Roxsana entered CBP custody in San Ysidro, California on May 9, 2018, she was held in what is colloquially known as the "Hielera" (translated by CBP and migrants alike as "Ice Box") because of its infamously cold temperatures.[6]

24. While in the Ice Box, a cough Roxsana had developed worsened, as did her other flu-like symptoms including excessive nasal drainage and vomiting.

25. She and other asylum seekers repeatedly requested medical attention for Roxsana and plead with officials to reduce the unbearably cold air conditioning where they were being held.

26. It was only after other transgender asylum seekers went on a lunch strike that CBP officials responded to their requests for medical attention and took Roxsana to Scripps Medical Center in Chula Vista, California on May 11, 2018.

27. There, Roxsana disclosed that she was living with untreated HIV. While the staff at Scripps noted her HIV positive status and indicated that she needed medicine to treat it—both of which are reflected in their medical records—they did not provide her such treatment and simply

---

[6] *See, e.g., Doe v. Kelly,* 878 F.3d 710, 721 (9th Cir. 2017).

Complaint for Declaratory and Injunctive Relief
*Transgender Law Center, et al. v ICE, et al.*                                    6

cleared her as likely negative for Tuberculosis, permitting her detention. Neither CBP nor ICE provided the critical HIV treatment Roxsana needed either.

28. ICE failed to document Roxsana's visit to the Scripps Emergency Department—and the medical advice provided by physicians there—in its "detainee death report." *See* ICE detainee death report, attached hereto as **Exhibit D**.

29. Instead, ICE took custody of Roxsana and denied her any meaningful medical care for almost another week. When she finally received treatment, her illness was significantly more advanced, impeding meaningful, effective intervention by infectious disease clinicians and other specialists. She died days later.

30. During that critical week, ICE and its contractors shuffled Roxsana to several different facilities along with other transgender asylum seekers with little food, water, or sleep and sporadic restroom access.

31. ICE transported Roxsana from San Ysidro, California to a processing center in San Luis, Arizona, then to El Paso, Texas, and finally to Cibola detention center.

32. Throughout her journey, Roxsana came into contact with many ICE and CBP officials and contractors charged with her custody, transportation, care, and safekeeping.

33. All of these officials and contractors were subject to federal government policies and procedures, contracts, and corporate policies governing the health care of individuals in ICE transport and temporary custody.

34. However, none of the officials Roxsana encountered after leaving San Ysidro and before arriving in Cibola, New Mexico followed these binding, non-discretionary policies requiring them to seek immediate medical aid on her behalf.

35. In fact, despite Roxsana's obvious signs of medical distress, including being despondent on the ground at one point, and multiple pleas from other asylum seekers for medical

attention to several different officials they encountered, no medical care—other than the cursory visit to Scripps—was provided until the morning after they arrived at Cibola Detention Center in rural New Mexico (hereinafter "Cibola") on May 17, 2018.

36. At this point, Roxsana was so weak she needed the assistance of others to walk and sit because she could not support her own weight. These events were reported by multiple other asylum seekers detained with Roxsana.

37. When Roxsana finally saw a nurse at Cibola the morning of May 17, she was tachycardic (exhibiting an abnormally rapid heart rate), dehydrated, and malnourished, weighing a mere eighty-nine pounds.

38. She had a fever, dangerously low blood pressure, and sepsis, (a serious condition resulting from the presence of harmful microorganisms in the blood or other tissues and the body's response to their presence, potentially leading to the malfunctioning of various organs, shock, and death) as noted in her medical records.

39. Roxsana was taken to Cibola General Hospital's Emergency Room. Later that day she was airlifted to Lovelace Medical Center in Albuquerque, New Mexico because she was too fragile to be transported by ground.

40. Roxsana was subsequently transported and admitted to the intensive care unit at Lovelace. Despite several medical interventions including intravenous antibiotics and fluids, she died during the early morning of May 25, 2018.

**B. Significant Public Interest and Outcry About Roxsana's Untimely Death**

41. Roxsana's death drew significant media attention and caused public outcry. Since her death was made public, at least 1,336 news articles have referenced her story in America and across the globe.

