# EXHIBIT A

**United States Senate**
WASHINGTON, DC 20510

October 31, 2019

The Honorable William Barr
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

Dear Attorney General Barr:

We write to request the appointment of a special counsel to investigate whether Department of Homeland Security (DHS) officials complied with applicable law and regulation when DHS failed to preserve surveillance footage relating to the death of Roxsana Hernandez[1] in U.S. custody.[2] Justice Department regulations require the appointment of a special counsel under specified circumstances. All of those requirements are met in connection with the requested investigation. We therefore request the prompt appointment of a special counsel to investigate why evidence that is critical to identifying any wrongdoing by DHS officials may have been destroyed.

Roxsana Hernandez was a Honduran transgender woman who entered the United States at the San Ysidro Port of Entry in California on May 9, 2018. She was held by U.S. Customs and Border Protection (CBP) in California until May 13, when she was transferred to Immigration and Customs Enforcement (ICE) custody at San Luis Regional Detention Center in Yuma, Arizona. On May 15, she was again transferred to an ICE Processing Center in El Paso, Texas. On May 16, she arrived at Cibola County Correctional Center in Milan New Mexico. The next day, she was transferred to the Cibola General Hospital.[3] On May 25, 2018—sixteen days after she entered the United States—Ms. Hernandez died at a hospital in New Mexico.[4]

An initial autopsy was reportedly completed by the New Mexico medical examiner's office on behalf of ICE, but had not been immediately released.[5] In June 2018, the month following Ms. Hernandez's death, attorneys representing her family and estate retained a forensic pathologist, who concluded that Ms. Hernandez exhibited signs of potential physical abuse, including deep hemorrhaging of the soft tissues and muscles over her ribs, prior to death due to

---

[1] Ms. Hernandez has been referred to under various spellings of her name and is listed in ICE records as Jeffry Hernandez.
[2] Hanna Knowles, Washington Post, *ICE detention center may have allowed video to be deleted after detainee's death, lawyers say* (Oct. 25, 2019), *available at* https://www.washingtonpost.com/immigration/2019/10/25/ice-knew-detainees-death-was-under-scrutiny-allowed-video-be-deleted-anyway-lawyers-say/ [Washington Post Art.].
[3] E-mail from [Redacted] to [Redacted], Subject: RE: CRCL Short Form Complaint Number is 18-08-DHS-0342 (Aug. 2, 2018), *available at* http://transgenderlawcenter.org/wp-content/uploads/2019/10/CRCL-short-form-complaint.pdf [CRCL Short Form Response].
[4] Sandra E. Garcia, New York Times, *Independent Autopsy of Transgender Asylum Seeker Who Died in ICE Custody Shows Signs of Abuse* (Nov. 27, 2018), *available at* https://www.nytimes.com/2018/11/27/us/trans-woman-roxsana-hernandez-ice-autopsy.html [New York Times Art.].
[5] New York Times Art.

dehydration and HIV-related complications. The report included accounts from other detainees regarding potentially insufficient medical treatment provided to Ms. Hernandez in the days preceding her hospitalization.[6] Nearly a year after her death, an official autopsy report was released disputing the conclusions of the autopsy report commissioned by Ms. Hernandez's representatives, citing HIV-related complications and forceful CPR.[7] The official autopsy report concluded that her death was due to "untreated HIV infection." Although ICE and CBP were reportedly aware of Ms. Hernandez's HIV status, the full nature and extent of the medical treatment she received remains unclear.[8]

There remain significant factual disputes relating to the circumstances surrounding Ms. Hernandez's death, including whether she suffered physical abuse in U.S. custody, whether, in light of her physical symptoms, it was appropriate for her to be transported, and whether she received appropriate medical care.[9] On October 25, 2019, the Washington Post reported that ICE's Office of Professional Responsibility requested surveillance footage previously reviewed on-site by ICE officials. Reportedly, the footage—which could have shed light on Ms. Hernandez's final days in U.S. custody and provide critical insight into unresolved factual disputes—is no longer available.[10]

The American people deserve answers for what happened to Ms. Hernandez, and members of Congress have sought those answers.[11] The need for answers is all the more acute in light of other deaths in U.S. custody, including the deaths of transgender individuals,[12] and reports of insufficient medical care at U.S. facilities, including ICE facilities.[13] Unfortunately, the unavailability of surveillance footage makes some of those answers difficult, if not impossible, to find. We now need answers as to why that footage was not preserved. Any policies in need of reform must be examined. And any individuals that acted wrongfully must be held accountable.