42. On August 27, 2018, a coalition of migrant justice activists protested Roxsana's death, demanded accountability from ICE, and shut down an intersection in Albuquerque, New Mexico.[7]

43. On November 26, 2018, TLC and the Law Office of R. Andrew Free held a press conference announcing the filing of an administrative wrongful death claim notice against Cibola County, New Mexico, and discussing the initial findings of an independent, preliminary autopsy.[8]

44. Since the press conference alone, TLC has noted over a thousand news articles that discuss Roxsana's death.

45. In response TLC continues to receive multiple requests for interviews on the subject.

46. The news articles cover a variety of aspects surrounding Roxsana's death, including findings of the independent preliminary autopsy;[9] the New Mexico Office of the Medical Investigator's ("OMI") failure to release its own autopsy report until almost a year after her death;[10] ICE's failure to timely issue a detainee death review within 90 days of her death as required by Congress;[11] and the poor conditions in immigration detention, including lack of adequate food and water and access to the bathroom, among other apparent injustices by government actors.[12]

---

[7] Arielle Lucier, *Queer and Trans Migrants Shut Down Intersection in Albuquerque for Three Hours,* (Aug. 27, 2018), https://transgenderlawcenter.org/archives/14348 (last visited May 30, 2019).
[8] Transgender Law Center, Justice for Roxsana: Announcing Legal Action To Hold Government Accountable for Transgender Asylum-Seeker's Death (Nov. 26, 2018), https://transgenderlawcenter.org/archives/14407 (last visited May 30, 2019).
[9] CBS News, *Transgender ICE Detainee Was Beaten Before Death, An Autopsy Finds* (Nov. 29, 2019, updated Dec. 12, 2018), https://www.10tv.com/article/transgender-ice-detainee-was-beaten-death-autopsy-finds (last visited May 30, 2019).
[10] *See, e.g.*, Associated Press, *3 U.S. Senators Request Reports on Death of Transgender Migrant in ICE Custody*. (Dec. 6, 2018), https://ktla.com/2018/12/06/3-u-s-senators-request-reports-on-death-of-transgender-migrant-in-ice-custody (last visited May 30, 2019).
[11] *See, e.g.*, National Immigrant Justice Center, *ICE Releases Sham Immigrant Death Reports As it Dodges Accountability and Flouts Congressional Requirements* (Dec. 19, 2018), https://immigrantjustice.org/press-releases/ice-releases-sham-immigrant-death-reports-it-dodges-accountability-and-flouts (last visited May 30, 2019).
[12] *See, e.g.*,. Kate Sosin, *ICE Is Refusing To Release A Legally Mandated Review Of Roxsana Hernandez's Death,* INTO (Nov. 28, 2018), https://www.intomore.com/impact/ice-is-refusing-to-release-a-legally-mandated-review-of-roxsana-hernandezs-death (last visited May 30, 2019).

47.     Since OMI released its autopsy report, news articles have discussed its findings including that Roxsana died from HIV related complications, and that ICE failed to provide her with antiretroviral treatment as mandated by its own detention standards.[13]

48.     Unfortunately, Roxsana's life was not the only one lost because of severely inadequate medical care in ICE and CBP detention facilities.

49.     According to a report by Human Rights Watch, more people died in ICE detention in fiscal year 2017 than any since 2009, due to "dangerously inadequate" care.[14]

50.     The report identifies three systemic failures in the provision medical care from these deaths, namely (1) unreasonable delays in the provision of care, (2) poor practitioner and nursing care, and (3) botched emergency responses.[15]

51.     A recent report by the Department of Homeland Security Office of Inspector General found that ICE maintains abysmal oversight of detention facilities without meaningful ability to correct violations, even when they present serious health risks.[16]

52.     Given ICE's widely reported atrocities it is unsurprising that Roxsana's death is discussed in several of the aforementioned news articles as one horrifying example of a larger systemic breakdown.

53.     This context is also the reason that Roxsana's case is a significant part of a broader effort to prevent additional deaths under ICE's watch.

---

[13] *See, e.g.*, Tim Fitzsimons, *Transgender ICE Detainee Died from AIDS*, NBC News (April 17, 2019), https://www.msn.com/en-us/news/us/transgender-ice-detainee-died-from-aids/ar-BBW2nYM (last visited May 30, 2019).
[14] Human Rights Watch, *Code Red: The Fatal Consequences of Dangerously Substandard Medical Care In Immigration Detention* (Jan. 20, 2108), https://www.hrw.org/report/2018/06/20/code-red/fatal-consequences-dangerously-substandard-medical-care-immigration (last visited May 30, 2019).
[15] *Id.*
[16] Department of Homeland Security Office of Inspector General, *ICE Does Not Fully Use Contracting Tools To Hold Detention Facility Contractors Accountable For Failing To Meet Performance Standards*, OIG 19-18 (Jan. 29. 2019), *available at* https://www.oig.dhs.gov/sites/default/files/assets/2019-02/OIG-19-18-Jan19.pdf (last visited May 30, 2019).

**C. Defendants' Unlawful Withholdings in Response to Plaintiffs' FOIA Requests**

54.     Despite the public outcry, Defendants have failed entirely to search for and release agency records about the death of Roxsana.

55.     First, ICE violated a congressionally-mandated deadline to publish Roxsana's detainee death review until almost four months after it was required to be released under law.[17]

56.     After initially claiming that its public announcement of her death *was* the congressionally required detainee death review, and under tremendous public pressure, ICE published a host of death "reviews," including one regarding Roxsana, that bear no resemblance to any detainee death review ICE has ever released.  *See* **Exhibit D**.