The Justice Department must appoint outside special counsel if a criminal investigation is warranted, investigation by an office or division within the Justice Department would present a conflict of interest, and it would be in the public interest to appoint an outside special counsel over the matter. *See* 28 C.F.R. § 600.1. If the applicable requirements are met, the Justice

---

[6] New York Times Art.
[7] Tim Fitzsimons, NBC, *Transgender ICE detainee died of AIDS complications, autopsy shows* (Apr. 17, 2019), *available at* https://www.nbcnews.com/feature/nbc-out/transgender-ice-detainee-died-aids-complications-autopsy-shows-n994836 [NBC Art.]; *see also* ICE, *Detainee Death Report: HERNANDEZ, Jeffry*, *available at* https://www.ice.gov/doclib/foia/reports/ddrHernandezJeffryAkaHernandezRoxana.pdf (indicating that "[a]s of December 7, 2018, the autopsy is still pending.").
[8] NBC Art.
[9] *See, e.g.*, Washington Post Art.
[10] Washington Post Art.
[11] Letter from Sens. Kamala D. Harris, Tom Udall, and Martin Heinrich to Ronald D. Vitiello and Kevin K. McAleenan (Dec. 5, 2018), *available at* https://www.harris.senate.gov/imo/media/doc/12.05.18%20Roxana%20Hernandez%20letter%5b1%5d.pdf.
[12] *See, e.g.*, Robert Moore, Washington Post, *Transgender woman migrant who had been in ICE custody dies after falling ill* (June 2, 2019), *available at* https://www.washingtonpost.com/immigration/transgender-woman-migrant-who-had-been-in-ice-custody-dies-after-falling-ill/2019/06/02/d194528a-85a6-11e9-98c1-e945ae5db8fb_story.html.
[13] Office of Inspector General, Dept. of Homeland Security, *Concerns about ICE Detainee Treatment and Care at Four Detention Facilities*, OIG-19-47 (June 3, 2019), *available at* https://www.oig.dhs.gov/sites/default/files/assets/2019-06/OIG-19-47-Jun19.pdf.

Department must select a special counsel from outside the government to conduct the requisite investigation. 28 C.F.R. §§ 600.3-600.6. Importantly, the special counsel "shall exercise, within the scope of his or her jurisdiction, the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney." 28 C.F.R. § 600.6. The question of whether Executive Branch officials violated applicable laws or regulations in failing to preserve the surveillance footage meets all three requirements for appointment of a special counsel.

Transparency is essential to protecting the rule of law. The rule of law, in turn, is essential to protecting each and every human being in the United States, including those who spend time in U.S. custody. The disturbing details surrounding Ms. Hernandez's death are deeply troubling. And because DHS failed to preserve previously available surveillance footage, irreplaceable evidence of Ms. Hernandez's final days is no longer available to anyone other than the ICE officials that first saw it.

Ms. Hernandez's surviving family, the United States Congress, and the American people deserve answers. We therefore request the prompt appointment of a special counsel to investigate whether DHS officials adequately complied with applicable law and regulation regarding the preservation of evidence in connection with the death of Ms. Hernandez. We request a response confirming whether the Justice Department will make the requested appointment within 30 days of your receipt of this letter.

Thank you for your attention to this important matter. We look forward to your timely response.

Sincerely,

Kamala D. Harris
United States Senator

Richard Blumenthal
United States Senator