57.     Notably, despite including a section entitled "Medical History" that includes several specific medical conditions Roxsana experienced as well as the medical treatment she received during her last days, ICE's two page detainee death review completely omits any mention of the cursory visit to Scripps Medical Center on May 11, 2018, two weeks before Roxsana's death, where she was not provided necessary treatment despite exhibiting signs of serious illness. *See* **Exhibit D**.

58.     On January 29, 2019, Plaintiffs submitted a FOIA request to Defendant ICE for, *inter alia*, any and all documents within its possession pertaining to Roxsana including several search terms. *See* ICE FOIA Request, attached hereto as **Exhibit A**.

59.     On April 19, 2019, Plaintiffs received an acknowledgment letter from ICE, almost three months after the request was submitted, and assigned it tracking number 2019-HQFO-00384. *See* DHS Acknowledgement attached hereto as **Exhibit E**. To date Plaintiffs have not received any records responsive to their requests.

---

[17] *See, e.g.,* Kate Sosin, ICE is refusing to Release A Legally Mandated Review of Roxsana Hernandez's Death, INTO (Nov. 28, 2018), *available at* https://www.intomore.com/impact/ice-is-refusing-to-release-a-legally-mandated-review-of-roxsana-hernandezs-death (last visited May 30, 2019).

60.     On February 5, 2019, Plaintiffs submitted a FOIA request to Defendant DHS Office of Civil Rights and Civil Liberties for, *inter alia,* any and all investigations into the circumstances surrounding the death of Roxsana. *See* CRCL FOIA Request, annexed hereto as **Exhibit B**.

61.     To date, Plaintiffs have received no response or acknowledgment from Defendant DHS Office of Civil Rights and Civil Liberties to their request.

### CLAIMS FOR RELIEF

**COUNT ONE: VIOLATION OF THE FREEDOM OF INFORMATION ACT**
**5 U.S.C. § 552(a)(4)(B)**
**Plaintiffs v. ICE**

62.     Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs.

63.     Plaintiffs have a legal right under FOIA to timely search and release of responsive, non-exempt agency records responsive to their January 29, 2019, FOIA request. *See* **Exhibit A**.

64.     No legal basis exists for ICE's failure to search for and release responsive agency records in compliance with FOIA's time limits.

65.     ICE's failure to initiate an adequate search and substantively respond to Plaintiffs' request within the timeframe allowed by law violates Plaintiffs' rights under FOIA.

66.     ICE's failure to make reasonable and timely efforts to search for and release responsive agency records constitutes an unlawful withholding under the Act that this Court can and should remedy through declaration and injunction.

67.     Because ICE has failed to comply with the Act's time limits, plaintiffs have constructively exhausted their administrative remedies.

**COUNT TWO: VIOLATION OF THE FREEDOM OF INFORMATION ACT**
**5 U.S.C. § 552(a)(4)(B)**
**PLAINTIFFS V.  DHS CRCL**

68. Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs.

69. Plaintiffs have a legal right under FOIA to timely search and release of responsive, non-exempt agency records responsive to their February 5, 2019 FOIA request. *See* **Exhibit B**.

70. No legal basis exists for Defendants DHS and DHS Office of Civil Rights and Civil Liberties' failure to search for and release responsive agency records in compliance with FOIA's time limits.

71. Defendants' failure to make reasonable and timely efforts to search for and release responsive agency records constitutes an unlawful withholding under the Act that this Court can and should remedy through declaration and injunction.

72. Because Defendants have failed to comply with the Act's time limits, plaintiffs have constructively exhausted their administrative remedies.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court:

1. Enter judgment in favor of Plaintiffs and against all Defendants.

2. Order Defendants to process Plaintiffs' FOIA request expeditiously in accordance with 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e).

3. Declare Defendants' withholdings under the FOIA unlawful and enjoin these unlawful withholdings.

4. Order Defendants to conduct a prompt and adequate search for all responsive records, determine which, if any portions of such records are exempt, and require Defendants to release the remaining portions of these agency records.

5. Award Plaintiffs' reasonable costs and attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412(d)(1)(A).

6. Award Plaintiffs such further relief as the Court deems just, equitable, and appropriate.

Date: May 31, 2019                                      Respectfully submitted,

/s/ Shawn Thomas Meerkamper
Shawn Thomas Meerkamper
    (CA Bar No. 296964)
Transgender Law Center
P.O. Box 70976
Oakland, CA, 94612
Phone: (510) 587-9696, ext. 303
Fax: (510) 587-9699
shawn@transgenderlawcenter.org

*Counsel for the Plaintiffs*