# EXHIBIT A





January 29, 2019

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
F: (202) 732-4265
ICE-FOIA@dhs.gov

Cc:   Privacy Office, U.S. Department of Homeland Security
      245 Murray Lane SW STOP–0655
      Washington, DC. 20528–0655
      F: (202) 343–4011

**Re: FOIA all records pertaining to Roy Alexander Hernandez AKA Jeffry
Hernandez aka Roxsana Hernandez A#206418141**

Dear FOIA Officer,

Pursuant to The Freedom of Information Act (FOIA), 5 U.S.C. § 552 *seq et*, and 5 U.S.C. §
552a *et seq.,* I write to request copies of the following records any and all records in the
possession of Immigration Customs Enforcement ("ICE") pertaining to Jeffry Hernandez
Rodriguez aka Roy Alexander Hernandez Rodriguez aka Roxsana Hernandez (hereinafter "Ms.
Hernandez") DOB: February 18, 1985, A#206418141 including but not limited to:

1)  Any and all records within possession of the Office Immigration and Customs Enforcement
    ("ICE") or Customs and Border Protection ("CBP") of investigations, inspections, audits and
    reports, from pertaining to A# that "206418141" or "206 418 141" or "206-418-141"
    beginning from May 9, 2018 when she was taken into ICE custody through the present.
2)  Any and all investigations, inspections, reports, audits and communications pertaining to the
    death of A# that "206418141" or "206 418 141" or "206-418-141" or "and surrounding
    circumstances from May 9th, 2018 through the present.
3)  Any and all records within possession of the Office Immigration and Customs Enforcement
    ("ICE") or Customs and Border Protection ("CBP") of investigations, inspections, audits and
    reports, from pertaining to Ms. Hernandez beginning from May 9, 2018 when she was taken
    into ICE custody through the present.
4)  Any and all investigations, inspections, reports, audits and communications pertaining to the
    death of Ms. Hernandez and surrounding circumstances from May 9th, 2018 through the
    present.
5)  A complete copy of the government's file for A# "206418141" or "206 418 141" or "206-
    418-141".
6)  any and all records in the possession of ICE pertaining to Ms. Hernandez, generated from
    May 9, 2018 through the present including but not limited to:

   a) Any and all communications, memorandums, emails, and all other electronic
      communications, responses to media inquiries, notes, reports and database entries.
7) any and all records in the possession of ICE that include "206418141" or "206 418 141" or
   "206-418-141"generated from May 9, 2018 through the present including but not limited to:
   a) Any and all communications, memorandums, emails, and all other electronic
      communications, responses to media inquiries, notes, reports and database entries
8) any and all records in the possession of ICE that include "Roy Alexander Hernandez
   Rodriguez" or  "Roy Alexander Rodriguez" or "Jeffry Hernandez" or "Jeffrey Hernandez
   Rodriguez" or "Roxsana Hernandez" or generated from May 9, 2018 through the present
   including but not limited to:
   a) Any and all communications, memorandums, emails, and all other electronic
      communications, responses to media inquiries, notes, reports and database entries
9) any and all records in the possession of ICE pertaining to Ms. Hernandez, generated from
   November 26, 2018 through the present including but not limited to:
   a) Any and all communications, memorandums, emails, and all other electronic
      communications, responses to media inquiries, notes, reports and database entries.
10) any and all records in the possession of ICE pertaining to "Dr. Kris Sperry" or "Kris Sperry"
    or "Dr. Sperry" generated from November 26, 2018 through the present including but not
    limited to:
    a) Any and all communications, memorandums, emails, and all other electronic
       communications, responses to media inquiries, notes, reports and database entries.
11) any and all <u>requests for records</u> in the possession of ICE that pertain to "Roxsana Hernandez"
    or "Roxana Hernandez" or "Roy Alexander Hernandez Rodriguez" or "Jeffry Hernandez" or
    "Jeffry Hernandez Rodriguez" generated from November 26, 2018 through the present
    including but not limited to:
    a) Any and all requests received by ICE pursuant to 5 U.S.C. § 552 *et seq*., or any other
       legal authority authorizing the release of records to the public.
12) any and all <u>requests for records</u> in the possession of  ICE that pertain to "Dr. Kris Sperry" or
    "Kris Sperry" or "Dr. Sperry" generated from November 26, 2018 through the present
    including but not limited to:
    a) Any and all requests received by ICE pursuant to 5 U.S.C. § 552 *et seq*., or any other
       legal authority authorizing the release of records to the public.

Please note that this request is ongoing and encompasses any new materials generated by your
office that falls within the ambit of this request.

Ms. Hernandez is deceased. <u>See</u> copy of death certificate, attached. Please also find the attached
Order Granting Petition For Appointment As Personal Representative Of The Wrongful Death
Estate of Roxsana Hernandez, attached as well as an executed release by Ms. Youngers pursuant
to 45 CFR §164.500-534.

If there are any fees for searching or copying these records, please inform me if the cost will
exceed $25.  However, pursuant to 6 C.F.R. § 5.11(k) I would also like to request a waiver of all
fees in that the disclosure of the requested information is in the public interest. The Transgender
Law Center is a non-profit organization that largely serves people with few financial

resources.  This information is not being sought for commercial purposes. Please send the requested records in electronic format by CD to:

> Transgender Law Center
> Attn: Dale Melchert
> 594 Dean Street
> Suite 11
> Brooklyn, NY 11238

Pursuant to 5 U.S.C.A. § 552(6)(A) I expect a response within 20 days of this request. If access to the records I am requesting will take longer than this amount of time, please contact me with information about when I might expect copies or the ability to inspect the requested records.

If you deny any or all of this request, please cite each specific exemption that justifies the refusal to release the information and notify me of the appeal procedures available to me under the law.

Thank you for considering my request. If you have any questions or concerns you may reach me at 510.587.9696 ext. 354 or dale@transgenderlawcenter.org.

Sincerely,

Dale Melchert, Esq.
*Staff Attorney*

# EXHIBIT B

  

LAW OFFICE OF
## R.ANDREW FREE
Immigration. Civil Rights. Workplace Justice.

## Transgender
## Law Center
*Making Authentic Lives Possible*

<u>SUBMITTED VIA EMAIL TO FOIA@HQ.DHS.GOV</u>

February 5, 2019

The Privacy Office
U.S. Department of Homeland Security
245 Murray Lane SW
STOP-0655
Washington, D.C. 20528-0655
Phone: 202-343-1743 or 866-431-0486
Fax: 202-343-4011
E-mail: foia@hq.dhs.gov

**Re: Records request investigations of death of Roxsana Hernandez A# 206418141**

Dear FOIA Officer,

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, and 6 C.F.R. Ch. I,
Pt. 5, I am requesting an opportunity to obtain copies of the following records:

- Any and all records within possession of the Office of Civil Rights and Civil Liberties
  ("CRCL") pertaining to A#"206418141" or "206 418 141" or "206-418-141" or "Jeffry
  Hernandez" or "Jeffrey Hernandez" also known as "Roy Alexander Hernandez
  Rodriguez" also known as "Roxsana Hernandez (hereinafter "Ms. Hernandez") DOB:
  February 18, 1985, from May 8, 2018 through the present.
- This includes but is not limited to:
  - Any and all investigations, inspections, audits and reports, from May 9, 2018
    through the present pertaining to Ms. Hernandez beginning May 9, 2018 when she
    was in ICE custody through the present.
  - Any and all investigations, inspections, reports, audits and communications
    pertaining to the death of Ms. Hernandez and surrounding circumstances from
    May 9, 2018 through the present.
  - The detainee death review or any other reports or memoranda pertaining to the
    death of Ms. Hernandez.

Please note that this request is ongoing and encompasses any new materials generated by your
office that falls within the ambit of this request.

Ms. Hernandez is deceased. <u>See</u> copy of death certificate, attached. Please also find the attached
Order Granting Petition For Appointment As Personal Representative Of The Wrongful Death

Estate of Roxsana Hernandez, attached as well as an executed release by Ms. Youngers pursuant to 45 CFR §164.500-534.

If there are any fees for searching or copying these records, please inform me if the cost will exceed $25. However, pursuant to 6 C.F.R. § 5.11(k) I would also like to request a waiver of all fees in that the disclosure of the requested information is in the public interest. The Transgender Law Center is a non-profit organization that largely serves people with few financial resources. This information is not being sought for commercial purposes. Please send the requested records in electronic format by CD to:

> Transgender Law Center
> Attn: Dale Melchert
> 594 Dean Street
> Suite 11
> Brooklyn, NY 11238

Pursuant to 5 U.S.C.A. § 552(6)(A) I expect a response within 20 days of this request. If access to the records I am requesting will take longer than this amount of time, please contact me with information about when I might expect copies or the ability to inspect the requested records.

If you deny any or all of this request, please cite each specific exemption that justifies the refusal to release the information and notify me of the appeal procedures available to me under the law.

Thank you for considering my request. If you have any questions or concerns you may reach me at 510.587.9696 ext. 354 or dale@transgenderlawcenter.org.

Sincerely,

Dale Melchert, Esq.
*Staff Attorney*

# EXHIBIT C



U.S. Department of Homeland Security
Washington, DC 20528

*Privacy Office, Mail Stop 0655*

April 19, 2019

**SENT VIA E-MAIL TO: dale@transgenderlawcenter.org**

Dale Melchert, Esq.
Transgender Law Center
P.O. Box 70976
Oakland, CA 94612

Re: **2019-HQFO-00384**

Dear Mr. Melchert:

This letter acknowledges receipt of your Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), dated February 5, 2019, and to your request for a waiver of all assessable FOIA fees. Our office received your request on February 5, 2019. Specifically, you requested any and all records within possession of the Office of Civil Rights and Civil Liberties ("CRCL") pertaining to A#"206418141" or "206 418 141" or "206-418-141" or "Jeffry Hernandez" or "Jeffrey Hernandez" also known as "Roy Alexander Hernandez Rodriguez" also known as "Roxsana Hernandez" (hereinafter "Ms. Hernandez") DOB: February 18, 1985, including but not limited to: (a) any and all investigations, inspections, audits and reports, pertaining to Ms. Hernandez while in ICE custody; (b) any and all investigations, inspections, reports, 'audits and communications pertaining to the death of Ms. Hernandez and surrounding circumstances; and (c) the detainee death review or any other reports or memoranda pertaining to the death of Ms. Hernandez (Date Range for Record Search: From 5/8/2018 To 2/5/2019).

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Consistent with 6 C.F.R. Part 5 § 5.5(a) of the DHS FOIA regulations, the Department processes FOIA requests according to their order of receipt. Although DHS' goal is to respond within 20 business days of receipt of your request, FOIA does permit a 10-day extension of this time period in certain circumstances under 6 C.F.R. Part 5 § 5.5(c). As your request seeks a voluminous amount of separate and distinct records, DHS will invoke a 10-day extension for your request pursuant 6 C.F.R. Part 5 § 5.5(c). If you would like to narrow the scope of your request, please contact our office. We will make every effort to comply with your request in a timely manner.

You have requested a fee waiver. The DHS FOIA regulations at 6 C.F.R. Part 5 § 5.11(k) set forth six factors DHS must evaluate to determine whether the applicable legal standard for a fee waiver has been met: (1) Whether the subject of the requested records concerns "the operations

or activities of the government," (2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities, (3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requester or a narrow segment of interested persons, (4) Whether the contribution to public understanding of government operations or activities will be "significant," (5) Whether the requester has a commercial interest that would be furthered by the requested disclosure, and (6) Whether the magnitude of any identified commercial interest to the requester is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requester.

Upon review of the subject matter of your request, and an evaluation of the six factors identified above, DHS has determined that it will conditionally grant your request for a fee waiver.  The fee waiver determination will be based upon a sampling of the responsive documents received from the various DHS program offices as a result of the searches conducted in response to your FOIA request.  DHS will, pursuant to DHS FOIA regulations applicable to non-commercial requesters, provide two hours of search time and process the first 100 pages at no charge to you.  If upon review of these documents, DHS determines that the disclosure of the information contained in those documents does not meet the factors permitting DHS to waive the fees, then DHS will at that time either deny your request for a fee waiver entirely, or will allow for a percentage reduction in the amount of the fees corresponding to the amount of relevant material found that meets the factors allowing for a fee waiver.  In either case, DHS will promptly notify you of its final decision regarding your request for a fee waiver and provide you with the responsive records as required by applicable law.

In the event that your fee waiver is denied, and you determine that you still want the records, provisions of the FOIA allow us to recover part of the cost of complying with your request.  We shall charge you for records in accordance with the DHS FOIA regulations as they apply to non-commercial requesters.  As a non-commercial requester you will be charged for any search time and duplication beyond the free two hours and 100 pages mentioned in the previous paragraph.  You will be charged 10 cents per page for duplication and search time at the per quarter-hour rate ($4.00 for clerical personnel, $7.00 for professional personnel, $10.25 for managerial personnel) of the searcher.  In the event that your fee waiver is denied, we will construe the submission of your request as an agreement to pay up to $25.00.  This office will contact you before accruing any additional fees.

We have queried the appropriate component(s) of DHS for responsive records.  If any responsive records are located, they will be reviewed for determination of releasability.  Please be assured that one of the analysts in our office will respond to your request as expeditiously as possible.  We appreciate your patience as we proceed with your request.

Your request has been assigned reference number **2019-HQFO-00384**.  Please refer to this identifier in any future correspondence.  The status of your FOIA request is now available online and can be accessed at: https://www.dhs.gov/foia-status, by using this FOIA request number.  Status information is updated daily.  Alternatively, you can download the DHS eFOIA Mobile App, the free app is available for all Apple and Android devices. With the DHS eFOIA Mobile

App, you can submit FOIA requests or check the status of requests, access all of the content on the FOIA website, and receive updates anyplace, anytime.

If you have any questions, or would like to discuss this matter, please feel free to contact this office at 1-866-431-0486 or 202-343-1743.

Sincerely,

James Holzer
FOIA Program Specialist

# EXHIBIT D

**Friday, September 18, 2020 at 12:13:35 PM Pacific Daylight Time**

**Subject:** Re: CMC Follow Up: Transgender Law Center et al. v. U.S. Immigration and Customs Enforcement, et al., Case No. 19-cv-3032

**Date:** Tuesday, September 10, 2019 at 9:08:27 AM Pacific Daylight Time

**From:** Andrew Free

**To:** Bernardoni, Jevechius (USACAN)

**CC:** Shawn Meerkamper, Dale Melchert, Molinari, Gioconda (USACAN)

Jev:

Great meeting you today. We look forward to working with you as well. I asked during our initial conferral for ICE to provide a list of offices searched. We still do not have that list.

We believe an adequate search by ICE includes, <u>but is not limited to</u>, the following custodians:

1. Enforcement and Removal Operations - Field Operations
2. ERO San Diego Field Office
3. ERO El Paso Field Office
4. Immigrant Health Services Corps
5. Custody Management
6. External Reviews and Audits Unit
7. Office of Principal Legal Advisor - Office of Chief Counsel
8. Office of the Executive Assistant Director (HQ)
9. Office of the Director/Acting Director (HQ)
10. Office of Professional Responsibility
11. Office of Public Affairs
12. Office of Legislative Affairs
13. Office of the Director

We believe each of these offices will have responsive documents. To be clear, we reserve the right to add components that should be search as new information becomes available.

With respect to the volume of production dispute between the parties, I understand ICE's position will be that the agency cannot produce more than 500 pages of responsive documents per month. Is that correct?

Thank you,

Andrew

Tel: (844) 321-3221 Fax: (615) 829-8959
Andrew@ImmigrantCivilRights.com
Mail: P.O. Box 90568 Nashville, TN 37209
**NEW OFFICE ADDRESS** : 2004 8th Ave. South Nashville, TN 37204
**www.Resist.Law**
Licensed to Practice in Tennessee
Admitted to Practice in U.S. Courts of Appeal for the Fifth, Sixth, Seventh, Ninth, and Eleventh, and District of Columbia Circuits
Admitted to Practice in U.S. District Courts for the District of Colorado, District of Columbia, Middle and Eastern Districts of Tennessee, and Northern District of Illinois

On Mon, Sep 9, 2019 at 4:24 PM Bernardoni, Jevechius (USACAN) <Jevechius.Bernardoni@usdoj.gov> wrote:

Andrew, Shawn, and Dale:


I wanted to send a quick follow up to our conversation following the CMC.


Could you provide us with a list where plaintiffs contend defendants must search in order to conduct an adequate search? Although we tried to take diligent notes, we are concerned that we did not capture all of the individuals, their titles, and the governmental acronyms mentioned during our brief hallway discussion. For efficiency and accuracy, please provide us the list in writing, so we can respond to your question.


It was nice meeting you at the CMC today, and I look forward to working with you cooperatively and constructively on this matter.


Kind regards,

Jev


Jevechius D. Bernardoni

Assistant United States Attorney

United States Attorney's Office

Northern District of California

# EXHIBIT E



*United States Attorney*
*Northern District of California*

*9ᵗʰ Floor, Federal Building*
*450 Golden Gate Ave., Box 36055*
*San Francisco, CA 94102-3495*

*(415)436-7164*

*FAX: (415)436-7234*

September 25, 2019

**By Electronic Delivery**

Shawn Thomas Meerkamper
Transgender Law Center
P.O. Box 70976
Oakland, CA, 94612
Phone: (510) 587-9696, ext. 303
Fax: (510) 587-9699
shawn@transgenderlawcenter.org

R. Andrew Free
Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
Phone: (844) 321-3221
Fax: (615) 829-8959
Andrew@ImmigrantCivilRights.com

**Re: *Transgender Law Center, et al. v. U.S. Department of Homeland Security, et al.*, Case No. 19-cv-03032 SK**

Dear Counsel,

I write in response to your September 10, 2019 email and to follow up regarding our discussion after the September 9, 2019 case management conference. I look forward to working with you to resolve this matter expeditiously and efficiently.

## 1.    Plaintiffs' Proposed Early Summary Judgment Motion

After the September 9, 2019 case management conference, you indicated that Plaintiffs intended to file an early motion for summary judgment regarding the adequacy of ICE's search, among other issues. Defendants strongly believe that such a motion would be premature. Because Defendants will not begin releasing records until the end of September, Plaintiffs have not yet had a chance to analyze what is, and what is not, included in Defendants' search and records release.

While Defendants cannot prevent Plaintiffs from filing an early summary judgment motion on the adequacy of search, Defendants believe that the quickest, most efficient way to resolve this case is through continued collaboration and cooperation; filing a motion for summary judgment before Plaintiffs have had an opportunity to analyze the content of Defendants' release is premature.

Defendants are committed to conducting their search in good faith, using "methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Per ICE's request, on September 10, 2019, you sent an email listing 13 custodians Plaintiffs believe ICE would have to search before its search could be deemed adequate. ICE can confirm that it has and/or will search for potentially responsive records from each of the custodians listed in your September 10, 2019 email.

In any event, Defendants note that Judge Kim's Standing Order clearly states that "the Court will address only one motion for summary judgment per side," absent a showing of good cause. Defendants do not believe that good cause would exist to entertain serial summary judgment motions in this case and would oppose any further summary judgment motion on that basis, among others.

### 2.      Immigration and Customs Enforcement's ("ICE") Pace of Production

As reported in the Joint Case Management Statement (ECF No. 15 at 5), ICE has identified approximately 3,100 pages of potentially responsive records. ICE has already started processing records for the month of September, and intends to release its first tranche of responsive records on or before September 30, 2019.

Following the September 9, 2019 case management conference, you indicated that Plaintiffs would file a motion seeking the release of 3,000 pages monthly. Alternatively, you indicated that if ICE would agree to release 1,000 pages monthly, Plaintiffs would not file such a motion. Due to limited government resources, it will be a challenge for ICE to process more than 500 pages each month. However, as a compromise and to avoid prolonged and costly motion practice on this issue, ICE is willing to process 750 pages each month, starting in October 2019. At that pace, ICE anticipates completing its processing of the 3,100 pages of potentially responsive records identified to date by approximately January 2020.

Please let me know if Plaintiffs are willing to accept this compromise.

I look forward to our continued collaboration to resolve this matter efficiently and expeditiously.

Very truly yours,

JEVECHIUS BERARDONI
Assistant United States Attorney

# EXHIBIT F

 

September 27, 2019

Jevechius D. Bernardoni
Assistant United States Attorney
United States Attorney's Office
Northern District of California
Jevechius.Bernardoni@usdoj.gov

Re:     *Transgender Law Center, et al. v. U.S. Immigration & Customs Enforcement*
        Case No. 3:19-cv-3032-SK

Dear Jev:

Thank you for your letter of September 25 in the above-referenced case. We, too, seek an expeditious, just, and efficient resolution to this litigation, and hope that continuing conferral with your office will help move this forward.

We write to seek clarification and further information about several issues about which Plaintiffs have been seeking clarity from your office for nearly eight weeks. In light of ICE's two-month delay in providing the most basic information about the agency's response, Plaintiffs would appreciate the courtesy of your client's substantive response to these specific issues by no later than Tuesday, **October 1, 2019, at 6:00 p.m. Pacific Time.**

**A. ICE's Refusal to Confer in Good Faith Regarding the Search.**
*First*, please specifically identify the offices that were searched to come up with the 3,100 responsive records ICE has identified. We first asked your co-counsel for this information during our Rule 16 call on August 19, 2019. We next asked for the information at the September 9, 2019, Case Management Conference. We provided you specific offices during our discussion after the hearing. You wrote them down. Then, at your request, we provided a written account of those offices by email on September 10, 2019. On September 13, you responded that you would provide us with the information we requested "as soon as possible." The September 25, 2019, Letter you sent is the first response we've received.

Regrettably, ICE continues to refuse to identify the offices it has already searched. Rather, your September 25 Letter states "ICE can confirm that ***it has and/or will*** search for potentially responsive records from each of the custodians listed in your September 10,2019 email." (emphasis added).

Which is it? "Has"? "Will"? Both? The distinction matters. If it's "has", that means 3,100 comprises the universe of documents, the searches are complete, and ICE's goal of finishing production by January 2020 makes sense. But if it's "will" or "both", this could substantially expand the timeline of review and production, substantially increase the volume of documents, amplify the adverse effects on Plaintiffs and the public's right to know that ICE has brought on through its unlawfully delayed response.

You characterize Plaintiffs' summary judgment motion on search adequacy as "premature." Knowing which offices ICE searched is critical to understanding whether the agency has carried its burden under the Freedom of Information Act ("FOIA"). Yet ICE still refuses to answer the question we asked two months ago: Which offices did ICE search to recover the 3,100 pages of responsive records, and when? If the agency intends to provide a definitive response to this question, it should do so by Tuesday.

**B.  ICE's Demonstrably False Claims to the Court about the Volume of Production.**

*Second*, your September 25 letter offers that ICE will produce 750 pages per month in lieu of defending against summary judgment. Plaintiffs reject this offer, and the cynical gamesmanship that yielded it.

ICE's 750-page proposal is an admission that either (a) DOJ lied to Plaintiffs and the Court about 500 pages per month being a resource-based limitation on FOIA disclosure; or (b) your client lied to you and the DOJ. Either way, the ball is in now your court to correct the records.

We tried to help you and your co-counsel avoid this situation. From Plaintiffs' very first communications with your office, ICE has maintained it *cannot* – not "will not", not "doesn't want to" – process more than 500 pages per month. Plaintiffs repeatedly told your co-counsel, and then you, that this representation is demonstrably false. ICE and DOJ failed to retract its false statement. Instead, ICE and DOJ incorporated the falsehood into the Joint Case Management Statement. ECF No. 15 at 3-4. ("As stated in Paragraph 2 above, defendant can process 500 pages monthly due to limited government resources, and can provide a declaration from ICE FOIA explaining the resources, if requested.").

Making matters worse, during our September 9 Case Management Conference, your co-counsel represented to the Court on the record that ICE "cannot" process more than 500 pages per month. She did so despite Plaintiffs' repeated, unequivocal representations that we *know* this is false by virtue of the dockets in nearly a dozen cases, including two within this Court. And she did so despite the fact that we met with you both immediately before the hearing and told you both, again, that this is false.

ICE now admits what's always been true: It can and does process more than 500 pages per month of records in FOIA cases. The Court deserves to be informed of ICE's falsehood, and Plaintiffs believe DOJ has an affirmative duty to correct its prior, on-record statements, all of which fall within the strictures of Fed. R. Civ. P. 11.  After wasting months, ICE owes the parties and the Court and explanation for the agency's prior misrepresentations.

In light of the fact that your letter seems to suggest that ICE "will" be conducting additional searches for responsive documents, the volume of responsive records is expected to increase. Accordingly, all records ICE has now should be produced now. Our position is based upon knowledge of several similar FOIA mandamus actions, in which DHS or ICE were a Defendant and either stipulated or was ordered to produce significantly more than 500 records per month.[1] In *Immigrant Legal Resource Center v. U.S. Department of Homeland Security, et. al,* Case 4:17-cv-06029-DMR (N.D.C.A.) the Northern District of California ordered Defendants to produce 1,000 pages of records per month. A stipulation several months later [2] in the same case shows the number of pages defendants actually produced monthly, which range from 878 pages to 1,110 pages a month. Furthermore, in other jurisdictions DHS or ICE, on multiple occasions, have been ordered to produce significantly more than 500 pages per month, including up to 14,000 pages in one month.[3] While we know it is possible for you clients to release all documents within

---

[1] *See* Joint Stipulation to Continue Case Management Conference Order dated 10/24/18.

[2] *See* Continue Case Management Conference Order dated 5/28/19.

[3] DHS. *Elec. Privacy Info. Ctr. v. U. S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 37 (D.D.C. 2016) (ordering DHS to produce 2,000 pages per month; *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 811 F. Supp. 2d 713, 731 (S.D.N.Y. 2011) (ordering ICE to fully respond to an outstanding FOIA request that required producing over 14,000 pages in one month); *ACLU v. DOD*, 339 F. Supp. 2d 501, 505 (S.D.N.Y. 2004) (ordering the agency to produce all responsive documents in one month); *Judicial Watch, Inc. v. Dep't of Energy*, 191 F. Supp. 2d 138, 140-41 (D.D.C. 2002) (ordering agencies to process over 6000 pages of material within 60 days); *NRDC v. Dep't of Energy*, 191 F. Supp. 2d 41, 43 (D.D.C. 2002) (ordering the complete production of 7500 pages to be completed within 60 days); *Detention Watch Network v. U.S. Immigration & Cust.*

*TLC v. ICE*
September 26, 2019
Page 3 of 3

one month, for the sake of resolving this matter as expeditiously as possible we would accept the production of 1,000 pages per month beginning end of September. This would be mutually advantageous because it would save both our office's time and resources to forgo motion practice and resulting attorney's fees.

*Finally*, in response to your question regarding records pertaining to Dr. Sperry, Plaintiffs will await ICE's response to our question from eight weeks ago on what's already been searched by ICE before engaging in any additional discussions as to adequacy of search.

We look forward to the courtesy of your response by Tuesday evening.

Best regards,

/s/ Dale Melchert
R. Andrew Free
Shawn Meerkamper
Lynly Egyes
*Co-Counsel for the Plaintiffs*

---

*Enf't*, Case No. 14 Civ. 583, ECF No. 48 (S.D.N.Y. July 3, 2014) (ordering DHS to either (a) review a minimum of 4,000 pages per month or (b) produce a minimum of 1,500 pages of responsive documents per month).

# EXHIBIT G



PO Box 70976

Oakland, CA 94612
510.587.9696
www.transgenderlawcenter.org

SUBMITTED VIA E-MAIL TO ICE-FOIA@dhs.gov

January 14, 2020

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
F: (202) 732-4265

Cc:     Privacy Office, U.S. Department of Homeland Security
        245 Murray Lane SW STOP–0655
        Washington, DC. 20528–0655
        F: (202) 343–4011

**Re: Request for records pertaining to FOIA Case No. 2019-ICLI-00053**

Dear Records Officer,

Pursuant to The Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, and 5 U.S.C. § 552a *et seq.*, I am requesting an opportunity to obtain copies of the following records:

1. any and all **requests for records** in the possession of Immigration Customs Enforcement ("ICE") that pertain to our offices' prior FOIA request made on January 29, 2019 assigned the FOIA Case No. 2019-ICLI-00053 including any and all requests pursuant to 5 U.S.C. § 552 *et seq.*, or any other legal authority authorizing the release of records to the public;

2. any and all communications, documents, memoranda or reports including emails and text messages within the possession of ICE pertaining to **ICE's tasking of searches and responses** of the above referenced request;

3. any and all **video surveillance footage** in the possession of ICE of Jeffrey Hernandez Rodriguez aka Roy Alexander Hernandez Rodriguez aka Roxsana Hernandez (hereinafter "Ms. Hernandez") DOB: February 18, 1985, A#206418141, from May 9, 2018 through May 25, 2018.

Please note that this request is ongoing and encompasses any new materials generated by your office that falls within the ambit of this request. Ms. Hernandez is deceased. See copy of death certificate, attached. Please also find a signed release by Joleen K. Youngers, personal administrator of the wrongful death estate of Ms. Hernandez.

Pursuant to 5 U.S.C.A. § 552(E)(i) (West) and 6 C.F.R. § 5.5(e) I request **expedited processing** of this request because the documents requested and your office's expedited response implicates significant due process rights for our office, the estate of Ms. Hernandez, and for our clients, the

surviving siblings of Ms. Hernandez. Our office made our underlying request for records on January 29, 2019 for any and all records pertaining to Ms. Hernandez, including a signed release by the personal representative of Ms. Hernandez' estate.[1] Our office never received an acknowledgement of this request from your office. On May 31, 2019, our office, along with the personal representative of Ms. Hernandez' estate, filed suit to compel the agency to comply with our request in the United States District Court for the Northern District of California.[2] We never received any records pursuant to this request until over eight months after we made it through this lawsuit. Our office continues to receive various pages of documents monthly from ICE, however, counsel for your office has failed to provide us with affidavits substantiating that withheld documents are duplicative and counsel, which has given us reason to believe that ICE's search for records and tasking of the search are inadequate. Our office also represents the surviving siblings of the deceased subject of the requested records to bring a wrongful death case under the Federal Tort Claims Act (FTCA) against the United States for the death of Ms. Hernandez.[3] As such, we, and the personal administrator of Ms. Hernandez' estate, who is charged with prosecuting her wrongful death claim, rely upon the documents produced by ICE through our request in order to develop the wrongful death case. The statute of limitations to file the federal tort claim is two years from the anniversary of Ms. Hernandez' death, which is quickly approaching, specifically May 25, 2020. Until ICE complies with FOIA and produces all requested documents, our office is unable to fully develop our case. Because of ICE's continued delay producing documents in violation of FOIA, our office has been severely disadvantaged to prepare this case and the personal administrator of Ms. Hernandez' estate is unable to fulfill her duty to prosecute Ms. Hernandez' wrongful death claim. The instant FOIA request is intended to understand better the adequacy of ICE's search and tasking of our initial request in order to compel the agency to fully comply with our request in TLC v. ICE, Case No. 3:19-cv-03032 SK, so that we may timely prepare our FTCA claim. As such, ICE's response to this request bears directly on our due process rights as a plaintiff in TLC v. ICE, and upon the due process rights of Ms. Hernandez' estate, and her siblings who we represent, in their wrongful death case. I certify that the above is true and correct.

If there are any fees for searching or copying these records, please inform me if the cost will exceed $25. However, pursuant to 6 C.F.R. § 5.11(k) I would also like to request a waiver of all fees in that the disclosure of the requested information is in the public interest. Transgender Law Center is a non-profit organization that largely serves people with few financial resources. This information is not being sought for commercial purposes. Please send the requested records in electronic format by CD to:

Transgender Law Center
Attn: Dale Melchert

---

[1] See request, attached.

[2] Transgender Law Center et al. v. Immigration and Customs Enforcement, et al., Case No. 3:19-cv-03032 SK (NDCA 2019).

[3] Anna Castro, As Roxsana's Health Failed, Hospital Log Reveals ICE Officers Were Tasked with Securing Her Restraints, TRANSGENDER LAW CENTER, (Dec. 12, 2019), https://transgenderlawcenter.org/archives/15546.

594 Dean Street
Suite 11
Brooklyn, NY 11238

Pursuant to (4) 6 C.F.R. § 5.5(4) I expect a response within **10 days** of this request. If access to the records I am requesting will take longer than this amount of time, please contact me with information about when I might expect copies or the ability to inspect the requested records.

If you deny any or all of this request, please cite each specific exemption that justifies the refusal to release the information and notify me of the appeal procedures available to me under the law.

Thank you for considering my request. If you have any questions or concerns you may reach me at 510-407-6367 or dale@transgenderlawcenter.org.

Sincerely,

Dale Melchert, Esq.
*Staff Attorney*

# EXHIBIT H

February 10, 2020

Dale Melchert
Transgender Law Center
594 Dean Street
Suite 11
Brooklyn, NY 11238

RE:    ICE FOIA Case Number 2020-ICFO-21832

Dear Mr. Melchert:

This acknowledges receipt of your January 14, 2020, Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), for request for records pertaining to FOIA Case No. 2019-ICLI-00053 (see request for details).  Your request was received in this office on February 10, 2020.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, ICE processes FOIA requests according to their order of receipt. Although ICE's goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10- day extension of this time period. As your request seeks numerous documents that will necessitate a thorough and wide-ranging search, ICE will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B). If you care to narrow the scope of your request, please contact our office. We will make every effort to comply with your request in a timely manner.

Provisions of the FOIA allow us to recover part of the cost of complying with your request.  We shall charge you for records in accordance with the DHS Interim FOIA regulations as they apply to commercial requesters.  As a commercial requester, you will be charged 10 cents per page for duplication, and for search and review time at the per quarter-hour rate ($4.00 for clerical personnel, $7.00 for professional personnel, $10.25 for managerial personnel) of the searcher and reviewer.  We will construe the submission of your request as an agreement to pay up to $25.00. You will be contacted before any further fees are accrued.

We have queried the appropriate program offices within ICE for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

Your request has been assigned reference number 2020-ICFO-21832. Please refer to this identifier in any future correspondence. To check the status of an ICE FOIA/PA request, please visit http://www.dhs.gov/foia-status. Please note that to check the status of a request, you must enter the 2020-ICFO-21832 tracking number. If you need any further assistance or would like to discuss any aspect of your request, please contact the FOIA office. You may send an e-mail to ice-foia@ice.dhs.gov, call toll free (866) 633-1182, or you may contact our FOIA Public Liaison, Fernando Pineiro, in the same manner. Additionally, you have a right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Regards,

ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
Telephone: 1-866-633-1182
Visit our FOIA website at www.ice.gov/foia

# EXHIBIT I

**Subject:**      The Transgender Law Center v. ICE, et al.: Vaughn Indices

**Date:**         Monday, July 27, 2020 at 3:36:26 PM Pacific Daylight Time

**From:**         Bernardoni, Jevechius (USACAN)

**To:**           Andrew Free, Dale Melchert

**Attachments:** ICE's Vaughn index (TLC v. ICE)(07-27-20).pdf, Copy of 2019-HQLI-00022 - Vaughn Index OGC
                 2222020 - final.pdf

Counsel,

Please find attached the *Vaughn* indices for this matter.

Regards,

Jevechius D. Bernardoni
Assistant United States Attorney
United States Attorney's Office
Northern District of California

# EXHIBIT J

**Friday, September 18, 2020 at 12:06:16 PM Pacific Daylight Time**

**Subject:** Re: TLC v. ICE (N.D. Cal.) Expedited Processing Request

**Date:** Friday, August 28, 2020 at 4:11:33 PM Pacific Daylight Time

**From:** Andrew Free

**To:** Bernardoni, Jevechius (USACAN)

**CC:** Dale Melchert, Lynly Egyes, Joleen K Youngers

Jev:

Thanks for your response. Plaintiffs will treat it as a denial. Though the agency hasn't triggered our duty to appeal it by informing us of our right to do so, we hereby administratively appeal the denial.

Please let us k is if we can agree that the appeal is futile, and treat it as fully exhausted and ready for judicial review.


Separately, Plaintiffs object to your characterization and disclosure of confidential settlement communications. It is completely unacceptable for the Government to say anything about the circumstances of our mediation in these communications, not least of which because Plaintiffs would have to reciprocally violate our ADR agreement to demonstrate why your characterization of the reason for the termination of the mediation is false.

Further breach of our confidentiality agreement by the government in this case will require us to involve the Mediator, and potentially, the Court.

Thank you,

Andrew

R. Andrew Free
Law Office of R. Andrew Free
www.Resist.Law
PO Box 90568
Nashville, TN 37209
O: (844) 321-3221x1
F: (615) 829-8959
Andrew@Resist.Law

Sent from my iPhone. Please excuse brevity, typos, and overzealous autocorrections.


> On Aug 27, 2020, at 12:49 AM, Bernardoni, Jevechius (USACAN) <Jevechius.Bernardoni@usdoj.gov> wrote:
>
>
> Counsel,
>
> As you are aware, during the mediation CRCL and ICE were willing to go above and beyond the scope of the FOIA in an effort to narrow the issues before the Court. Plaintiffs, however, walked away from those negotiations, and defendants continue to maintain that the searches were adequate. To the extent plaintiffs wish to submit a new FOIA request, please do so according to the procedures identified at https://www.ice.gov/foia/request and https://www.dhs.gov/sites/default/files/publications/dhs_foia_reg_2016.pdf.
>
> Regards,

Jevechius D. Bernardoni
Assistant United States Attorney
United States Attorney's Office
Northern District of California

**From:** Andrew Free <andrew@immigrantcivilrights.com>
**Sent:** Monday, August 17, 2020 4:44 PM
**To:** Bernardoni, Jevechius (USACAN) <JBernardoni@usa.doj.gov>
**Cc:** Lynly Egyes <lynly@transgenderlawcenter.org>; Dale Melchert
<dale@transgenderlawcenter.org>; Joleen K Youngers <jyoungers@ay-law.com>; Shawn
Meerkamper <shawn@transgenderlawcenter.org>; Chris Benoit <chris@coylefirm.com>
**Subject:** TLC v. ICE (N.D. Cal.) Expedited Processing Request

Jev:

On behalf of Plaintiffs, please convey this Request for Expedited Processing to your
clients:

5 U.S.C. §§ 552(a)(6)(E)(i) & 552(a)(6)(E)(i)(II) require DHS to promulgate
requests for expedited processing and determine cases which may deserve it. DHS
promulgated such regulations at 6 C.F.R. §§ 5.1 *et seq.* 6 C.F.R. § 5.5(e)(2) provides that a
request for expedited processing "may be made at any time". 6 C.F.R. § 5.5(e)(1)(iv)
provides for expedited processing of FOIA requests regarding "a matter of widespread and
exceptional media interest in which there exist possible questions about the government's
integrity which affect public confidence.

Plaintiffs respectfully request expedited processing of their requests on this 17th
day of August 2020. In support of their request, Plaintiffs offer the following evidence as a
representative sampling of authorities demonstrating the subject of their request qualifies as
"a matter of widespread and exceptional media interest," pursuant to 6 C.F.R. § 5.5(e)(1)
(iv):

      a. Annie Rose Ramos, "Transgender migrant from Honduras dies in
U.S. custody," NBC News (May 30, 2018) *available at*
https://www.nbcnews.com/feature/nbc-out/transgender-migrant-
honduras-dies-u-s-custody-n878596

      b. Carla Green, "Transgender Honduran woman's death in US 'ice
box' detention prompts outcry," The Guardian (May 31, 2018) *available
at* https://www.theguardian.com/us-news/2018/may/31/roxana-
hernandez-transgender-honduran-woman-dies-us-ice-box

      c. James Cook, "Roxana Hernandez: Anger of transgender migrant's

death in US," BBC News (May 31, 2018) *available at*
https://www.bbc.com/news/world-us-canada-44311420

d.    Meghan Keneally, "Transgender member of migrant caravan dies
in ICE custody," ABC News (May 31, 2018) *available at*
https://abcnews.go.com/US/transgender-member-migrant-caravan-dies-
ice-custody/story?id=55558916

e.    John Paul Brammer, "A Trans Woman's Death Emphasizes Why
LGTBQ+ People Need to Fight Against ICE," them. (May 31, 2018)
*available at* https://www.them.us/story/fighting-against-ice-is-an-lgbtq-
issue

f.    Hank Trout, "Justice for Roxsana Hernandez" A&U (Jun. 25,
2018) *available at* https://aumag.org/2018/06/25/justice-for-roxsana-
hernandez/

g.    Michael Lavers, "Violence, discrimination prompts LGBTI
Hondurans to migrate," Washington Blade (Jul. 18, 2018) *available at*
https://www.washingtonblade.com/2018/07/17/violence-discrimination-
prompts-lgbt-hondurans-to-migrate/

h.    Scott Bixby and Betsy Swan, "Trans Woman Was Beaten in ICE
Custody Before Death, Autopsy Finds," The Daily Beast (Nov. 26,
2018) *available at* https://www.thedailybeast.com/trans-woman-
roxsana-hernandez-rodriguez-beaten-in-ice-custody-before-death-
pathologist-finds

i.    Sandra E. Garcia, "Independent Autopsy of Transgender Asylum
Seek Who Died in ICE Custody Shows Signs of Abuse," The New York
Times (Nov. 27, 2018) *available at*
https://www.nytimes.com/2018/11/27/us/trans-woman-roxsana-
hernandez-ice-autopsy.html;

j.    Emanuella Grinberg, "Transgender migrant who died in ICE
custody was beaten and deprived of medical attention, family says,"
CNN (Nov. 27, 2018) *available at*

k.    Kate Sosin, "ICE Is Refusing to Release A Legally Mandated
Review of Roxsana Hernandez's Death, INTO (Nov. 28, 2018) *available
at* https://www.intomore.com/impact/ice-is-refusing-to-release-a-legally-
mandated-review-of-roxsana-hernandezs-death

l.    Chantal da Silva, "Who Was Roxsana Hernandez? Transgender
Woman Who Died in ICE Custody Was Beaten Before Death"
Newsweek (Nov. 28, 2018) *available at*
https://www.newsweek.com/who-was-roxsana-hernandez-transgender-
woman-who-died-ice-custody-was-beaten-1234721

m.    Prince Shakur, "Roxsana Hernandez, a 33 Year-Old Honduran Trans
Woman, Died in ICE Custody Amid Concerns She Was Abused," Teen
Vogue (Dec. 4, 2018) *available at*
https://www.teenvogue.com/story/roxsana-hernandez-honduran-trans-
woman-died-ice-custody-abuse-concerns-autopsy

n.   Seth Millstein, "Democrats Are Demanding Answers from ICE After A Transgender Woman Died In Its Custody," Bustle (Dec. 5, 2018) *available at* https://www.bustle.com/p/roxsana-hernandez-rodriguezs-death-in-ice-custody-has-democratic-senators-searching-for-answers-13254209

o.   Opheli Garcia Lawler, "What Happened to Roxsana Hernandez, the Trans Woman Who Died in Custody?" *New York Magazine*, The Cut (Dec. 5, 2018) *available at* https://www.thecut.com/2018/12/roxana-hernndez-a-transgender-woman-died-in-ice-custody.html

p.   Jennicet Gutiérrez & Suyapa Portillo "Trans(formation) of a Movement, NACLA Report on the Americas, 50:4, 392-394 (Dec. 10, 2018) *available at* https://doi.org/10.1080/10714839.2018.1550983

q.   Media Statement, "CoreCivic Statement Regarding Roxsana Hernandez," CoreCivic.com (undated) *available at* https://www.corecivic.com/-temporary-slug-f146d3c6-81e0-4834-92f6-65aae75958aa

r.   Daniel Gonzalez, "Autopsy: Bruises on transgender migrant who died in ICE custody caused by CPR, not abuse," The Arizona Republic (Apr. 11, 2019) *available at* https://www.azcentral.com/story/news/politics/immigration/2019/04/11/transgender-migrant-roxsana-hernandez-didnt-suffer-abuse-ice-custody-autopsy-finds/3438583002/

s.   Russell Contreras, "Autopsy: Transgender migrant died from AIDS complications," Associated Press (Apr. 9, 2019) *available at* https://apnews.com/478a98985e824e2c8c046d8dba4ce917.

t.   Alex Sanchez, "Updated: Statement Regarding Death of Roxsana Hernandez," The University of New Mexico Health Sciences Newsroom (Apr. 5, 2019) *available at* http://hscnews.unm.edu/news/statement-regarding-the-death-of-roxsana-hernandez

u.   Tim Fitzsimmons, "Transgender ICE detainee died of AIDS complications, autopsy shows," NBC News (Apr. 17, 2019) *available at* https://www.nbcnews.com/feature/nbc-out/transgender-ice-detainee-died-aids-complications-autopsy-shows-n994836

v.   Hannah Knowles, "ICE detention center may have allowed video to be deleted after detainee's death, lawyers say," Washington Post (Oct. 25, 2019) *available at* https://www.washingtonpost.com/immigration/2019/10/25/ice-knew-detainees-death-was-under-scrutiny-allowed-video-be-deleted-anyway-lawyers-say/

w.   Peter Wade, "A Trans Woman Died in ICE Custody. Then ICE Deleted Video Footage of Her," Rolling Stone (Oct. 26, 2019) *available at* https://www.rollingstone.com/politics/politics-news/trans-woman-died-in-ice-custody-deleted-video-footage-904237/

x.    Catherine E. Shoichet, "Lawyers say video of a transgender immigrant  who died in ICE custody may have been deleted," CNN (Oct. 24, 2019) *available at* https://www.cnn.com/2019/10/24/us/transgender-migrant-video/index.html

y.    Adolfo Flores, "ICE Deleted Surveillance Video of a Transgender Asylum Seeker Who Died in Its Custody," BuzzFeed (Oct. 23, 2019) *available at* https://www.buzzfeednews.com/article/adolfoflores/ice-surveillance-video-transgender-asylum-seeker.

z.    Antonio Tomas de la Garza, "A Eulogy for Roxsana Hernandéz: Tracing the Relationship between Border Rhetoric and Queer Debility," QED: A Journal in GLBTQ Worldmaking Vol. 6, No. (2019) *available at* https://www.jstor.org/stable/10.14321/qed.6.3.0094#metadata_info_tab_contents

Plaintiffs offer the following evidence as a representative sampling of authorities demonstrating the subject of their request qualifies as "matter . . . in which there exist possible questions about the government's integrity which affect public confidence," pursuant to 6 C.F.R. § 5.5(e)(1)(iv):

a.    Press Release, "Udall, Heinrich, Harris Call On ICE And CBP To Release Documentation On Death Of Transgender Woman In ICE Custody," Senator Tom Udall (Dec. 5, 2018) *available at* https://www.tomudall.senate.gov/news/press-releases/udall-heinrich-harris-call-on-ice-and-cbp-to-release-documentation-on-death-of-transgender-woman-in-ice-custody

b.    Dec. 5, 2018, Letter from Senators Udall, Heinrich, & Harris to Acting ICE Director Ronald D. Vitello and Acting U.S. Customs and Border Protection Commissioner Kevin McAleenan *available at* https://www.harris.senate.gov/imo/media/doc/12.05.18%20Roxana%20Hernandez%20letter%5b1%5d.pdf

c.    Press Release, "Harris and Blumenthal Demand Special Counsel to Investigate Failure to Preserve Evidence Within DHS and ICE," Senator Kamala Harris (Nov. 1, 2019) *available at* https://www.harris.senate.gov/news/press-releases/harris-and-blumenthal-demand-special-counsel-to-investigate-failure-to-preserve-evidence-within-dhs-and-ice.

d.    Oct. 31, 2019, Letter from Senators Kamala Harris and Richard Blumenthal to William Barr, U.S. Attorney General, *available at* https://www.harris.senate.gov/imo/media/doc/Letter%20to%20DOJ%20re%20Special%20Counsel%20for%20Evidence%20Destruction%20FINAL.pdf

e.    Press Release, "Members of Congress Call for Investigation After

ICE Deletes Video Needed to Investigate the Death of Roxsana
Hernandez" (Nov. 5, 2019) *available at*
https://haaland.house.gov/media/press-releases/members-congress-call-
investigation-after-ice-deletes-video-needed-investigate

f.     Nov. 4, 2019, Letter from Members of the Congressional Hispanic
Caucus to DHS Inspector General Joseph Cuffari, *available at*
https://chc.house.gov/sites/congressionalhispaniccaucus.house.gov/files/
CHC%20letter%20to%20DHSOIG%20re%20Roxsana.pdf.

Plaintiffs request that ICE and CRCL retask custodians to conduct an adequate search, and
expeditiously process all additional documents that such searches return. Specially,
Plaintiffs request that Defendants grant expedited processing and conduct an expeditiously
processed search for and production of non-exempt agency records as follows:

1.  ICE & DHS Individual Email Address Searches

    a.   ICE Enterprise-Level Accounts:

i.

IAO.DOMESTICMISSIONS@ice.dhs.gov;

ii.

LGBTI.Care@ice.dhs.gov;

iii.   ELP-EPC-
DETENTION-SDDO@ice.dhs.gov;

iv.   ELP-ABQ-
COORD-NOTIFY@ice.dhs.gov;

v.

IHSC_ElPaso@ice.dhs.gov

vi.   ELP-EPC-
COR@ice.dhs.gov

vii.   EPC-
Transportation@ice.dhs.gov

        viii. ELP-EPC-
GPS@ice.dhs.gov

        ix. ELP-EPC-
Detention-SDDO@ice.dhs.gov

        x. EPC-Camp-Space-
Requests@ice.dhs.gov

        xi.
ICEMedia@ice.dhs.gov

        xii. EPC-
Asylum@ice.dhs.gov

        xiii. ERO CRCL

        xiv. HQ DDO SNA


**b.** Individual ICE Custodian Emails:

        i. ICE ABQ
Supervisory Detention and Deportation Officer Dean King
Dean.King@ice.dhs.gov

        ii. El Paso Field Office
Director Dianne Witte Diane.L.Witte@ice.dhs.gov

        iii. Andrew R.
Lorenzen-Strait, ICE Deputy Assistant Director -
Andrew.R.Lorenzen-Strait@ice.dhs.gov

        iv.
Lana.Khoury@ice.dhs.gov (ICE HQ)

        v. El Paso Assistant
Field Office Director T Hernandez

        vi. El Paso ERO
Official Cartagena

vii.   San Diego – Otay Mesa Supervisory Detention and Deportation Officer Park

viii.   Olvera

ix.   Mendivil

x.   Rivera

xi.   Linscott

xii.   Paramo

xiii.   Callahan

xiv.   Herring

xv.   Albarran

xvi.   DeAnda-Ybarra

xvii.   Donald George

xviii.   Brian Jasperson

xix.   Rebecca.M.Savion@ice.dhs.gov

xx.   Carrillo

xxi.   Marquez

xxii.   Villalobos

xxiii.   Diesel

xxiv.   Wasson

xxv.   M.Ramirez2@ice.dhs.gov

xxvi.   Diaz

xxvii.   Tapia

xxviii.   Cisneros

xxix.   Belmonte

xxx.   A. Garcia

xxxi.   Villanueva

xxxii.   Ibarra

e. CRCL Individual Custodian Emails

i. FNU

murphy@hq.dhs.gov

ii.

FNU scott@hq.dhs.gov

2. IHSC Mortality Review Materials

3. Root Cause Analysis Records

4. Records relating to communications between ICE/CRCL/DHS and Congress or other executive branch agencies.

Plaintiffs further request Defendants re-process all previously produced emails and records to release:

1. Names of Officials who do not qualify for privacy exemptions under Exemptions 6 and 7C
2. All email address domain names
3. All attachments to emails that ICE originally withheld.
4. All previously released non-exempt information disclosed in the context of other FOIA responses, including, but not limited to: 2019-ICLI-00051; 2019-ICFO-33270, and any other request for information relating to Ms. Hernandez. *See* Ex. A to Compl. at 3.

I am available by phone at 770-337-2858 to answer any questions your or agency counsel may have regarding these requests.

Many thanks,

Andrew

<image002.jpg>

Tel: (844) 321-3221 Fax: (615) 829-8959
Andrew@ImmigrantCivilRights.com
Mail: P.O. Box 90568 Nashville, TN 37209
**NEW OFFICE ADDRESS (BY APPOINTMENT ONLY)** : 414 Union Street Suite 900 Nashville, TN 37219
**www.Resist.Law**
Licensed to Practice in Tennessee

# EXHIBIT K

For Official Use Only. This document contains pre-decisional and/or deliberative process information exempt from mandatory disclosure under the Freedom of Information Act, 5 U.S.C. 552(b) (5). Do not release without prior approval of U.S. Immigration and Customs Enforcement, ICE Health Service Corps.

## Mortality Review Fact-Finder Case Notes

| | |
|---|---|
| **A#:** | 206 418 141 |
| **Name:** | Jeffry HERNANDEZ |
| **DOB** | 18-Feb-85 |
| **Age:** | 33 |
| **COB:** | Honduras |
| **Fact Finder:** | CDR b(6), b(7)(c ) |
| **Peer Reviewers:** | |

**Detention History:**

| Detention Location | Book In Date | Book Out Date |
|---|---|---|
| San Luis Reg Det Cntr | 5/13/18 | 5/15/18 |
| El Paso Processing Cntr | 5/15/18 | 5/16/18 |
| Cibola Co Corr Cntr | 5/16/18 | 5/25/18 |

**Brief Statement Describing Circumstances Surrounding Death**

On 5/17/18, CCCC transferred Ms. HERNANDEZ to local ER for evaluation and treatment of HIV, dehydration, starvation, fever, and cough. Local hospital transferred Ms. HERNANDEZ to a regional referral center on 5/17/18. Ms. HERNANDEZ died of cardiopulmonary arrest on 5/25/18.

**Current/Past Health History**

HIV - untreated
Septic shock
Anemia
Dehydration
Nodular pulmonary disease
Thrombocytopenia
Syphilis

**Manner and Cause of Death**

Pending autopsy and death
certificate

For Official Use Only. This document contains pre-decisional and/...

| A#: | 206 418 141 |
| Name: | Jeffry HERNANDEZ |
| DOB | 18-Feb-85 |
| Age: | 33 |
| COC: | Honduras |
| Fact-Finder: | CDR b(6), b(7)(c ) |

| Date | Time | Event | Source |
|---|---|---|---|
| 5/9/18 | | CBP detained Ms. HERNANDEZ at the San Ysidro border crossing. | b(7)(e ) |
| 5/13/18 | | ERO booked Ms. HERNANDEZ into SLRDC for manifest purposes. | b(7)(e ) |
| 5/15/18 | | ERO transferred Ms. HERNANDEZ from SLRDC to EPC | b(7)(e ) |
| 5/16/18 | | ERO transferred Ms. HERNANDEZ from EPC to CCCC. | b(7)(e ) |
| 5/16/18 | 11:00 p.m. | ERO booked Ms. HERNANDEZ into CCCC. | b(7)(e ) |
| 5/17/18 | 7:35 a.m. | An RN completed the intake screening, noting a history of HIV and HepA (Ms. HERNANDEZ later denied having Hep A). Ms. HERNANDEZ identified herself as transgender. VS: T 100.8, P 136, R 16, BP 81/61, O2 sat 92%, height 63", weight 89#, BMI 15.8. RN noted hx of persistent cough with weight loss for several weeks. Ms. HERNANDEZ was placed in respiratory isolation and to be seen by MD. A referral to mental health was also placed. The transfer summary from San Luis Regional Detention Center did not have Tb clearance, no medical information, and was not signed by a transferring facility staff member. The RN signed he had reviewed this transfer summary. The TS from EPC did not have Tb clearance, no medical information, and was not signed by a transferring facility staff member. The RN did not sign this TS. | MED |
| | | An MD completed the physical exam with these findings: VS; T 102.0, P 128, R 20, BP 81/61, O2 sat 92%; Ms. HERNANDEZ reported she was diagnosed with HIV 6 months PTA but had not been treated; weight loss began around the same time she was diagnosed; mucus membranes dry, multiple dental caries, coarse breath sounds, muscle wasting, tachycardia, emaciated, and very poor skin turgor. The MD ordered a mask be placed on Ms. HERNANDEZ for her own protection, transport to local hospital for eval and treatment by facility vehicle. The MD also wrote multiple diagnostic orders to be carried out at the hospital. Ms. HERNANDEZ was transferred to Cibola General Hospital. | MED |
| | 10:00 a.m. | CGH emergency department (ED) received Ms. HERNANDEZ. VS: T 104.9, P 137, R 18, BP 82/57, O2 sat 89%. The ED MD ordered multiple laboratory and radiology diagnostic studies, intravenous (IV) fluids for rehydration, acetaminophen for fever control, IV antibiotics (azithromycin and ceftriaxone), and IV famotidine. The ED MD diagnosed septic shock, anemia, dehydration, HIV infection, lymphadenopathy, nodular pulmonary disease, and thrombocytopenia. The ED MD spoke to an MD at Lovelace Medical Center (LMC), Albuquerque, NM, who agreed to accept Ms. HERNANDEZ on transfer. The ED MD ordered air ambulance transportation to LMC, which was carried out at an unknown time. | MED |
| | 11:59 a.m. | LMC reported Ms. HERNANDEZ was stable and admitted to ICU for Tb isolation. VS were: T 98.6, P 98, BP 102/66, and O2 sat 99%. The IV antibiotics were changed to piperacillin/tazobactam and vancomycin, and levophed was added to increase BP. Ms. HERNANDEZ developed an appetite, and was provided with meals and oral fluids, which she tolerated well. Further diagnostic studies were being performed | MED |
| 5/18/18 | | LMC reported Ms. HERNANDEZ remained stable, but did develop a fever of 104.0. A CT showed an enlarged spleen, which was concerning for T-cell lymphoma. The CD 4 count was 189. | MED |
| 5/19/18 | | LMC reported Ms. HERNANDEZ had run a fever up to 102.0 most of the day, and had lost her appetite. The IV antibiotics were discontinued, and new antibiotics were ordered: sulfamethoxazole/trimethoprim, orally, once a day, and a once weekly injection of penicillin. | MED |
| 5/22/18 | | LMC reported Ms. HERNANDEZ was in critical condition. VS were: T 97.8 (maximum 104.5), P 104 (maximum 150 bpm), R 18, BP 118/74, and O2 sat 100% while receiving oxygen at ten liters per minute via nasal cannula. IV antibiotic piperacillin/tazobactam and IV midodrine (to treat low blood pressure) were ordered. The chest x-ray revealed small, bilateral pleural effusions (excess fluid surrounding the lung causing difficulty breathing). | MED |
| 5/24/18 | 11:00 a.m. | LMC performed a thoracentesis (procedure to remove the pleural effusions), and removed a total of 1600 cc's of fluid. | MED |
| | 3:00 p.m. | LMC intubated Ms. HERNANDEZ, and placed her on a mechanical ventilator, because her O2 sat had dropped to 74%. | MED |
| | 7:45 p.m. | Ms. HERNANDEZ developed bradycardia, which changed to PEA. CPR began immediately and Ms. HERNANDEZ was revived at 10:16 p.m. Ms. HERNANDEZ then developed supraventricular tachycardia that was not responsive to treatment. | MED |
| | 10:10 p.m. | LMC reported Ms. HERNANDEZ was experiencing cardiopulmonary arrest every few minutes, and she had minimal brain activity. | MED |
| 5/25/18 | 1:30 a.m. | | MED |
| | 3:32 a.m. | LMC reported Ms. HERNANDEZ had been pronounced dead by two LMC physicians. | MED |

For deliberative process information exempt from mandatory disclosure under the Freedom of Information Act, 5 U.S.C. 552(b) (5). Do not release without prior approval of U.S. Immigration and Customs Enforcement, ICE Health Service Corps.

**SEQUENCE OF EVENTS - FACT FINDER OBSERVATIONS**

**KEY for SOURCE ABBREVIATIONS:** AF=alien file; DET=detention file; b(7)(e ) database records; EMS=EMS records; INT=interview; IR=incident report/memo; MED=medical records; OBS=site-visit observation; P&P=policy and/or procedure;  SEN=

**Fact Finder Observations**

b(6), b(7)(c ), RN *(RN b(6), b(7)(c ) - Do you speak Spanish proficiently? Why did you use b(6), b(7)(c ), Dental Asst. for interpretation? HSA b(6), b(7)(c ): What is your policy/requirements for reporting communicable diseases? Did you report this case control in your quarterly administrative meetings? Do you report to the IHSC Public Health, Safety, and Preparedness Unit all detainees diagnosed with a communicable disease of public health significance? Does the medical isolation room(s) provide negat medical first lay eyes on Ms. HERNANDEZ? How is medical notified if a detainee appears ill upon arrival? Was medical notified in this case? What is the Tb protocol? Did the RN place a mask on Ms. HERNANDEZ? What is the protocol for abnormal VS What is the policy for signing off orders? [Dr. b(6), b(7)(c ) wrote orders on 5/17. b(6), b(7)(c ), LPN noted these orders on 5/24. b(6), b(7)(c ), RN noted orders written by Dr. b(6), b(7)(c ) but her note doesn't include date or time.]*

Dr. b(6), b(7)(c ); *Did Ms. HERNANDEZ mention she had been evaluated on May 11, 2018 at an ER in California?*

For Official Use Only. This document contains pre-decisional and/or deliberative process information exempt from mandatory disclosure under the Freedom of Information Act, 5 U.S.C. 552(b) (5). Do not release without prior

**INTERVIEWS**

| Date | Location | Interviewer | Interviewee | Relevant Information |
|------|----------|-------------|-------------|---------------------|
| 6/19/18 | CCCC | CDR b(6), b(7)(c ) | RN b(6), b(7)(c ) | RN with 23 years experience - dialysis unit, home health, med/surg and county jail. Fulltime employee with Correct Care Solutions (CCS) at CCCC for 8 months. The following statements are responses made by RN b(6), b(7)(c ) to my questions related to the intake screening he performed on 5/17/18, and processes at CCCC.<br><br>We greet the detainees as they get off the incoming bus. The nurse checking the bus identifies detainees needing to be seen now and brings them straight to medical. Ms. HERNANDEZ didn't complain of anything and she was able to ambulate without assistance so she didn't stand out just to look at her. The nurse checking VS brought Ms. HERNANDEZ straight to me for intake instead of placing her back in the holding cell.<br>Ms. HERNANDEZ did not mention she had been evaluated on May 11, 2018 at an ER in California.<br>We have a protocol for abnormal vital signs but I can't quote it. I'm sure I should have called the doctor, and would have if the doctor hadn't come in for her shift on time.<br>We do not treat fever without a doctor's order.<br>Our Tb protocol requires we mask the patient and place directly in medical isolation then call a doctor. I did not do this. Ms. HERNANDEZ didn't wear a mask until she was brought out of the cell to see the doctor.<br>I did not perform a physical exam on Ms. HERNANDEZ. Looking back on it, I can see where I should have.<br>Our abnormal VS protocol requires we recheck the VS every 4 hours. But, if I took the time to recheck the temp, I could have done a full set just as easily.<br>We should have an order to place a patient in medical observation. I knew the doctor was expected within a few minutes and didn't want Ms. HERNANDEZ getting moved around so I put her in a respiratory isolation room for a few minutes without an order.<br>I knew she was sick. I was afraid if we didn't move her quickly, she may die on us that day. |
| 6/19/18 | CCCC | CDR b(6), b(7)(c ) | Dr. b(6), b(7)(c ), MD | Board certified family practice MD with over 30 years worldwide experience. 4 years corrections experience, 14 months at CCCC. Independent contractor to CCS . The following statements are responses made by Dr. b(6), b(7)(c ) to my questions related to her exam of Ms. HERNANDEZ on 5/17/18, and processes at CCCC.<br>Ms. HERNANDEZ was very ill, weak, dehydrated. I instructed for her to be sent directly to the ER because I feared she was dying. We could have done more as far as examination and diagnostics but that would have only delayed getting her to the hospital.<br>No, I don't recall Ms. HERNANDEZ reporting she was seen by a doctor before arriving here.<br>The temperature of 100.8 would not have been treated. I did not treat the other abnormal VS because those were not critical and I wanted the ER doctor to see what I was seeing.<br>Placing anyone in medical observation requires an order. No order was given in this case, but it wouldn't have changed anything. |
| 6/19/18 | CCCC | CDR b(6), b(7)(c ) | HSA b(6), b(7)(c ) | Registered dental hygienist x 20+ yrs. 21 years corrections experience. At CCCC x 18 months as HSA. The following statements are responses made by HSA b(6), b(7)(c ) to my questions related to processes at CCCC.<br>A nurse meets new arrivals at the bus. Anyone with an acute complaint or is obviously ill is brought directly to medical.<br>I think the staff did a good job identifying how ill Ms. HERNANDEZ was and getting her to a hospital so soon after her arrival. |

pg 1

**Date:** 6/19/18

**Time started:** 1000 – 1025

**Location:** CCCF

**Name:** [redacted]

**Title:** RN x 23 yrs.   *Dialysis (HR, pull house (chit complaints))*
*LTC management*
**Employer:** Correct Care   *here 14/17   6 1/2 yrs in a county jail.*
Solutions

**Background:**

1. Tell me what you remember about Ms. HERNANDEZ.

2. Do you speak Spanish proficiently?   *No   I used an interpreter*

3. Why did you use [redacted] Dental Asst. for interpretation?   *[mark]*

4. What time did medical first lay eyes on Ms. HERNANDEZ?   *at pre-screen*
*for*

5. How is medical notified if a detainee appears ill upon arrival?   *by nurse being present*

6. Was medical notified in this case?   *yes*

7. Did Ms. HERNANDEZ mention she had been evaluated on May 11, 2018 at an ER in California?   *I don't recall.*

8. What is the Tb protocol?   *We followed the policy in place.*

9. Did you place a mask on Ms. HERNANDEZ?   *I didn't. She wore a mask when she came out of intake I saw her [redacted]*

10. What is the protocol for abnormal VS at intake?   *I don't know. We have parameters though.*

11. Did ~~the~~ you perform a physical exam of Ms. HERNANDEZ?   *No.*

12. Should you have treated the temp of 100.8 at intake?   *We didn't want to push her stay before no cushion*
    And the temp of 102.0 at 0900 hours?

13. Should a complete set of vital signs have been obtained at 0900 hours versus just a temp?   *Yes. probably*

14. ~~What is the policy for placing someone in medical observation?~~

15. ~~Was that policy followed in this case?~~

16. Do you have anything else you would like to add?

pg 8

(b)(6); (b)(7)(C)

1. *[illegible handwriting]* on steady but seemed come in.
   VS were *[illegible]* *[illegible]* Doe.
   Her *[illegible]* were *[illegible]*, she appeared ill. I suspected
   dehydration.

**Date:** 6/19/18

**Time started:** 1030

**Location:** CCCC

**Name:** [(b)(6); (b)(7)(C)]    [(b)(6); (b)(7)(C)]   FP

**Title:** MD  X   3d yrs.   PA prin Ø MD

**Employer:** independent contracts Ø Carrand Care Solutions

**Background:** Extensive  'invation x d yrs. Has it writt

1. Tell me what you remember about Ms. HERNANDEZ.   she was very ill, weak

2. Did Ms. HERNANDEZ mention she had been evaluated on May 11, 2018 at an ER in California?   N.

3. What is the protocol for abnormal VS at intake?   see protocol in presentm

4. ~~What is the policy for signing off orders?~~

5. Should the RN have placed a mask on Ms. HERNANDEZ once the history was obtained during intake?   not necessarily

6. What is the protocol for abnormal VS at intake?   see protocol

7. Should the RN have documented a physical exam of Ms. HERNANDEZ at intake?

8. Should the RN have treated the temp of 100.8 at intake?   not within p doctrin

   And the temp of 102.0 at 0900 hours?   I was dressg a ay ways

9. Should a complete set of vital signs have been obtained at 0900 hours versus just a temp?   not necessary

9. What is the policy for placing someone in medical observation?   fq.  an orter

10. Was that policy followed in this case?   no

11. Do you have anything else you would like to add?

**Time Ended:**

**Date:** 6/19/18

**Time started:** 0900

**Location:** CCCC

**Name:** [redacted]

**Title:** RN HSA

**Employer:** Corrective Correct Care Solutions
BS *[illegible]*
MS *Health Admin[?]*
Corrections x 21 years
*If at 16/16 as HSA*

**Background:**

1. Tell me what you remember about Ms. HERNANDEZ.

2. How is medical notified if a detainee appears ill upon arrival?
*Nurse pre-screens detainees upon arrival*

3. Was medical notified in this case? N/A
*we report to alns dept of Health*

4. What is your policy/requirements for reporting communicable diseases?

5. Did you report this case of HIV? N/A - *no ident[?] fn't tem to designate her*
*no ☐ transfer ☐ logs*

6. Do you review and discuss infectious and communicable disease control in your quarterly administrative meetings? *Yes, we cover inf. control & CQI*

7. Do you report to the IHSC Public Health, Safety, and Preparedness Unit all detainees diagnosed with a communicable disease of public health significance? *Yes via the FMR*

8. Does the medical isolation room(s) provide negative pressure? *Yes - 2 rooms; list dates when is used.*

9. What is the Tb protocol? *isolate & notify fmr*

10. Did the RN place a mask on Ms. HERNANDEZ? *Yes, when he placed her in isolation the were it at all times she it out of cell*

11. What is the protocol for abnormal VS at intake? *There are parameters in the with fever ē print. RN follow*

12. Did the RN perform a physical exam of Ms. HERNANDEZ?
*No, [redacted] in cell and he refused this care. Will call MD*

13. Should the RN have treated the temp of 100.8 at intake? *"I don't know"*

    And the temp of 102.0 at 0900 hours? *Yes but we wait for the MD to determine what treatment & provide*

14. Should a complete set of vital signs have been obtained at 0900 hours versus just a temp? *Yes*

15. What is the policy for signing off orders? *No policy; all orders should be noted ē Dr/ea tail reported*

16. What is the policy for placing someone in medical observation?
*any tx we suspect a communicable disease and a MD order*

17. Was that policy followed in this case?   *Yes*

18. Do you have anything else you would like to add?   *No*

**Time Ended:**   0950

# EXHIBIT L

| ICE Documents that are Missing Pages | |
|---|---|
| **Date** | **Title** |
| 5/17/2018 | Cibola inmate/detainee commitment summary - Missing pages 5-8 and 10-11 of 12 |
| 5/17/2018 | Cibola property Disclaimer and telephone monitoring statements - Missing pages 1-9 |
| 5/17/2018 | ER Flow Sheet Record - ICE produced only 3 pages while CoreCivic produce the same document that was 6 total pages |
| 5/24/2018 | CIBOLA Form 1-203 - Missing page 2 of 2 |
| **CoreCivic Production- not produced by ICE** | |
| **Date** | **Title** |
| 3/27/2010 | Email re: ICE detainee from Honduras dies in Albuquerque hospital/Albuquerque Journal |
| 5/4/2018 | CoreCivic Memo re: Monthly Certification of Pending Litigation |
| 5/9/2018 | DHS Record of Deportable/Inadmissible Alien FORM I-213 |
| 5/11/2018 | DHS Determination of inadmissibility |
| 5/11/2018 | DHS Information about Credible Fear Interview |
| 5/11/2018 | DHS Notice and Order of Expedited Removal - Determination of Inadmissibility |
| 5/11/2018 | DHS Notice of Alien Ordered remove/departure verification |
| 5/11/2018 | DHS Record of Deportable/Inadmissible Alien FORM I-213 |
| 5/11/2018 | DHS Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act |
| 5/11/2018 | Jurat for record of sworn statement in proceedings under section 235(b)(1) of the act |
| 5/11/2018 | Record of Deportable/Inadmissible Alien |
| 5/11/2018 | Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act |
| 5/14/2018 | Email re: Streamlined transfer process Bed Space Request for Transfer to Cibola from SYS/POE |
| 5/15/2018 | CCS Memo Significant Event Notice - Death RE: Hernandez Jeffry |
| 5/15/2018 | CCS Memo Significant Event Notice - Transported to Lovelace Medical Center - Admitted -Hernandez Jeffry |
| 5/15/2018 | Email re: Incoming transgender |

| 5/15/2018 | Email re: Transgender |
|-----------|------------------------|
| 5/15/2018 | I-216 Workbook Instruction with List of Transfers with details |
| 5/16/2018 | CCS General Notes |
| 5/16/2018 | Correct Care Solutions, Inc. Physician's Orders |
| 5/16/2018 | Correct Care Solutions, Inc. Progress Notes |
| 5/17/2018 | CCS Consent to Medical Interpretation |
| 5/17/2018 | CCS Medical Clearance Form for Patient Workers |
| 5/17/2018 | Consent to Medical Interpretation |
| 5/17/2018 | CoreCivic ADO Report |
| 5/17/2018 | CoreCivic Commander's Daily Log |
| 5/17/2018 | Email re: Commander log 5-17-18 |
| 5/17/2018 | Email re: Daily Roster |
| 5/17/2018 | Email re: Hernandez, Jeffry 206 418 141 |
| 5/17/2018 | Email re: ICE Hospital Placement Hernandez |
| 5/18/2018 | CCS Memo Significant Event Notice - Update Detainee in Hospital - ICU -Hernandez Jeffry |
| 5/18/2018 | Email re: Admitted to Hospital - Hernandez, Jeffry 206 418 141 |
| 5/18/2018 | Email re: Daily Roster |
| 5/18/2018 | Email re: Hernandez, Jeffry 206 418 141 |
| 5/18/2018 | Email re: ICE Detainee Hernandez |
| 5/19/2018 | CCS Memo Significant Event Notice - Update Detainee in Hospital - ICU -Hernandez Jeffry |
| 5/19/2018 | CoreCivic Commander's Daily Log |
| 5/19/2018 | Email re: Commander log 5-19-18 |
| 5/19/2018 | Email re: Hernandez, Jeffry 206 418 141 |
| 5/19/2018 | Off-site Post Checklist and Equipment Checklist |
| 5/20/2018 | CCS Memo Significant Event Notice - Update Detainee in Hospital - ICU -Hernandez Jeffry |
| 5/20/2018 | CoreCivic Commander's Daily Log |
| 5/20/2018 | Email re: Commander log 5/20/2018 |
| 5/20/2018 | Email re: Hernandez, Jeffry 206 418 141 |

| 5/20/2018 | Off-site Post Checklist |
|---|---|
| 5/21/2018 | CCS Memo Significant Event Notice - Update Detainee in Hospital - ICU -Hernandez Jeffry |
| 5/21/2018 | Email re: Daily Roster |
| 5/22/2018 | CCCS Daily Roster Billing Agency: Immigration and Customs Enforcement |
| 5/22/2018 | CCS Memo Significant Event Notice - Update Detainee in Hospital - ICU -Hernandez Jeffry |
| 5/22/2018 | CoreCivic Commander's Daily Log |
| 5/22/2018 | Email re: 09-18J Off-site post checklist 5/22/18 Lovelace |
| 5/22/2018 | Email re: Commander log 5/22/2018 |
| 5/22/2018 | Email re: Hernandez, Jeffry 206 418 141 |
| 5/22/2018 | Memo re: Significant Event Notice Update Detainee in Hospital ICU |
| 5/22/2018 | Off-site Post Checklist and Equipment Checklist |
| 5/23/2018 | CCCR Daily Roster Billing Agency: Immigration and Customs Enforcement |
| 5/23/2018 | CCS Memo Significant Event Notice - Death RE: Hernandez Jeffry |
| 5/23/2018 | Corecivic Cibola County Correctional Center Commander's Daily Log |
| 5/23/2018 | Email re: Daily Roster |
| 5/23/2018 | Email re: Hernandez, Jeffry 206 418 141 |
| 5/23/2018 | Off-site Post Checklist |
| 5/24/2018 | CCCR Daily Roster Billing Agency: Immigration and Customs Enforcement |
| 5/24/2018 | CCS Memo Significant Event Notice - Death RE: Hernandez Jeffry |
| 5/24/2018 | CCS Memo Significant Event Notice - Update Detainee in Hospital - ICU -Hernandez Jeffry |
| 5/24/2018 | Corecivic Cibola County Correctional Center Commander's Daily Log |
| 5/24/2018 | Email re: 09-18H12-05-23-2018 |
| 5/24/2018 | Email re: Commander Log 5-23-18 |
| 5/24/2018 | Email re: Hernandez, Jeffry 206 418 141 |
| 5/24/2018 | Email re: Hernandez, Jeffry Hospital Update |
| 5/24/2018 | Email: Daily Roster |
| 5/25/2018 | CCCR Daily Roster Billing Agency: Immigration and Customs Enforcement |
| 5/25/2018 | CCS Memo Significant Event Notice- Death Hernandez, Jeffry |
| 5/25/2018 | Email re: 5-1c Blank |
| 5/25/2018 | Email re: Commander Log 5-23-18 |

| 5/25/2018 | Email re: Hernandez Jeffry pronounced dead. |
|-----------|---------------------------------------------|
| 5/25/2018 | Email re: Hernandez, Jeffry 206 418 141 |
| 5/25/2018 | Email re: Solictud fots Roy Alexander Hernandez y Entrevista a sus companeros |
| 5/25/2018 | Email re: Transgender Detainee Hernandez - Priority 1 death of apparent natural causes |
| 5/25/2018 | Email: Daily Roster |
| 5/25/2018 | Incident Statement |
| 5/26/2018 | Email re: Hernandez, Jeffry 206 418 141 |
| 5/29/2018 | CCCR Daily Roster Billing Agency: Immigration and Customs Enforcement |
| 5/29/2018 | Email re: Daily Roster |
| 5/29/2018 | Email re: ICE detainee from Honduras dies in Albuquerque hospital/Albuquerque Journal |
| 5/31/2018 | Email re: NM Transgender migrant dies while in US custody |
| 5/31/2018 | Litigation reserves as of May 31, 2018 |
| 6/1/2018 | Email re: Corecivic Morning Clips |
| 6/5/2018 | CoreCivic Memo re: Monthly Certification of Pending Litigation |
| 6/5/2018 | Email re: Monthly Certification of Pending Litigation - CCCC |
| 6/6/2018 | Email re: AP question for story/on deadline |
| 6/7/2018 | Email re: Corecivic Morning Clips |
| 6/20/2018 | Email re: Hernandez Witness List - preliminary |
| 6/21/2018 | Email re: Hernandez Witness List - preliminary |
| 6/26/2018 | ICE External Reviews and Analysis Unit Jeffry Hernandez Detainee Death Review CCCC - Milan, NM 06/26/18-06/27/18 |
| 6/27/2018 | Email re: Article for you |
| 6/28/2018 | Email re: Article for you |
| 6/30/2018 | Litigation reserves as of June 30, 2018 |
| 7/6/2018 | Memo Monthly Certification of Pending Litigation |
| 7/9/2018 | Email re: Monthly Certification of Pending Litigation - CCCC |
| 7/17/2018 | Email re: New Mexico lawmakers weigh immigration detention oversight -San Antonio Express-News |
| 7/31/2018 | Litigation Reserves as of July 31, 2018 |
| 8/7/2018 | CoreCivic Memo re: Monthly Certification of Pending Litigation |

| | |
|---|---|
| 8/10/2018 | Email re: Certificate of Pending Litigation - Cibola County Correctional |
| 8/13/2018 | CoreCivic Memo re: Monthly Certification of Pending Litigation |
| 8/13/2018 | Email re: Certificate of Pending Litigation CCC |
| 8/22/2018 | Email re: Milestone |
| 8/31/2018 | Litigation reserves as of August 31, 2018 |
| 9/5/2018 | Memo Monthly Certification of Pending Litigation |
| 9/7/2018 | Email re: Certificate of Pending Litigation CCC |
| 9/10/2018 | Email re: Certificate of Pending Litigation CCC |
| 9/30/2018 | Litigation Reserves as of September 30, 2018 |
| 10/4/2018 | CoreCivic Memo re: Monthly Certification of Pending Litigation |
| 10/4/2018 | Email re: Certificate of Pending Litigation - Cibola County Correctional October 2018 |
| 10/31/2018 | Litigation reserves as of October 31, 2018 |
| 11/5/2018 | CoreCivic Memo re: Monthly Certification of Pending Litigation |
| 11/9/2018 | Email re: Certificate of Pending Litigation - Cibola County Correctional November 2018 |
| 11/26/2018 | Email re: Article Daily Beast |
| 11/26/2018 | Email re: Comment from CoreCivic? |
| 11/26/2018 | Email re: Inquiries re: Death of Roxsana Hernandez |
| 11/26/2018 | Email re: Inquiry from the Washington Post/Roxsana Rodriguez |
| 11/26/2018 | Email re: POSSIBLE SPAM TIME-SENSITIVE- Death of Roxsana Hernandez |
| 11/27/2018 | Email re: Corecivic Morning Clips |
| 11/27/2018 | Email re: Roxsana Hernandez, interview with The New York Times |
| 11/28/2018 | Email re: CBS News request |
| 11/28/2018 | Email re: Corecivic Morning Clips |
| 11/28/2018 | Email re: Daily News monitor |
| 11/28/2018 | Email re: Independent autopsy of transgender detainee |
| 11/28/2018 | Email re: NY Times - Independent Autopsy of Transgender Asylum Seeker who died in ICE Custody Shows Signs of Abuse |
| 11/29/2018 | Email re: Corecivic Morning Clips |
| 11/29/2018 | Email re: Daily News monitor |

| 11/29/2018 | Email re: NY Times - Independent Autopsy of Transgender Asylum Seeker who died in ICE Custody Shows Signs of Abuse |
| --- | --- |
| 11/30/2018 | Litigation Reserves as of November 30, 2018 |
| 12/5/2018 | CoreCivic Memo re: Monthly Certification of Pending Litigation |
| 12/6/2018 | Email re: Corecivic Morning Clips |
| 12/6/2018 | Immigration Equality Report about the transgender unit of the Cibola, NM Core Civic Detention Center |
| 12/8/2018 | Email re: Possible Spam - Daily beast Article with MI State Rep comments |
| 12/10/2018 | Email re: Certificate of Pending Litigation - Cibola County Correctional December 2018 |
| 12/12/2018 | Email re: Report Re Cibola Visit |
| 12/25/2018 | Email re: CBS News press request |
| 12/25/2018 | Email re: Story for Wednesday on CalPERS engaging CoreCivic |
| 12/31/2018 | Litigation reserves as of December 31, 2018 |
| 1/7/2019 | CoreCivic Memo re: Monthly Certification of Pending Litigation |
| 1/14/2019 | Email re: Certificate of Pending Litigation - Cibola County Correctional January 2019 |
| 1/14/2019 | Email re: KOB Albuquerque response (Roxsana Hernandez Rosario) |
| 1/14/2019 | Email re: Statement and news coverage re: transgender detainee death and autopsy - November 2018 |
| 2/21/2019 | Email re: LaSalle Corrections Records Request |
| 3/31/2019 | Litigation reserves as of March 31, 2019 |
| 4/1/2019 | Email re: CRCL site visit for Cibola Correctional Center 19-CRCL-1837 |
| 4/2/2019 | Email re: CRCL site visit for Cibola Correctional Center 19-CRCL-1837 |
| 4/5/2019 | CoreCivic Memo re: Monthly Certification of Pending Litigation |
| 4/8/2019 | Email re: CRCL site visit for Cibola Correctional Center 19-CRCL-1837 |
| 4/10/2019 | CoreCivic Memo re: Monthly Certification of Pending Litigation - April 2019 |
| 4/30/2019 | DHS CRCL Document and Information Request Cibola County Correctional Center Onsite Investigation April 30-May 2, 2019 |
| Undated | Agency Classification |
| Undated | Alpha Roster |
| Undated | Daily Roster |
| Undated | DHS Jurat for Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act |

| Undated | DHS Office for Civil Rights and Civil Liberties pamphlet |

# EXHIBIT M

**To:** [Redacted].Carrillo@ice.dhs.gov' [Redacted].I.Carrillo@ice.dhs.gov];
[Redacted].Marquez@ice.dhs.gov' [Redacted].Marquez@ice.dhs.gov];
[Redact].King@ice.dhs.gov'[Redact].King@ice.dhs.gov]; '[Reda].Villalobos@ice.dhs.gov'[Redact].Villalobos@ice.dhs.gov];
[Redacted].Diesel@ice.dhs.gov' [Redacted].Diesel@ice.dhs.gov];
[Redact].Cartagena@ice.dhs.gov' [Reda].Cartagena@ice.dhs.gov]; 'Elp-epc-detention-sddo@ice.dhs.gov'[Elp-epc-detention-sddo@ice.dhs.gov]; [Redacted].Diaz@ice.dhs.gov [Redacted].Diaz@ice.dhs.gov]; 'Epc-camp-space-requests@ice.dhs.gov'[Epc-camp-space-requests@ice.dhs.gov]; Wasson, [Redacted]
[Redacted].Wasson@ice.dhs.gov]; [Redacted].Olvera@ice.dhs.gov [Redacted].Olvera@ice.dhs.gov];
[Redacted].Ramirez2@ice.dhs.gov [Redacted].Ramirez2@ice.dhs.gov];
[Redacted d].Tapia@ice.dhs.gov[Redact].Tapia@ice.dhs.gov];
[Redacted].Cisneros@ice.dhs.gov[ [Redacted]Cisneros@ice.dhs.gov];
[Redacted].Belmonte@ice.dhs.gov[ [Redacted].Belmonte@ice.dhs.gov]; 'Elp-epc-detention-sddo@ice.dhs.gov'[Elp-epc-detention-sddo@ice.dhs.gov]; Garcia, [Redacted] l.A.Garcia@ice.dhs.gov]
**Cc:** Ramsey, [Redacted].Ramsey3@corecivic.com]; Cibola ADO[CibolaADO@corecivic.com];
Barris[Redacted].Barris@corecivic.com]
**From:** Anaya, [Redacted]
**Sent:** Wed 5/23/2018 2:40:06 PM
**Subject:** daily roster
ROSTER 05-23-18.pdf
DAILY ROSTER 05-22-18.xlsx

.......
,,,,,,,
Total Detainees: 920
Alpha Roster: 271
Average Length of Stay: 30
Total Classification Low: 118
Total Classification Medium Low: 112
Total Classification Medium High: 14
Total Classification High: 11
Total Unclassified: 17
Admissions Roster: 56
Release Roster: 10
Seg Roster: 4
Unit 900: 51

|  | CAPACITY | ASSIGNED | BEDS AVAILABLE Per POD | Beds Available for unit |
|---|---|---|---|---|
| 100-A | 38 | 0 | 38 | 40 |
| 100-B | 38 | 38 | 0 | |
| 100-C | 41 | 41 | 0 | |
| 100-D | 41 | 39 | 2 | |
| 200-A | 38 | 38 | 0 | 47 |
| 200-C | 41 | 0 | 41 | |
| 200-D | 41 | 35 | 6 | |
| GP Total | 278 | 191 | 87 | |

| | | | | |
|---|---|---|---|---|
| 200-B | 38 | 21 | 17 | |
| High/MH Sub Total | 38 | 21 | 17 | |
| 900-A | 8 | 6 | 2 | |
| 900-B | 16 | 15 | 1 | 9 |
| 900-C | 8 | 6 | 2 | |
| 900-D | 16 | 15 | 1 | |
| 900-E | 8 | 8 | 4 | |
| 900-F | 4 | 1 | 3 | |
| Transgender Sub Total | 60 | 51 | 13 | |
| | | | | |
| Not Assigned housing | | 4 | | |
| SMU | | 4 | | |
| Available Medium High | | | 17 | |
| Available Transgender | | | 13 | |
| Available Low and Medium Low | | | 87 | |

| |
|---|
| Transgender |
| High/Medium High |

 Anaya

Records Clerk, Cibola County Corrections Center

CoreCivic

P.O. Box 3540
2000 Cibola Loop
Milan NM, 87021

Redacted

CC_Hernandez000246

Redacted anaya@corecivic.com

CC_Hernandez000247

# EXHIBIT N

**To:** [Redacted] .king@ice.dhs.gov[dean.king@ice.dhs.gov]; Cartagena [Redacted] Cartagena@ice.dhs.gov]
**Cc:** Koehn, [Redacted] Koehn@corecivic.com]; Valdez, [Redacted] Valdez@corecivic.com]; Jones Jr, [Redacted] .JonesJr@corecivic.com]; Ayers, [Redacted] .Ayers@corecivic.com]; [Redacted] Gonzalez [Redacted] Gonzalez@correctcaresolutions.com]; Barris [Redacted] .Barris@corecivic.com]; [Redacted] Soberanez[ Soberanez@correctcaresolutions.com]; [Redacted] Jordan [Red] Jordan@CorrectCareSolutions.com]; [Redacted] Griego [R] Griego@CorrectCareSolutions.com]; [Redacted] Sanchez[ Sanchez@CorrectCareSolutions.com [Redacted] Ronay [R] Ronay@correctcaresolutions.com]
**From:** [Redacted] Baca
**Sent:** Wed 5/23/2018 3:22:38 AM
**Subject:** Re: HERNANDEZ, Jeffry 206 418 141
Hernandez, Jeffry Hospital Update 5 22 18 _PM.pdf

......
,,,,,,

*** This is an EXTERNAL email. Please exercise caution. DO NOT open attachments or click links from unknown senders or unexpected email. ***

All FYSA-

Detainee remains in ICU, is stable, has had low grade fever most of the day, and little to no appetite. No results yet for lymph node biopsy.


Thank you,

[Redacted]


[Redacted] Baca, HSA
Cibola County Correctional Center
Private Prisons Division
*Correct Care Solutions*
2000 Cibola Loop
P.O. Box 3540
Milan, NM 87021
[Redacted] Fax
[Red] Baca@correctcaresolutions.com

---

**From:** [Redacted] Baca
**Sent:** Tuesday, May 22, 2018 9:57 AM
**To:** [Redact] .king@ice.dhs.gov; Cartagena [Redacted]
**Cc:** Koehn, [Redacted] valdez@corecivic.com; Jones Jr, [Redacte] Ayers [Redacted] . Gonzalez; Barris [Redacted] Barris@corecivic.com) [Redacted] Soberanez; [Redacted] Jordan [Redacte] Griego; [Redacted] Sanchez; [Redacted] Ronay
**Subject:** Re: HERNANDEZ, Jeffry 206 418 141
All FYSA-
Detainee is stable. Slightly lower blood pressure today and spiked a fever last night of 102.2F. No longer on blood pressure medication or IV antibiotics. Patient on oral Bactrim every 24 hours and once a week injection of penicillin. Nurse and attending to have a meeting later this morning to discuss course of care.
[Redacted] Baca, HSA
Cibola County Correctional Center
Private Prisons Division
*Correct Care Solutions*



2000 Cibola Loop
P.O. Box 3540
Milan, NM 87021
<span style="background:black;color:white">Redacted</span> Fax
R <u>Baca@correctcaresolutions.com</u>

**From:** <span style="background:black;color:white">Redacted</span> Baca
**Sent:** Monday, May 21, 2018 4:01 PM
**To:** <span style="background:black;color:white">Redact</span> .king@ice.dhs.gov; Cartagena <span style="background:black;color:white">Redacted</span>
**Cc:** Koehn, <span style="background:black;color:white">Redacted</span> valdez@corecivic.com; Jones Jr, <span style="background:black;color:white">Redact</span> Ayers, <span style="background:black;color:white">Redacted</span> . Gonzalez; Barris <span style="background:black;color:white">Redacted</span> Barris@corecivic.com) <span style="background:black;color:white">Redacted</span> Soberanez <span style="background:black;color:white">Redacted</span> Jordan; <span style="background:black;color:white">Redac</span> Griego; <span style="background:black;color:white">Redacted</span> Sanchez; <span style="background:black;color:white">Redacted</span> Ronay
**Subject:** Re: HERNANDEZ, Jeffry 206 418 141
All FYSA-

See attached update for the above ICE detainee at Lovelace Medical Center - Downtown. Detainee had one axillary lymph node removed and is stable. Detainee to be moved back up to ICU. The nurse in recovery does not know if the detainee will return to negative pressure as she reports the AFB's results were all negative. We will attempt to get another report later this evening once the detainee has returned to ICU.

Thank you,

<span style="background:black;color:white">Redacted</span>

<span style="background:black;color:white">Redacted</span> Baca, HSA
Cibola County Correctional Center
Private Prisons Division
*Correct Care Solutions*
2000 Cibola Loop
P.O. Box 3540
Milan, NM 87021
<span style="background:black;color:white">Redacted</span> ) Fax
R /Baca@correctcaresolutions.com

**From:** <span style="background:black;color:white">Redacted</span> . Baca
**Sent:** Monday, May 21, 2018 5:36 AM
**To:** dean <span style="background:black;color:white">Reda cted</span> @ice.dhs.gov; Cartagena, Eric; <span style="background:black;color:white">Redacted</span> .Savion@ice.dhs.gov
**Cc:** Koehn, <span style="background:black;color:white">Redacted</span> valdez@corecivic.com; Jones Jr, <span style="background:black;color:white">Redact</span> Ayers, <span style="background:black;color:white">Redacted</span> Gonzalez; Barris <span style="background:black;color:white">Redacted</span> Barris@corecivic.com); <span style="background:black;color:white">Redacted</span> Soberanez; <span style="background:black;color:white">Redacted</span> Jordan; <span style="background:black;color:white">Redact</span> Griego; <span style="background:black;color:white">Redacted</span> Sanchez; <span style="background:black;color:white">Redacted</span> Ronay
**Subject:** Re: HERNANDEZ, Jeffry 206 418 141
All FYSA-

Update for Sunday evening - Detainee remans stable, is afebrile, and no longer on medication to keep her blood pressure up. Needle biopsy planned for Monday.

Thank you,

<span style="background:black;color:white">Redacted</span>

<span style="background:black;color:white">Redacted</span> Baca, HSA
Cibola County Correctional Center
Private Prisons Division



**Correct Care Solutions**
2000 Cibola Loop
P.O. Box 3540
Milan, NM 87021
Redacted Fax
Redacted /Baca@correctcaresolutions.com

**From:** Redacted Baca
**Sent:** Sunday, May 20, 2018 9:45 AM
**To:** Redacted .king@ice.dhs.gov; Cartagena, Redacted .Savion@ice.dhs.gov
**Cc:** Koehn, Redacted .valdez@corecivic.com; Jones Jr Redacted ; Ayers, Redacted Gonzalez; Barris Redacted Barris@corecivic.com); Redacted Soberanez; Redacted Jordan; Redac Griego; Redacted Sanchez; Redacted Ronay
**Subject:** Re: HERNANDEZ, Jeffry 206 418 141

All FYSA-

Morning update for detainee in ICU. No change from yesterday, patient remains stable.

Thank you,

Redacted

Redacted Baca, HSA
Cibola County Correctional Center
Private Prisons Division
**Correct Care Solutions**
2000 Cibola Loop
P.O. Box 3540
Milan, NM 87021
Redacted Fax
Red Baca@correctcaresolutions.com

**From:** Redacted . Baca
**Sent:** Saturday, May 19, 2018 9:40 PM
**To:** Redac .king@ice.dhs.gov; Cartagena, Redacted .Savion@ice.dhs.gov
**Cc:** Koehn, Redacted .valdez@corecivic.com; Jones Jr Redact ; Ayers, Redacted . Gonzalez; Barris Redacted .Barris@corecivic.com) Redacted Soberanez; Redacted Jordan Redact Griego; Redacted Sanchez; Redacted Ronay
**Subject:** Re: HERNANDEZ, Jeffry 206 418 141

All FYSA-

Dr. Birdsong was able to call and get a more detailed report from the night shift nurse on the above detainee.

Yesterday's CT of abdomen shows enlarged spleen and peritoneal lymph nodes - Concern is T-Cell Lymphoma - most likely will need fine needle biopsies. Patient remains stable - Absolute CD 4 count is 189.

CC_Hernandez001528



Redacted Baca, HSA
Cibola County Correctional Center
Private Prisons Division
*Correct Care Solutions*
2000 Cibola Loop
P.O. Box 3540
Milan, NM 87021
Redacted Fax
R Baca@correctcaresolutions.com

**From:** Redacted Baca
**Sent:** Saturday, May 19, 2018 7:54 PM
**To:** Redacted .king@ice.dhs.gov; Cartagena, Redacted Savion@ice.dhs.gov
**Cc:** Koehn, Redacted .valdez@corecivic.com; Jones Jr, Redacted ; Ayers, Redacted . Gonzalez; Barris Redacted Barris@corecivic.com); Redacted . Soberanez; Redacted Jordan; Redacted Griego; Redacted Sanchez; Redacted Ronay
**Subject:** Re: HERNANDEZ, Jeffry 206 418 141
All FYSA-

See attached SEN. So far only one report available from the hospital today. Detainee is stable, eating, remains in isolation and on IV fluids with piggyback antibiotics and blood pressure medication. Detainee did spike fever today of 104. Was seen by infectious disease doctor, but the nurse could not find any report. Detainee had CT of neck today due to enlarged lymph nodes - report may be available tomorrow. Nurse reports nothing was found on abdominal CT done yesterday.

Thank you,

Redacted

Redacted Baca, HSA
Cibola County Correctional Center
Private Prisons Division
*Correct Care Solutions*
2000 Cibola Loop
P.O. Box 3540
Milan, NM 87021
Redacted Fax
R Baca@correctcaresolutions.com

**From:** Redacted . Baca
**Sent:** Friday, May 18, 2018 11:46 PM
**To:** Redacted king@ice.dhs.gov; Cartagena, Redacted .Savion@ice.dhs.gov
**Cc:** Koehn, Redacted .valdez@corecivic.com; Jones Jr, Redacted Ayers, Redacted . Gonzalez; Barris Redacted Barris@corecivic.com); Redacted Soberanez Redacted Jordan; Redacted Griego; Redacted Sanchez; Redacted Ronay
**Subject:** Re: HERNANDEZ, Jeffry 206 418 141
All FYSA-

PM update for the above ICE Detainee in ICU at Lovelace Medical Center - Albuquerque.

Detainee remains stable. Had CT with contrast of abdomen today to look for abscess. No results until tomorrow. Obtaining information from the hospital via phone continues to be a challenge. Dr. Birdsong will be calling the hospital tomorrow and attempt to make contact with the attending physician to get tomorrow's report.

Thank you,

Redacted

Redacted  Baca, HSA
Cibola County Correctional Center
Private Prisons Division
*Correct Care Solutions*
2000 Cibola Loop
P.O. Box 3540
Milan, NM 87021
Redacted  Fax
Redacted Baca@correctcaresolutions.com

**From:** Redacted Baca
**Sent:** Friday, May 18, 2018 1:51 PM
**To:** Redacted king@ice.dhs.gov; Cartagena Redacted .Savion@ice.dhs.gov
**Cc:** Koehn, Redacted .valdez@corecivic.com; Jones Jr Redacted Ayers, Redacted Gonzalez; Barris Redacted Barris@corecivic.com Redacted Soberanez; Redacted Jordan Redacted Griego; Redacted Sanchez; Redacted Ronay
**Subject:** HERNANDEZ, Jeffry 206 418 141
All FYSA-

Attached please find the update SEN for the above detainee hospitalized at Lovelace Medical Center.

The hospital will not provide updates over the phone so I went to the hospital and spoke with the Charge Nurse in ICU and explained the situation. She is going to have the doctor speak with the hospital administrator and risk management to be sure they are not violating any privacy rules.

Until this can be worked out we will rely on calling the transport team and asking to speak with the nurse.

The detainee is stable and in negative pressure isolation as they are trying to rule out TB.

Since this detainee is in ICU, I will be updating twice daily.

Thank you,

Redacted

Redacted Baca, HSA
Cibola County Correctional Center
Private Prisons Division
**Correct Care Solutions**
2000 Cibola Loop
P.O. Box 3540
Milan, NM 87021
Redacted Fax
R Baca@correctcaresolutions.com

CC_Hernandez001531

# EXHIBIT O

**To:** [Redacted] Sims'[R]Sims@Wellpath.us]
**Cc:** Montford, [Redacted] Montford@corecivic.com]; Ellis, [Redacted].Ellis@corecivic.com]
**From:** Miller, [Redact]
**Sent:** Tue 4/2/2019 6:31:57 PM
**Subject:** FW: CRCL site visit for Cibola County Correctional Center 19-CRCL-1837
CIBOLA INFORMATION REQUEST (final).pdf
CRCL Handout_v2.pdf

:;;;;;;
Good afternoon [Redacted]

Attached you find a notification and information request for an upcoming DHS Civil Liberties/Civil Rights review. A great deal of the information that needs to be collected and produced is medical information. We have a deadline to produce by April 15, 2019, so I self-imposed an internal deadline for all responsible parties to produce their documentation by April 12, 2019.

When we met earlier to discuss this need, [Redacted] seemed concerned about the availability of the requested information and the timeframe being given to produce this documentation. As you are aware, these are very important reviews, so I want to make sure that a proper sense of urgency is being given to this task and make sure you were aware of this review.

It is important that we produce this information timely and accurately. Please let me know if you have questions, concerns, or ideas of how to best meet these requirements.

**From:** King, [Redacted]
**Sent:** Monday, April 01, 2019 10:55 AM
**To:** Miller, [Redact] ; [Redacted] Baca
**Subject:** FW: CRCL site visit for Cibola County Correctional Center 19-CRCL-1837

**\*\*\* This is an EXTERNAL email. Please exercise caution. DO NOT open attachments or click links from unknown senders or unexpected email. \*\*\***

My deadline for all documents are April 22.
See attached.
For items that you do not have or I will have to get, let me know.
R/
[Redacted] King
SDDO
ICE Albuquerque
[Redacted]

**From:** Villanueva, [Redacted]
**Sent:** Monday, April 1, 2019 10:46 AM
**To:** Jepsen, [Redacted] Jepsen@ice.dhs.gov>; King, [Redacted] King@ice.dhs.gov>; Ibarra, [Redacted]
[Redacted] Ibarra@ice.dhs.gov>
**Cc:** ERO CRCL < [Redacted] @ice.dhs.gov>; Villanueva, [Redacted].Villanueva@ice.dhs.gov>
**Subject:** CRCL site visit for Cibola County Correctional Center 19-CRCL-1837
To: El Paso Field Office
From: ERO Custody Programs Sensitive Inquiry Response Team
Due: April 22, 2019
Good morning,
ERO has been notified that the Office of Civil Rights and Civil Liberties (CRCL) is planning to conduct a site visit to the Cibola County Correctional Center on April 30-May 2, 2019. The Custody Programs Unit (CPU) works on all ERO CRCL related issues and site visits. I will be assigned as your POC to act as a liaison between your office and CRCL and guide you through this process. To provide your office with some CRCL background information I have attached a CRCL handout (last paragraph – Compliance Branch is most helpful), please feel free to

share this information with your staff and/or facility staff.

Attached you can find the draft Request for Information, this is a list of multiple documents needed for review by CRCL prior to the site visit or while on-site. The attachment "Cibola Request for information" is an extensive list for requested documents.

We will have access granted to the Share Point site below. You should receive a confirmation email granting your access to the site. Please verify you are able to access. I will start a document log to help us track which documents were uploaded and what is pending. CRCL does review these documents prior to the Site Visit, which should help facilitate a smoother site visit and less time at the facility. The deadline for all documents, need to be uploaded by April 22, 2019. Here is the link for the uploading of all requested documents.

Share Point folder "Cibola County Correctional Center Site visit":

https://sp.ice.dhs.gov/sites/civlib/Shared%20Documents/Forms/AllItems.aspx?RootFolder=%2Fsites%2Fcivli
b%2FShared%20Documents%2FFY19%20Site%20Visit%20Information%2FCibola%20County%20Correctional%
20Center&FolderCTID=0x0120001D0023462E40C04BBAB25A2502FE2BA6&View=%7B9CF77641%2DF437%2D
463F%2D80E6%2DCC2E198A1430%7D

Under this folder there are 3 specific folders (base on the original request document) to help all parties track and access the information: "Corrections", "Medical Care" and "Mental Health care". When your POC uploads the information into SharePoint, please ensure each document is properly labeled by name. This will help in recording and retrieving documents. Documents that are too large to upload should be broken down into smaller files. If a document is unable to be uploaded, it will need to be made available at the time of the visit and prior notification needs to be provided to the [Redacted] @ice.dhs.gov mailbox. . Thank you for you assistance.

[Redacted] Villanueva
Detention Deportation Officer (HQ-DDO-SNA)
Compliance Officer for Special Populations and Programs
[Redacted] Mobile
SNA Office

NOTICE: This e-mail (including any attachments) is intended for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected by applicable law. If you are not the intended recipient or the employee or agent responsible for delivery of this e-mail to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or use of this e-mail or its contents is strictly prohibited. If you received this e-mail in error, please notify the sender immediately and destroy all copies.

# EXHIBIT P

Individual and Enterprise Level ICE and DHS Email Accounts Not Included in ICE's
<u>Production as compared with the CoreCivic Document Production</u>

    **a.**  ICE Enterprise-Level Accounts:

         i.  IAO.DOMESTICMISSIONS@ice.dhs.gov;

        ii.  LGBTI.Care@ice.dhs.gov;

      iii.  ELP-EPC-DETENTION-SDDO@ice.dhs.gov;

      iv.  ELP-ABQ-COORD-NOTIFY@ice.dhs.gov;

        v.  IHSC_ElPaso@ice.dhs.gov

      vi.  ELP-EPC-COR@ice.dhs.gov

    vii.  EPC-Transportation@ice.dhs.gov

   viii.  ELP-EPC-GPS@ice.dhs.gov

      ix.  ELP-EPC-Detention-SDDO@ice.dhs.gov

        x.  EPC-Camp-Space-Requests@ice.dhs.gov

      xi.  ICEMedia@ice.dhs.gov

    xii.  EPC-Asylum@ice.dhs.gov

   xiii.  ERO CRCL

   xiv.  HQ DDO SNA

    **c.**  Individual ICE Custodian Emails:

        i.  ICE ABQ Supervisory Detention and Deportation Officer Dean King Dean.King@ice.dhs.gov
      ii.  El Paso Field Office Director Dianne Witte Diane.L.Witte@ice.dhs.gov
     iii.  Andrew R. Lorenzen-Strait, ICE Deputy Assistant Director - Andrew.R.Lorenzen-Strait@ice.dhs.gov
     iv.  Lana.Khoury@ice.dhs.gov  (ICE HQ)
      v.  El Paso Assistant Field Office Director T Hernandez
     vi.  El Paso ERO Official Cartagena
    vii.  San Diego – Otay Mesa Supervisory Detention and Deportation Officer Park
   viii.  Olvera

1

      ix.  Mendivil
      x.  Rivera
      xi.  Linscott
      xii.  Paramo
      xiii.  Callahan
      xiv.  Herring
      xv.  Albarran
      xvi.  DeAnda-Ybarra
      xvii.  Donald George
      xviii.  Brian Jasperson
      xix.  Rebecca.M.Savion@ice.dhs.gov
      xx.  Carrillo
      xxi.  Marquez
      xxii.  Villalobos
      xxiii.  Diesel
      xxiv.  Wasson
      xxv.  M.Ramirez2@ice.dhs.gov
      xxvi.  Diaz
      xxvii.  Tapia
      xxviii.  Cisneros
      xxix.  Belmonte
      xxx.  A. Garcia
      xxxi.  Villanueva
      xxxii.  Ibarra

**d.** DHS Individual Custodian Emails
      i.  FNU murphy@hq.dhs.gov
      ii.   scott@hq.dhs.gov

# EXHIBIT Q

Thank you for sharing. There are a couple of things in the press release that are slightly off from this report:

https://www.ice.gov/news/releases/ice-detainee-honduras-passes-away-new-mexico-hospital

Your report says: On May 13, 2018, ICE ERO booked Ms. HERNANDEZ into custody at the San Luis Regional Detention Center (SLRDC), San Luis, Arizona.
- Our press release says she enetered ICE custody May 13 in San Diego.

Your report says On April 24, 2009, Ms. HERNANDEZ was convicted of prostitution (NCIC – 4004).
- Our press release says In May 2009, she was convicted of lewd, immoral, indecent conduct and prostitution.

Should this report state that the autopsy is still pending with New Mexico ME office? That is a big question we have been getting with the media. Otherwise, no concerns.

Thank you,
Dani

**From:** (b)(6); (b)(7)(C)
**Sent:** Friday, December 7, 2018 10:54 AM
**To:** (b)(6); (b)(7)(C)                                    Smith, Stewart D
(b)(6); (b)(7)(C)                          Bennett, Danielle

**Cc:** Johnson, Tae D (b)(6); (b)(7)(C)              (b)(6); (b)(7)(C)
(b)(6); (b)(7)(C)
(b)(6); (b)(7)(C)                        Loiacono, Adam V
(b)(6); (b)(7)(C)
**Subject:** RE: [FOR REVIEW] Additional Detainee Death Reports for ICE.gov Posting
**Importance:** High

All,

I will be sending OPA the requested web content shortly.  For your awareness, this will include the detainee death synopsis for Roxana Hernandez – the transgender woman that has been gaining increased attention in the media.

(b)(5); (b)(6); (b)(7)(C)

I will hold my request for OPA to post until I receive concurrence from these three entities.

Thanks,

(b)(6); (b)(7)(C)

*Acting Unit Chief, SPPU*
*DHS / ICE / ERO / Custody Programs*
*Mobile: 202-210-*(b)(6);
*Desk: 202-732-*(b)(6);
(b)(6); (b)(7)(C)


**From:** (b)(6); (b)(7)(C)
**Sent:** Monday, December 3, 2018 1:49 PM
**To:** (b)(6); (b)(7)(C)
(b)(6); (b)(7)(C)                              Smith, Stewart D
(b)(6); (b)(7)(C)                     Loiacono, Adam V
(b)(6); (b)(7)(C)                 ; (b)(6); (b)(7)(C)
(b)(6); (b)(7)(C)                    Bennett, Danielle
(b)(6); (b)(7)(C)
**Cc:** Johnson, Tae D (b)(6); (b)(7)(C)
**Subject:** RE: [FOR REVIEW] Additional Detainee Death Reports for ICE.gov Posting

All – I have asked (b)(6); (b)(7)(C) on my team to take the lead on this. We will give with no final cause of death listed. I don't think it is necessary.

Dani – we need an OPA person to help us create a "Detainee Death" landing page that will be on the Immigration Enforcement menu. https://www.ice.gov/detention-reform#tab1 It will then be a chronological listing by date of death and name, with a hyperlink to the individual synopsis. (b)(6); can explain this to the OPA developer.                                                                                   (b)(7)

Attached is what we will post first via this new landing page.

For new deaths – including the recent suicide at NWDC and the one over the weekend, CMD will seek IHSC and OPLA approval of the summary.

Thanks all!

(b)(6); (b)(7)(C)

*Deputy Assistant Director*
*ICE Child Welfare and LGBTI Coordinator*
*DHS/ICE/ERO/Custody Programs*
Desk: 202.732.(b)(6);
iPhone:  202.431.(b)(6);
(b)(6); (b)(7)(C)

**From:** (b)(6); (b)(7)(C)
**Sent:** Friday, November 30, 2018 4:27 PM
**To:** (b)(6); (b)(7)(C)
(b)(6); (b)(7)(C)                                                    Smith, Stewart D
(b)(6); (b)(7)(C)                              Loiacono, Adam V

**Cc:** Johnson, Tae D (b)(6); (b)(7)(C)                  Bennett, Danielle
(b)(6); (b)(7)(C)
**Subject:** RE: [FOR REVIEW] Additional Detainee Death Reports for ICE.gov Posting

(b)(6);
(b)(5)

Thanks,

(b)(6); (b)(7)(C)

Chief
Detention and Removal Law Section
Enforcement and Removal Operations Law Division
Office of the Principal Legal Advisor
DHS  U.S. Immigration and Customs Enforcement
202 73(b)(6) office)
(b)(6); (b)(7)(C)

--- ATTORNEY/CLIENT PRIVILEGE --- ATTORNEY WORK PRODUCT ---
This document contains confidential and/or sensitive attorney/client privileged information or attorney work product and
is not for release, review, retransmission, dissemination or use by anyone other than the intended recipient.  Please
notify the sender if this message has been misdirected and immediately destroy all originals and copies.  Any disclosure
of this document must be approved by the Office of the Principal Legal Advisor, U.S. Immigration and Customs
Enforcement.  This document is for INTERNAL GOVERNMENT USE ONLY.  FOIA exempt under 5 U.S.C. § 552(b)(5).

**From:** (b)(6); (b)(7)(C)
**Sent:** Wednesday, November 28, 2018 6:22 PM
**To:** (b)(6); (b)(7)(C)
(b)(6); (b)(7)(C)                                                    Smith, Stewart D
(b)(6); (b)(7)(C)                              Loiacono, Adam V

**Cc:** Johnson, Tae D (b)(6); (b)(7)(C)                  Bennett, Danielle
(b)(6); (b)(7)(C)
**Subject:** RE: [FOR REVIEW] Additional Detainee Death Reports for ICE.gov Posting

I know we've answered some questions on this. I'll look through my emails and get
back to you.

# EXHIBIT R

**From:**          (b)(6); (b)(7)(C)
**Sent:**          4 Jun 2018 13:28:55 +0000
**To:**            (b)(6); (b)(7)(C)
**Cc:**
**Subject:**       Hernandez - Prelim Mortality Review
**Attachments:**   Preliminary Mortality Review Report_HERNANDEZ_FINAL.PDF

See attached.

(b)(6); (b)(7)(C)          Unit Chief
ICE Office of Professional Responsibility
External Reviews and Analysis Unit
Office - (202) 732- (b)(6);
Mobile – (202) 907 (b)(7)(C)

Page 246

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 247

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 248

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 249

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

# EXHIBIT S

*PREDECISIONAL/DELIBERATIVE PROCESS – FOR INTERNAL DISCUSSION ONLY / NOT FOR DISTRIBUTION*

*Office of Enforcement and Removal Operations*
*ICE Health Service Corps*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, D.C. 20536



**U.S. Immigration
and Customs
Enforcement**

March 27, 2019

**MEMORANDUM FOR:**   Stewart D. Smith, DHSc, MPH   (b)(6); (b)(7)(C)
Assistant Director
ICE Health Service Corps

**THROUGH:**   (b)(6); (b)(7)(C)
Deputy Assistant Director of Clinical Services/Medical Director
ICE Health Service Corps

(b)(6); (b)(7)(C)   (b)(6); (b)(7)(C)
Chief of Staff
ICE Health Service Corps

**FROM:**   (b)(6); (b)(7)(C)   (b)(6); (b)(7)(C)
Western Regional Clinical Director
ICE Health Service Corps

CDR (b)(6); (b)(7)(C) PA-C   (b)(6); (b)(7)(C)
Western Regional Advanced Practice Provider
ICE Health Service Corps

CDR (b)(6); (b)(7)(C)   RN   (b)(6); (b)(7)(C)
Field Medical Coordinator
ICE Health Service Corps

CDR (b)(6); (b)(7)(C) RN (b)(6); (b)(7)(C)
Investigator
ICE Health Service Corps

**SUBJECT:**   Mortality Review – Report of Findings
Jeffry (Roxsana) HERNANDEZ, A206 418 141

*For Official Use Only. This document contains pre-decisional and/or deliberative process information exempt from mandatory disclosure under the Freedom of Information Act, 5 U.S.C. 552(b) (5). Do not release without prior approval of U.S. Immigration and Customs Enforcement, ICE Health Service Corps.*

*PREDECISIONAL/DELIBERATIVE PROCESS – FOR INTERNAL DISCUSSION ONLY / NOT FOR DISTRIBUTION*

Mortality Review - Jeffry (Roxsana) HERNANDEZ, A206 418 141
Page 2 of 5

**Executive Summary:**

On May 9, 2018, U.S. Customs and Border Protection (CBP) apprehended Ms. Jeffry (Roxsana) HERNANDEZ, a 33-year-old Honduran transgender female, at the San Ysidro, California (CA), port of entry. On May 11, 2018, while in CBP custody, a medical doctor (MD) evaluated Ms. HERNANDEZ for untreated human immunodeficiency virus (HIV), headache, and cough. The MD diagnosed Ms. HERNANDEZ with a reported history of HIV with weight loss, cough, headache, tachycardia (rapid heart rate), and rule out sepsis (infection throughout the body). The MD ordered a respiratory mask to be placed on Ms. HERNANDEZ, and to transport her to Scripps Emergency Department (ED) in Chula Vista, CA, to rule out active infection. On this same day, the ED MD evaluated Ms. HERNANDEZ, diagnosed her with bronchitis (inflammation of the airways which can cause cough and fever), prescribed Tylenol (acetaminophen) for fever, Z-Pack (azithromycin, an antibiotic) and albuterol inhaler (opens airways) for bronchitis, and documented Ms. HERNANDEZ was cleared for travel and incarceration.

On May 13, 2018, U.S. Immigration and Customs Enforcement (ICE) assumed custody of Ms. HERNANDEZ and transferred her on May 16, 2018, to Cibola County Correctional Center (CCCC) in Milan, New Mexico (NM), a designated transgender facility.

On May 17, 2018, a CCCC registered nurse (RN) completed Ms. HERNANDEZ's intake screening, documented her weight as 89 pounds, noting a history of untreated HIV, and persistent cough with weight loss over the previous several weeks. The RN identified Ms. HERNANDEZ's heart rate was elevated at 136 (normal is 60 – 100), blood pressure was decreased at 81/61 (normal is 90/60 – 120/80), and she had a fever of 100.8 (normal is 97.8 to 99.1). The RN placed Ms. HERNANDEZ on medical observation pending the MD's evaluation. On this same date, the MD evaluated Ms. HERNANDEZ and referred her to Cibola General Hospital (CGH) ED in Milan, NM, by CCCC vehicle transport. The CGH ED MD diagnosed Ms. HERNANDEZ with septic shock, anemia, dehydration, HIV, lymphadenopathy (enlarged lymph nodes), nodular pulmonary disease, and thrombocytopenia (low platelet levels), and arranged for Ms. HERNANDEZ's transfer to Lovelace Medical Center (LMC) in Albuquerque, NM, by air transport.

At LMC, Ms. HERNANDEZ was admitted as an inpatient and, in addition to the above conditions, she was diagnosed with: acquired immune deficiency syndrome (AIDS), acute respiratory distress syndrome (ARDS), splenomegaly (enlarged spleen), herpes simplex virus (HSV), syphilis, Multicentric Castleman's Disease (a rare disease causing overgrowth of cells in multiple lymph nodes; signs and symptoms are often nonspecific, and are mild in some people, but can be life threatening in others. Symptoms may include enlarged lymph nodes in multiple regions, fever, weight loss, nausea, rash, and/or enlarged liver and spleen), and malnutrition. Ms. HERNANDEZ's condition progressively deteriorated requiring intubation and mechanical ventilation (machine used to assist or replace spontaneous breathing).

*For Official Use Only. This document contains pre-decisional and/or deliberative process information exempt from mandatory disclosure under the Freedom of Information Act, 5 U.S.C. 552(b) (5). Do not release without prior approval of U.S. Immigration and Customs Enforcement, ICE Health Service Corps.*

*PREDECISIONAL/DELIBERATIVE PROCESS – FOR INTERNAL DISCUSSION ONLY / NOT FOR DISTRIBUTION*

Mortality Review - Jeffry (Roxsana) HERNANDEZ, A206 418 141
Page 3 of 5

On May 24, 2018, Ms. HERNANDEZ went into cardiac arrest and was successfully resuscitated. Despite treatment efforts, Ms. HERNANDEZ experienced five more cardiac arrest events. On May 25, 2018, Ms. HERNANDEZ was pronounced dead at 3:32 a.m. An autopsy is currently pending with the NM Office of the Medical Investigator (OMI) to determine the manner and cause of death. On June 8, 2018, the NM OMI released a preliminary cause of death as consistent with untreated HIV and without signs of abuse or injury. An addendum will be issued as soon as the information becomes available.

## Mortality Finding:

A mortality review committee (MRC) determined that Ms. HERNANDEZ's medical care at CCCC was provided within the safe limits of practice and did not directly or indirectly contribute to her death.

Based on the overall findings of this review, Ms. HERNANDEZ arrived at CCCC in a seriously ill state. The CCCC staff identified her presenting condition and transferred her to a higher level of treatment facility, before her condition deteriorated any further.

## Mortality Review Detailed Report:

On May 25, 2018, ICE Health Service Corps (IHSC) received notification of the death of ICE detainee Jeffry (Roxsana) HERNANDEZ, A206 418 141. Ms. HERNANDEZ, a 33-year-old Honduran transgender female, was in ICE custody from May 13 to May 25, 2018, and assigned to CCCC on the date of her death.

The IHSC Assistant Director requested a mortality review to learn from Ms. HERNANDEZ's death by reviewing the care provided and the circumstances leading up to her death. The goal of the mortality review is to determine the appropriateness of clinical care; ascertain whether changes to policies, procedures, or practices are warranted; and identify issues that require further study.

The following report is based on the findings of the MRC, which convened on March 13, 2019. The review was based on the following information: 1) Ms. HERNANDEZ's CCCC medical records, emergency medical services (EMS) and community hospital records; 2) incident and notification reports; 3) ICE ENFORCE Alien Removal Module (EARM) and ICE ENFORCE Alien Detention Module (EADM) database records; 4) Ms. HERNANDEZ's CCCC detention file; 5) Ms. HERNANDEZ's death certificate and autopsy report; 6) an on-site review and staff interviews conducted by fact-finder, CDR (b)(6); (b)(7)(C) at CCCC on June 19, 2018; and 7) applicable CCCC and ICE detention standards.

*For Official Use Only. This document contains pre-decisional and/or deliberative process information exempt from mandatory disclosure under the Freedom of Information Act, 5 U.S.C. 552(b) (5). Do not release without prior approval of U.S. Immigration and Customs Enforcement, ICE Health Service Corps.*

*PREDECISIONAL/DELIBERATIVE PROCESS – FOR INTERNAL DISCUSSION ONLY / NOT FOR DISTRIBUTION*

Mortality Review - Jeffry (Roxsana) HERNANDEZ, A206 418 141
Page 4 of 5

ICE detention standards used for this review: ICE Performance-Based National Detention Standards (PBNDS), 2011 (revised December 2016). Below is a summary of health care delivery/program strengths, weaknesses, and recommendations found during this review:

### *Strengths*

During this review, it was clear that CCCC staff are earnest and dedicated professionals. Strengths identified during this investigation were: 1) medical prescreening of new arrivals; 2) adherence to current clinical practice guidelines; 3) policy addressing critical vital signs; 4) medical facility, staffing, detainee population, and mission were all congruent; 5) and, most importantly, CCCC medical staff were receptive to this review process and looked forward to receiving constructive feedback.

### *Weaknesses*

1. **Continuity of care.**

   - The CBP's *Assessment for Transport, Escort, and Detention* form provided to ICE, did not reflect any of Ms. HERNANDEZ's known medical conditions, or the medications prescribed during her visit to Scripps ED on May 11, 2018.

   - The medical transfer summaries received by CCCC did not reflect Ms. HERNANDEZ's current medical conditions, or the medications prescribed during her visit to Scripps ED on May 11, 2018.

2. **Medical housing.**

   - CCCC staff placed Ms. HERNANDEZ in medical housing without obtaining a physician's order for admission.

   Applicable standards of care for this finding:

   - PBNDS 2011: 4.3, Medical Care; section V.F. *Facilities;* (3) *Medical Housing*.
   - CCCC Policy: G-03, *Infirmary Care*.
   - CCCC Policy: A-13, *Clinical Protocol*.

3. **Reporting of abnormal vital signs.**

   - CCCC staff recorded abnormal vital signs during the intake screening process but did not notify the physician.

*For Official Use Only. This document contains pre-decisional and/or deliberative process information exempt from mandatory disclosure under the Freedom of Information Act, 5 U.S.C. 552(b) (5). Do not release without prior approval of U.S. Immigration and Customs Enforcement, ICE Health Service Corps.*

Mortality Review - Jeffry (Roxsana) HERNANDEZ, A206 418 141
Page 5 of 5

Applicable standards of care for this finding:

- CCCC Policy: A-06, *Critical Vital Signs.*

### Recommendations

- Forward these findings to the IHSC Deputy Assistant Director (DAD) of Health Care Compliance (HCC).
- The IHSC DAD of HCC will share these findings through appropriate communication channels to ICE, the CCCC administrator and health authority for review and any action(s) deemed appropriate.
- ICE should consider sharing relevant findings with CBP.

End of report.

*For Official Use Only. This document contains pre-decisional and/or deliberative process information exempt from mandatory disclosure under the Freedom of Information Act, 5 U.S.C. 552(b) (5). Do not release without prior approval of U.S. Immigration and Customs Enforcement, ICE Health Service Corps.*

# EXHIBIT T

**From:** [b)(6); (b)(7)(C)]
**Sent:** 30 Nov 2018 17:06:57 +0000
**To:** [b)(6); (b)(7)(C)]
**Cc:**
**Subject:** FW: DDR HERNANDEZ
**Attachments:** HERNANDEZ Draft AD Memo AJC.doc, HERNANDEZ Draft Report AJC CAL.docx

Hey [b)(6);]

Can you please review and make the appropriate edits to this DDR? I'm also going to flip you one other email with two edits we need if they weren't already caught by [b)(6);]. If there is anything you can't address, let us know.

If all is good, please create the binder (we didn't make one yet as [b)(6);] just wanted e-copies) and leave all on [b)(6);] desk so she can elevate first thing Monday.

Thanks!


Sent with BlackBerry Work
(www.blackberry.com)

**From:** [b)(6); (b)(7)(C)]
**Date:** Friday, Nov 30, 2018, 11:58 AM
**To:** [b)(6); (b)(7)(C)]
**Subject:** FW: DDR HERNANDEZ



Sent with BlackBerry Work
(www.blackberry.com)

**From:** [b)(6); (b)(7)(C)]
**Date:** Thursday, Nov 29, 2018, 3:55 PM
[b)(6); (b)(7)(C)]

**Subject:** DDR HERNANDEZ

Good afternoon all,

Sorry for the delay on this. Please see the attached suggested edits/comments. After your review, please send binder upstairs for ([b)(6); (b)(7)(C)]) review.

Thank you,
[b)(6); (b)(7)(C)]

(b)(6); (b)(7)(C) Special Agent/Special Assistant
ICE Office of Professional Responsibility – Associate Director's Office
☎ Office: (202) 732 (b)(6); | Cell: (646) 773- (b)(6);

Page 742

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 743

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 744

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 745

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 746

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 747

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 748

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 749

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 750

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 751

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 752

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 753

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 754

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 755

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 756

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 757

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 758

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 759

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

| | |
|---|---|
| **From:** | (b)(6); (b)(7)(C) |
| **Sent:** | 5 Oct 2018 19:54:37 +0000 |
| **To:** | (b)(6); (b)(7)(C) |
| **Subject:** | HERNANDEZ draft |
| **Attachments:** | HERNANDEZ Draft Report 10.05.18.docx |

Good afternoon,

(b)(6); (b)(7)(C) hope your trip was great!

Attached is the completed initial draft of the HERNANDEZ DDR (SharePoint is acting up today so the version there is not the most recent – I will update by COB if it starts to cooperate).  I'll put together the rest of the package next week.  Apologies if there are typos or some passive voice scattered throughout.  Wanted to get this to you ASAP so you could potentially review before I depart.

CC has already responded to the couple questions I had.  We are still pending death certificate and autopsy reports (don't even have official prelim) but ERO (b)(6); is following up on this again for me.

Thanks!

(b)(6); (b)(7)(C)
Management & Program Analyst
External Reviews and Analysis Unit
ICE, Office of Professional Responsibility
950 L'Enfant Plaza, SW
Washington, DC 20536
Cell: (202) 270-(b)(6);
(b)(6); (b)(7)(C)

Page 704

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 705

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 706

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 707

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 708

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 709

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 710

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 711

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 712

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 713

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 714

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 715

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 716

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 717

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 718

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

Page 719

Withheld pursuant to exemption

(b)(5) ; WIF Draft

of the Freedom of Information and Privacy Act

# EXHIBIT U

**DETAINEE DEATH REVIEW**
**Jeffry HERNANDEZ,** [(b)(6); (b)(7)(C)]
**Healthcare and Security Compliance Analysis**
**Cibola County Correctional Center, Milan, New Mexico**

As requested by the ICE Office of Professional Responsibility (OPR), External Reviews and Analysis Unit (ERAU), Creative Corrections participated in a review of the death of detainee Jeffry HERNANDEZ. A site visit was conducted June 26 through 27, 2018 by ERAU personnel [(b)(6); (b)(7)(C)] Management and Program Analyst and team leader; [(b)(6); (b)(7)(C)] Management and Program Analyst; Creative Corrections contract personnel [(b)(6); (b)(7)(C)] Security Subject Matter Expert; and [(b)(6); (b)(7)(C)] Registered Nurse, Healthcare Subject Matter Expert. In addition, telephone interviews were conducted between August 22, 2018 and September 18, 2018 by [(b)(6); (b)(7)(C)] and Creative Corrections Program Manager [(b)(6); (b)(7)(C)] Contractor participation was requested to determine compliance with the ICE 2011 Performance Based National Detention Standards (PBNDS), 2016 revisions, governing medical care and security operations.

This report was prepared collaboratively by [(b)(6); (b)(7)(C)]
Included is a case synopsis, description of the Cibola County Correctional Facility (CCCC) and its medical services, a narrative summary of events, and conclusions. The information and findings herein are based on analysis of detainee HERNANDEZ's detention file and medical record, tour of the intake and medical areas, interviews of CCCC and ERO personnel, and review of hospital and air transport records, facility policies, video surveillance footage, and available incident related documentation.

## SYNOPSIS

Jeffry HERNANDEZ, a 33 year-old transgender woman, entered the United States at the San Ysidro Port of Entry requesting asylum on May 9, 2018, one week before she was admitted to CCCC. On May 11, 2018 while still in the custody of U.S. Customs and Border Protection (CBP), she was examined by a physician following screening by a CBP officer. The physician documented she was human immunodeficiency virus (HIV) positive, emaciated, and ill appearing with a productive cough. She was sent to a hospital the same day where cleared for tuberculosis (TB) and given medications for bronchitis. Available evidence indicates ERO did not receive documentation of the physician's examination, the hospital report, or medications.

HERNANDEZ remained in CBP custody until May 14, 2018 while ICE Enforcement and Removal Operations (ERO) arranged for her transport and ultimate detention at CCCC, a facility

designated for housing transgender detainees.  She was in ERO custody for 56 hours before she was admitted to CCCC, an estimated 24 of which were in two detention facilities, six in the San Luis Regional Detention Center and 18 in the El Paso Service Processing Center.  The remaining time in ERO custody prior to HERNANDEZ's admission to CCCC was spent in transit.  HERNANDEZ was not medically screened at either the San Luis or El Paso facilities because her stay at both facilities was brief and her transfer was imminent.

During medical intake screening at CCCC, HERNANDEZ reported she was HIV positive and never treated.  She also reported significant weight loss in the past month and a half.  Vital signs were abnormal, she had a persistent cough, and appeared very malnourished and dehydrated.  A physician was notified and the detainee was examined on an expedited basis.  The physician diagnosed untreated HIV, dehydration, starvation, and fever with cough.   She ordered HERNANDEZ's transport to the local hospital for intravenous fluids to treat dehydration and to rule out an infection secondary to HIV and pneumonia.

Following evaluation and diagnostic testing, the emergency department physician determined that detainee HERNANDEZ's condition required care beyond the hospital's scope.  She was transferred by air to a hospital in Albuquerque, New Mexico and admitted to the intensive care unit (ICU).  She remained in the ICU for eight days, during which she received intravenous antibiotics, medication to increase her blood pressure, abdominal and neck CT scans, multiple blood tests, and chest x-rays.  HERNANDEZ's condition began to deteriorate following thoracentesis to remove excess fluid between the lungs and chest wall on the seventh day of her hospitalization, following which she was intubated and placed on a ventilator.  She experienced multiple episodes of cardiac arrest over the course of the five hours preceding her death.  Resuscitative efforts failed following a final episode and at 3:32 a.m. on May 25, 2018, death was pronounced.

The reported preliminary cause of death was cardiac arrest.  The death certificate and autopsy report are not available as of the date of this report.

## MEDICAL SERVICES

CCCC is scheduled for its first American Correctional Association accreditation audit in October 2018.  CCCC is not accredited by the National Commission on Correctional Health Care.

Healthcare services are provided seven days per week 24 hours per day by contractor Correct Care Solutions (CCS) based in Nashville, Tennessee.  Although the staffing plan allocates 31.8 positions, 32.5 positions were filled at the time of the site visit.  They included the following: Health Services Administrator (HSA); two physicians; one full time nurse practitioner (NP); three part time NPs; one dentist; Director of Nursing (DON);  12 full time registered nurses



(RN); one part time RN, three full time licensed practical nurses (LPN); one part-time LPN; two licensed mental health counselors (LMHC); one pharmacy technician; and four medical record clerks.  Services provided under independent contract include tele-psychiatry 20 hours per week; pharmacy, radiology and laboratory.  The HSA reported that due to difficulty hiring LPNs in the area, RNs fill five LPN positions.   The reviewer confirmed the credentials of medical staff involved in detainee HERNANDEZ's care were current and primary-source verified.

## FACILITY DESCRIPTION

CCCC was built by Cibola County and purchased in 1998 by contractor CoreCivic, formerly Corrections Corporation of America.  The facility houses male and transgender ICE detainees, Cibola County inmates, and United States Marshal Service detainees.  The facility capacity is 1204.  On May 25, 2018, the date of detainee HERNANDEZ's death, the facility population was 953, including 309 ICE detainees.

There are three perimeter fences surrounding the facility.  Razor wire is along the top of the outer perimeter fence and between the two fences furthest from CCCC buildings.  Visitors seeking entry to the secure perimeter are processed in a small building and pass through a metal detector, and personal items are searched by way of an X-ray machine.   Visitors are then issued identification badges and move within the facility under escort.  Video surveillance cameras are used throughout the facility to monitor and record events.

## SUMMARY OF EVENTS

**May 9, 2018**
ERO's Detainee Death Notice documents HERNANDEZ applied for admission to the US at the San Ysidro Port of Entry.

**May 11, 2018**
[(b)(6); (b)(7)(C)] completed an ICE Health Services Corps (IHSC) In-Processing Health Screening Form, entering "no" for all questions.  The form includes a handwritten note stating, "HIV Positive/No Meds".

>  **Note:** [(b)(6), (b)(7)(C)] title is not identified on the form, but multiple forms provided to reviewers identify him as a CBP officer.

---

DETAINEE DEATH REVIEW: Jeffry HERNANDEZ                                                              Page 3
Medical and Security Compliance Analysis
September 28, 2018



A printed CBP San Ysidro SIGMA EVENT report modified by [b)(6); (b)(7)(C)] this date includes a handwritten note stating, "HIV Positive No meds/Fever chills".

[b)(6); (b)(7)(C)] MD documented completion of a physical examination on a Mission Medical Support New Patient Comprehensive Exam form.   He wrote that the detainee's chief complaints were HIV, a headache, and cough.  HERNANDEZ reported she was diagnosed with HIV five months earlier and over the past month, lost 40 pounds and had recurring vomiting and diarrhea. Recorded vital signs were as follows:  elevated temperature of 99.5, elevated pulse of 134, respirations 18, blood pressure 112/70, and pulse oxygen 99 percent.  The examination findings were that HERNANDEZ was emaciated and ill appearing with a productive cough.    Doctor [b)(6);] assessment and plan identified HIV, weight loss, cough, headache and tachycardia[1] and directed transfer to the emergency room for chest X-ray and evaluation to rule out active infection[2] and sepsis.  He also directed that HERNANDEZ wear a mask, and noted that she was not medically cleared for transport and detention.

A report from Scripps Mercy Hospital, Chula Vista, CA documents a positive finding for bronchitis, a normal chest X-ray, and that there was no clinical evidence of tuberculosis.  The report, also dated May 11, 2018, includes instructions for Tylenol[3] for fever, Z-Pack[4], and an Albuterol inhaler[5].  Detainee HERNANDEZ was cleared for travel and incarceration.

>   **Note:**  Reviewers are not familiar with CBP processes; therefore, no explanation for the two-day delay in medical screening and tuberculosis clearance can be offered.

>   **Note:**  It is unknown whether the medications listed on the hospital report were dispensed or given to HERNANDEZ.

**May 12, 2018**
By email timed 4:30 p.m., ICE/ERO San Diego requested transfer of 19 detainees, including HERNANDEZ, to CCCC under the streamlined transfer process.    The email was written by [b)(6); (b)(7)(C)] (title unknown) and was directed to two email groups and multiple persons with ICE email addresses. [b)(6); (b)(7)(C)] Supervisory Detention and Deportation Officer (SDDO), ICE Albuquerque, replied at 7:21 p.m. stating bed space at CCCC was approved.

---

[1] Tachycardia is a heart rate that that exceeds the normal resting rate.  Normal pulse rate for an adult is 60 to 100 beats per minute.
[2] Chest X-rays identify lung infections such as TB, pneumonia, and bronchitis.
[3] Tylenol is a brand name for acetaminophen.
[4] Z-Pack is an antibiotic.
[5] An albuterol inhaler is a bronchodilator to relax muscles in the lung.

DETAINEE DEATH REVIEW: Jeffry HERNANDEZ                                    Page 4
Medical and Security Compliance Analysis
September 28, 2018



**May 13, 2018**

By email timed 8:21 a.m. to ICE Air Charter Operations, [(b)(6); (b)(7)(C)] requested 19 seats for 19 transgender females.  He wrote that they were apprehended at the San Ysidro Port of Entry and were to be transferred directly from there to the El Paso, Texas Area of Responsibility, noting, "…arrangements have been made with the receiving office to have a complete medical evaluation upon arrival.  Therefore they will not need certain medications at the time of transport; i.e., HIV medication."  May 22, 2018 was the flight date referenced by [(b)(6);] corrected to May 15, 2018 by subsequent email.

> **Note:**  As detailed below, the first complete medical evaluation of HERNANDEZ after she was picked up at San Ysidro was at CCCC, 56 hours after she entered ERO custody.  She passed through the San Luis Regional Detention Center and El Paso Service Processing Center (EPSPC) before being transferred to CCCC.

**May 14, 2018**

By email timed 10:34 a.m., [(b)(6); (b)(7)(C)] ICE Air Charter Operations, approved transport from the Phoenix-Mesa Gateway Airport to the El Paso Airport on May 15, 2018.

According to [(b)(6); (b)(7)(C)], SDDO assigned to the ERO San Diego Field Office, LaSalle Corrections transportation officers for the San Luis Regional Detention Center (SLRDC) picked up HERNANDEZ and 18 other transgender detainees at the San Ysidro Point of Entry at approximately 12:00 p.m.  Their transport was requested by email the day before.  The detainees arrived at SLRDC at 6:00 p.m. and according to Assistant Field Office Director (AFOD) [(b)(6);] [(b)(6);] were placed in a holding cell.  He reported that because their departure was imminent, the detainees were not medically screened.  Asked whether ERO was aware of any medical information received from CBP when HERNANDEZ's custody was transferred, both AFOD [(b)(6); (b)(7)(C)] stated they assume the CBP officer [(b)(6);] screening was received, but knew of nothing further.

**May 15, 2018**

A LaSalle Corrections Transport Trip Log lists HERNANDEZ among other detainees who departed SLRDC on a bus bound for the Phoenix-Mesa Gateway Airport at 12:00 a.m.  The bus arrived at 4:00 a.m. and according [(b)(6); (b)(7)(C)] the detainees boarded a flight to El Paso.  The time of flight departure is unknown, although according to [(b)(6); (b)(7)(C)] SDDO assigned to the ERO El Paso, the flight arrived in El Paso at 2:48 p.m.  He said the passengers were met by ICE personnel and then turned over to contractor Global Precision Systems for transport by bus to the EPSPC.

ICE form G-391 documents the bus arrived at EPSPC at 3:15 p.m.  According to SDDO [(b)(6);] HERNANDEZ was placed in a housing unit with other transgender detainees pending

DETAINEE DEATH REVIEW: Jeffry HERNANDEZ                                                          Page 5
Medical and Security Compliance Analysis
September 28, 2018

transfer to CCCC the next day. He stated that if HERNANDEZ did not voice a medical concern and none were observed by officers involved in her transport or movement into EPSPC, no medical screening would have taken place. He confirmed with EPSPC healthcare personnel that they had no record of her; therefore, no medical concerns were brought to their attention.

## May 16, 2018

ICE form G-391documents a total of 29 detainees were processed for transport to "ICE CAP" in Albuquerque, New Mexico between 8:30 and 9:45 a.m. The time of arrival at ICE CAP was 2:30 p.m. According to [(b)(6); (b)(7)(C)] ICE CAP refers to the ERO sub-office in Albuquerque where there is a "meet and greet" with officers assuming custody for transport to designated detention facilities. He said that HERNANDEZ and the other detainees were turned over to the custody of CCCC transport officers. The time of departure for CCCC was not documented.

Per CCCC video surveillance footage, a Transcor[6] bus carrying 28 detainees arrived at the facility's sallyport gate at **7:59 p.m.** At **8:10 p.m.**, nine detainees were removed from the bus and escorted into the facility. At **8:13 p.m.**, 19 more detainees were removed from the bus. Booking Officer [(b)(6); (b)(7)(C)] informed the review team that the detainees in the second group were transgender and included HERNANDEZ.

> **Note**: The EADM shows HERNANDEZ was booked into CCCC approximately nine hours before video evidence shows she arrived.

The detainees were escorted into the facility at **8:43 p.m.** after restraints were removed. Form I-216, Record of Persons Transferred, documents all 19 transgender detainees were classified low custody by ERO. CCCC's intake area has seven holding cells, a property room, a shower room and three medical examination rooms. The video shows the detainees were taken to holding cells once inside the facility. Five at a time, the detainees were then escorted to the property room where they were provided with facility uniforms, shoes, linens, a hygiene kit and an identification card. During tour of the intake area, a property officer informed reviewers that arriving detainees' personal property is inventoried and then laundered by detainee workers before being placed in storage. HERNANDEZ's property included a jacket, shirt and underwear and one pair each of socks, shoes and pants. She signed a receipt for the items and forms acknowledging receipt of facility property, the right of CCCC to inspect non-privileged mail and to monitor non-attorney telephone calls, and receipts for the National ICE Detainee Handbook and the facility handbook.

> **Note**: With the exception of the handbook receipt, all forms were in English.

---

[6] Transcor America LLC is a subsidiary of CoreCivic and provides transportation services.



[b)(6), (b)(7)(C)] was questioned about completion of the admission process. He described HERNANDEZ as quiet and said she seemed scared. He acknowledged he does not speak Spanish but asserted he is able to communicate through hand gestures and using the few Spanish words he has learned. He stated that although Spanish speaking officers are available in the intake area, he did not ask for assistance or use the language line, to communicate. Officer [(b)(6);] recalled HERNANDEZ answered no when asked if she had any medical problems, and offered his observation that it "seemed like she had the common cold and looked like she was under the weather." He said the detainee "seemed to understand when he asked her other yes or no questions, answering no to each one. HERNANDEZ was able to stand and walk on her own and did not lean on the table or counters for support.

**May 17, 2018**
Video surveillance footage from the intake area shows the 19 transgender detainees were escorted to the medical waiting area at **2:23 a.m.** They all placed blankets on the floor and laid down. At **4:08 a.m.**, the detainees were provided with a beverage. Detainee HERNANDEZ got up to take the beverage and then sat in a chair to drink it. At **4:11 a.m.**, she went to the waiting area bathroom, returning in a minute and laying on the floor again. At **6:00 a.m.**, breakfast was served and detainee HERNANDEZ stood and walked to the door to retrieve a tray. She then sat on the floor and appears to have eaten the entire contents before returning the tray to staff at **6:14 a.m.**

Vital signs of detainees awaiting medical screening were taken by dental assistant [(b)(6);] this date. She reported she started this process at 6:00 a.m., although based on the video evidence, detainee HERNANDEZ was not called out of the waiting room until **7:26 a.m.** With the exception of normal respirations of 16 breaths per minute, her vital signs were abnormal, as follows: temperature and pulse elevated at 100.8 and 136, respectively; blood pressure low at 81/6; and pulse oxygen 92%[7]. She was five feet three inches tall and weighed 89 pounds. During interview [(b)(6);] stated the detainee looked ill so she put her paperwork aside so she would be the first one screened when the RN arrived.

At **7:35 a.m.** RN [(b)(6); (b)(7)(C)] conducted the intake screening. He signed and stamped two Medical Summary of Federal Prisoner/Alien in Transit forms to document his review, one reflecting HERNANDEZ departed from SLRDC on May 15, 2018; the second reflecting departure from EPC on May 16, 2018. The SLRDC form provides no information on TB clearance; the EPC form has a checkmark indicating a purified protein derivative (PPD)[8] was

---

[7] Normal vital signs for an adult are as follows: temperature 98.6, pulse 60 to 100 beats per minute, blood pressure 90/60 to 120/80, and respirations 12 to 18 breaths per minute. Normal pulse oxygen, which indicates the saturation of oxygen in the blood, is between 95 and 100 percent.

[8] A PPD skin test determines exposure to tuberculosis. Once planted, 48 to 72 hours must elapse before results



completed, but does not provide a date. The section for documenting current medical problems is blank on both forms. In the Medication Required for Care En Route section, the following printed information appears: "*DETAINEE IN ICE CUSTODY LESS THAN 72 HOURS* DETAINEE TRANSFER MEETS REQUIREMENTS PER JPATS[9] CABIN CREW POLICIES & PROCEDURES MANUAL 'Medical Regulations, Section D 4.(a), page 33, regarding TB clearance." [(b)(6); (b)(7)(C)] also signed the afore-described IHSC In-Processing Health Screening form completed on May 11, 2018 by CBP Officer [(b)(6), (b)(7)(C)] with all negative findings except for a handwritten note documenting, "HIV positive/NO MEDS". Neither of the transfer forms were signed and dated by SLRDC and EPC personnel.

> Note: The New Patient Comprehensive Exam form completed by [(b)(6), (b)(7)(C)] and report of Scripps Mercy Hospital, both dated May 11, 2018, were not received by CCCC. As discussed above, the hospital report documents a chest X-ray was negative, there was no clinical evidence of TB, and a positive finding for bronchitis. The report also includes directions for Tylenol for fever, an antibiotic, and albuterol inhaler. No medications were received with HERNANDEZ.

[(b)(6); (b)(7)(C)] documented HERNANDEZ speaks Spanish and that Ms. Ford served as interpreter for screening. [(b)(6);] co-signed the screening, Consent for Treatment, CCS Intake Education Information, and CCS Health Services Notice forms confirming she provided interpretation assistance. Detainee HERNANDEZ identified as transgender female and reported she was HIV positive and had Hepatitis A[10].

> Note: Following one of two entries documenting that detainee HERNANDEZ reported Hepatitis A, "[Patient] denies this" is written. As discussed below, she denied having Hepatitis A during physical examination by the physician.

[(b)(6), (b)(7)(C)] noted HERNANDEZ's current symptoms included cough, loss of appetite, and weight loss, writing, "[Patient] states loosing [sic] a lot of [weight] in the last month and a half." She reported she was not taking any medications.

> Note: It is unknown whether the medications listed on the Scripps Medical Center report were ever given to HERNANDEZ.

---

may be read.
[9] JPATS is the Justice Prisoner Alien Transportation System.
[10] Hepatitis A is a virus affecting the liver that is transmitted through food and water.

DETAINEE DEATH REVIEW: Jeffry HERNANDEZ
Medical and Security Compliance Analysis
September 28, 2018

Page 8



The mental health and suicide risk screening questions were answered in the negative, as were Prison Rape Elimination Act (PREA) questions with the exception of detainee HERNANDEZ's self-identification as transgender.

On a CCS Immunization, Tuberculosis, and Syphilis Testing Record, (b)(6); (b)(7)(C) documented he planted a PPD to test HERNANDEZ for TB.

> Note:` Asked about the TB test during interview, (b)(6); (b)(7)(C) said he had no knowledge of the chest X-ray performed at Scripps Medical Center because the report was not provided to CCCC. He also noted HERNANDEZ appeared sick, had a cough, and experienced significant weight loss, symptoms of possible TB. As for the check mark appearing on the EPC transfer summary indicating a PPD test was completed, HERNANDEZ was not held there long enough for it to be read; therefore, (b)(6); (b)(7)(C) action was appropriate.

(b)(6); (b)(7)(C) completed a Medical/Psychiatric Alert form, noting that there was obvious shaking in HERNANDEZ's hands and arms, her temperature was elevated, she complained of feeling weak, and reported significant weight loss in the past month. During interview, (b)(6); (b)(7)(C) commented the detainee appeared very malnourished and dehydrated, and that he referred her to the physician. (b)(6); (b)(7)(C) consulted with (b)(6); (b)(7)(C)                    , HSA concerning providing HERNANDEZ with fluids and electrolytes. She was given Ensure[11] and Pedialyte[12] and returned to the waiting area where the video shows she again laid on the floor. This occurred at **8:08 a.m.**

At **8:56 a.m.** (b)(6); (b)(7)(C) and another medical staff person are seen on video entering the waiting room and assisting detainee HERNANDEZ to her feet. During interview, (b)(6); (b)(7)(C) said (b)(6); (b)(7)(C) had called before she arrived for work and notified her of HERNANDEZ's condition. She also asked if the detainee could be given something for the elevated temperature and cough. (b)(6); (b)(7)(C) stated she told her no because she did not want to mask any symptoms and said she would be arriving at CCCC soon. She instructed them to push fluids. When she arrived, she went immediately to the waiting room. The video shows (b)(6); (b)(7)(C) and the other medical staff person escorting HERNANDEZ out of the waiting room at **8:58 a.m.**

An addition to the vital signs section of the intake screening form timed **9:00 a.m.** documents the detainee's temperature was 102.0. The entry is not signed or initialed. (b)(6); (b)(7)(C) informed the review team that it was decided the detainee would be placed in a medical isolation room pending evaluation by the physician, not for housing but for comfort. CCCC has two medical

---

[11] Ensure is a milk protein concentrate containing vitamins and minerals.
[12] Pedialyte reduces dehydration and restores fluids and minerals lost due to diarrhea and vomiting.

DETAINEE DEATH REVIEW: Jeffry HERNANDEZ                                                    Page 9
Medical and Security Compliance Analysis
September 28, 2018



isolation rooms, both equipped with negative pressure for respiratory isolation. There is a video surveillance camera in the cell. Video shows HERNANDEZ entering Isolation Room 1 at **9:06 a.m.** after it was cleaned and fresh linens were placed on the bed. She laid on the bed and medical staff placed several blankets over her.

At **9:42 a.m.**, detainee HERNANDEZ was escorted out of the isolation room and into an examination room by [b)(6); (b)(7)(C)]  In a medical record entry timed **10:00 a.m.** [b)(6); (b)(7)(C)] documented completion of HERNANDEZ's medical/dental/mental health examination. She did not use an interpreter because she reported during interview that she is fluent in Spanish. Vital signs were taken and all were abnormal, as follows: temperature 102, pulse 128, respirations 20 breaths, blood pressure 81/61, and pulse oxygen 92 percent. [b)(6); (b)(7)(C)] noted detainee HERNANDEZ identified as transgender but had not taken hormones. The detainee reported significant weight loss during the last four to six months and that she had not been treated for HIV. She also reported she was not taking any medications and had no prior surgeries or hospitalizations; also, that she has difficulty sleeping and a history of depression. The physical examination found HERNANDEZ was emaciated with increased amount of white phlyem[13], dry mucous membranes in mouth, multiple cavities, normal lymph nodes, coarse breath sounds in lungs, tachycardia, normal bowel sounds, poor skin turgor, and muscle wasting. [b)(6); (b)(7)(C)] assessment was dehydration, starvation, untreated HIV, fever, and cough. The treatment plan was to rule out infection secondary to HIV and pneumonia, obtain a chest x-ray, and transport to the local emergency department for intravenous (IV) fluids. A mask was placed on HERNANDEZ to protect her from environmental viruses/bacteria; also, to protect staff as her TB status was unknown by CCCC. Orders were written for the following laboratory tests to be completed at the hospital: complete blood count (CBC)[14]; rapid plasma reagin (RPR) with reflex[15]; comprehensive metabolic panel (CMP)[16]; thyroid stimulating hormone (TSH)[17]; hepatitis panel[18]; urinalysis for sexually transmitted diseases; HIV confirmation test with viral load[19]; and chest X-ray.

[b)(6); (b)(7)(C)]  was asked about this encounter during interview. Consistent with her documentation, [b)(6); (b)(7)(C)] commented HERNANDEZ looked starved, tired and weak; that the

---

[13] Phylem is mucus excreted in abnormally large quantities.

[14] A CBC measures the levels of red blood cells, white blood cells, platelet (clotting cells) levels, hemoglobin (oxygen transport cells) and hematocrit (ratio of red blood cells to the total blood volume).

[15] An RPR detects syphilis.

[16] A CMP is a group of blood tests that provide an overall picture of the body's chemical balance and metabolism.

[17] TSH determines thyroid-stimulating hormone levels.

[18] A hepatitis panel finds markers of hepatitis infection.

[19] An HIV confirmation test with viral load measures the amount of HIV ribonucleic acid (RNA) in blood. RNA is the genetic material that makes up certain viruses.

DETAINEE DEATH REVIEW: Jeffry HERNANDEZ                                    Page 10
Medical and Security Compliance Analysis
September 28, 2018



muscles in her face were wasted; and that she appeared to have suffered from long term protein and calorie malnutrition. Her breathing sounded "rough" and her mouth and eyes were dry. Dr. (b)(6), said that despite these observations, HERNANDEZ was alert and "making sense." The detainee told her she had been diagnosed with HIV at a clinic in Honduras. She reported that she managed to escape and was hiding from Honduran gangs who had prostituted her. She decided to join the caravan to the U.S. rather that returning to the Honduran clinic for HIV treatment because the gangs were looking for her and she believed they might be waiting there.

(b)(6); (b)(7)(C) order for HERNANDEZ's transfer to CGH specifies she was to be transported by facility vehicle. Asked about this decision, (b)(6), (b)(7)(C) said that after due consideration, she decided in favor of transport by facility vehicle rather than an ambulance based on the following:

- Though the detainee was very sick, she did not require medical supervision by emergency services personnel or life sustaining equipment during transport.
- She believed the detainee would arrive at the hospital more quickly if taken by facility vehicle.
- Cibola County is a small, rural county with only one ambulance. Having determined HERNANDEZ could safely be transported in a facility vehicle, (b)(6); (b)(7)(C) did not want to tie up the ambulance in case it was needed for a patient with more acute urgent care needs.

(b)(6); (b)(7)(C) told the review team that acting under the assumption that the detainee would be going to the hospital, she notified security of the possible transport while (b)(6); (b)(7)(C) was conducting the physical examination. (b)(6); (b)(7)(C) prepared the necessary paperwork and copies of HERNANDEZ's medical record for the officers to take to the hospital.

The video shows that at **10:09 a.m.**, detainee HERNANDEZ returned to Isolation Room 1 wearing a paper mask and laid down. At **10:52 a.m.**, she walked out of the room and sat in a wheelchair at the doorway. She was then wheeled off the medical unit and out through the Fire Exit.

Video from the vehicle sallyport camera shows that at **10:59 a.m.**, a van entered and backed up to the intake exterior door. At **11:07 a.m.**, a supervisor is seen verifying HERNANDEZ's identity to authorize her transfer to the hospital, and at **11:08 a.m.**, she was placed in the van. The view of the vehicle from the sallyport camera was partially obscured but escorting staff verified she was able to enter the van unassisted. At **11:13 a.m.**, the van entered the vehicle sallyport and following search, exited at **11:20 a.m.** en route to Cibola General Hospital (CGH).

---



(b)(6); (b)(7)(C) was assigned to escort HERNANDEZ to the hospital. He recalled on interview that she was taken outside in a wheelchair and when he asked if she could walk to the van, she said yes. (b)(6); (b)(7)(C) the second transport officer, stated on interview that when detainee HERNANDEZ entered the van she just wanted to lay down and was told she could. (b)(6); (b)(7)(C) said the detainee spoke no English. Both officers reported that upon arrival at the hospital, HERNANDEZ was able to walk from the vehicle to the Emergency Department. An entry in the hospital logbook documents the time of arrival was **11:44 a.m.** According to (b)(6); (b)(7)(C) detainee HERNANDEZ was able to walk to the ER but did so slowly. Officer (b)(6); reported she was alert and talking and that hospital staff placed her in a curtained area where she drank some water.

In a memorandum prepared by (b)(6); (b)(7)(C) following HERNANDEZ's death, she wrote CGH personnel reported at **2:30 p.m.** that the detainee was on IV fluids and antibiotics. She wrote that the hospital suspected sepsis and that the decision to admit HERNANDEZ was pending laboratory and radiology results.

The CGH record documents detainee HERNANDEZ was evaluated and the following actions were taken:

- Detainee HERNANDEZ was evaluated;
- Intravenous (IV) fluids were initiated;
- An electrocardiograph[20] (EKG) was done;
- Laboratory and radiology diagnostic tests were ordered;
- Acetaminophen was given to reduce temperature;
- Famotidine was given to reduce stomach acid;
- HERNANDEZ was catheterized as she was unable to void;
- IV antibiotics azithromycin and ceftriaxone were given; and,
- Vital signs were closely monitored and documented within the following ranges: temperature 104.9 to 101.1; pulse 92 to173; respirations 9 to 36; blood pressure 80/52 to 102/65; and pulse oxygen 88 to 100 percent.

Based on physical examination findings, abnormal chest and abdominal x-rays, and abnormal blood tests, the Emergency Department physician's initial diagnoses included: septic shock[21]; dehydration; HIV infection; nodular pulmonary disease[22]; lymphadenopathy[23]; anemia[24]; and

---

[20] An EKG measures the heart's electrical impulses.
[21] Septic shock is a life threatening condition resulting from an infection throughout the body which can lead to organ failure and produces changes in temperature, blood pressure, heart rate, white blood cell count, and breathing.
[22] Nodular pulmonary disease is small masses in the lungs.
[23] Lymphadenopathy is enlarged lymph nodes.

DETAINEE DEATH REVIEW: Jeffry HERNANDEZ                                  Page 12
Medical and Security Compliance Analysis
September 28, 2018



thrombocytopenia[25]. Rapid HIV test was reactive confirming her HIV status. The ED physician determined detainee HERNANDEZ required a higher level of care than available at CGH and made arrangements to transfer her by air ambulance to Lovelace Medical Center (LMC) in Albuquerque, NM. Detainee HERNANDEZ's condition was listed as poor.

(b)(6); (b)(7)(C) said during interview that she was informed by CGH staff when it was determined the detainee was "way beyond" their ability to care for and that they were sending her to LMC. She indicated that the preferred option, University of New Mexico Hospital, had no beds. Dr. (b)(6); commented that by the time the detainee arrived at CCCC, the actions taken were "too little, too late"; possibly by as much as six months.

Per the hospital logbook, at **6:40 p.m.** (b)(6); (b)(7)(C) assumed vigil duty at CGH. (b)(6); (b)(7)(C) stated on interview that when she arrived, discussions about moving HERNANDEZ to LMC were underway. She reported one nurse explained the transfer details to the detainee in Spanish, then nursing staff prepared her for transfer.

The report of PHI Air Medical documents transport by air was decided upon because the trip would take approximately 35 minutes versus more than four hours by ground. (b)(6); (b)(7)(C) memorandum states the attending physician at CGH decided ground transportation was not appropriate, noting HERNANDEZ's blood pressure was low. (b)(6); (b)(7)(C) informed the review team that she was chosen to ride in the helicopter based on her body weight relative to (b)(6); (b)(7)(C) reported that the detainee was taken by stretcher to the helipad, and that she was placed in front next to the pilot. (b)(6); (b)(7)(C) sat in the back with two nurses, one of whom spoke Spanish. A logbook entry documents the group boarded the helicopter at **9:18 p.m.**

Per the PHI report, detainee HERNANDEZ was provided eye and ear protection when placed on the helicopter. The time of departure was **9:38 p.m.** per the PHI report and logbook entry. HERNANDEZ remained awake and alert and even smiling during transport. Her vital signs were monitored and documented as follows: pulse and pulse oxygen were within normal limits at 77 to 79 and 95 to 100 percent, respectively. HERNANDEZ's respirations were elevated at 20, and her blood pressure remained low as follows: 105/70; 101/76; 106/69; and 99/69.

Note: The line on the form where temperature was recorded is not legible.

The hospital logbook documents the helicopter landed in Albuquerque at **10:05 p.m.** Sergeant (b)(6); told the review team that the helicopter was met on the Heart Hospital helipad by an

---

[24] Anemia is a decreased number of blood cells.
[25] Thrombocytopenia is a low level of platelets, the cells that help the blood clot.

DETAINEE DEATH REVIEW: Jeffry HERNANDEZ
Medical and Security Compliance Analysis
September 28, 2018

Page 13



ambulance, and the two nurses accompanied the detainee in back. [b)(6); (b)(7)(C)] sat in front with the driver. Per the report of Superior Ambulance Service, the trip to from the helipad to LMC took three minutes and was completed without incident.

An entry to the hospital logbook documents the ambulance arrived at LMC at **10:14 p.m.** and HERNANDEZ was taken through the emergency room to the intensive care unit (ICU) where she was placed in a negative pressure room. Per [b)(6); (b)(7)(C)] the detainee was alert and talking and asked for food. She was told no until testing was completed. At **10:50 p.m.**, Officer [b)(6);] who drove the facility vehicle from CHG, arrived at LMC.

Detainee HERNANDEZ remained at LMC until her death on May 25, 2018[26]. The following information is based on officers' log entries, information reported during interviews, and entries in the medical record summarizing updates received by CCCC health care personnel. In addition, the afore-referenced summary memorandum prepared by [b)(6); (b)(7)(C)] following the detainee's death is referenced when it provides information not included in medical record entries.

**May 18, 2018**

In a **12:45 p.m.** progress note, [b)(6); (b)(7)(C)] wrote that the ICU nurse reported HERNANDEZ was in isolation because her low blood counts made her vulnerable to opportunistic infections; also, because her TB status was unknown. Sputum samples were being collected to test for TB.

> **Note:** As discussed above, a Scripps Medical Center report documents a chest X-ray completed while HERNANDEZ was in CBP custody was negative for TB and that there was no evidence of active infection.

The ICU nurse also reported that the physician's treatment plan included consulting with infectious disease specialists and administering broad spectrum antibiotics[27], and that laboratory test results were awaited. HERNANDEZ's hydration status was improved but her HIV status remained guarded. [b)(6); (b)(7)(C)] summary memorandum adds that the detainee was on IV fluids and Levophed for stabilization of blood pressure; also, that a computed tomography scan (CT) of the abdomen would be done to rule out an abscess.

Officers' logbook entries document nurses conducted routine checks, and that the CT scan was completed at **1:45 p.m.** At **2:38 p.m.**, [b)(6); (b)(7)(C)] resumed vigil duty and stated on interview that it seemed HERNANDEZ was doing a little better. She had brushed her hair and was talking

---

[26] The LMC medical record was not provided to reviewers.

[27] Broad spectrum antibiotics are piperacillin/tazobactam and vancomycin.



more. She seemed comfortable and staff said she had slept most of the night, although the sergeant heard medical staff say she had a fever.

(b)(6); (b)(7)(C) memorandum documents an update was received at **9:30 p.m.** The detainee's vital signs were stable and she was reportedly hungry and able to eat and take fluids.

**May 19, 2018**
Entries to the hospital log document no unusual incidents this date. A visit by a chaplain was logged at **10:16 a.m.**, and at **3:48 p.m.**, the detainee was taken for CT scan.

In her memorandum, (b)(6); wrote that the first update for the day was provided at **5:30 p.m.** She wrote HERNANDEZ was oriented and stable with a good appetite, but her fever spiked at 104 during the day. She was receiving IV fluids, antibiotics, and blood pressure medication. A CT scan of the neck was performed due to enlarged lymph nodes with results expected the next day.

(b)(6); (b)(7)(C) documented in a **10:45 p.m.** progress note that the LMC nurse reported HERNANDEZ was feeling better and eating well. A chest X-ray was negative for TB and the third and final sputum test was to be done the next day. (b)(6); (b)(7)(C) summary memorandum covers this update as well, adding that the abdominal CT showed an enlarged spleen and peritoneal[28] lymph nodes. She noted (b)(6); (b)(7)(C) reported the concern was T-cell[29] lymphoma[30] and that the detainee would probably need fine needle biopsies. The detainee's CD4 count was 189[31].

**May 20, 2018**
(b)(6); (b)(7)(C) memorandum documents that (b)(6); (b)(7)(C) received a morning update at **8:40 a.m.** HERNANDEZ remained stable and there was no change in her condition.

A hospital logbook entry documents that at **11:25 a.m.**, the doctor stated HERNANDEZ may need surgery the following day. The detainee ate lunch and watched television after **1:00 p.m.** In the afternoon, the detainee slept and later ate dinner.

---

[28] Peritoneal refers to the serous membrane lining of the walls of the abdomen and pelvic cavities.

[29] T-cell is a type of lymphocyte/white blood cell in the immune system to fight infection.

[30] Lymphoma is a type of blood cancer.

[31] HIV infection advances to AIDS when there are less than 200 CD4 T-cells per millimeter of blood.

DETAINEE DEATH REVIEW: Jeffry HERNANDEZ                                              Page 15
Medical and Security Compliance Analysis
September 28, 2018



[b](6); documented an evening update timed **10:30 p.m.** in her memorandum. She wrote the detainee was afebrile[32] and no longer on medication to maintain her blood pressure. A needle biopsy was planned for Monday.

**May 21, 2018**
Officers' log entries document that HERNANDEZ was taken for pre-operative preparation at **1:35 p.m.** and to the operating room at **2:09 p.m.** [(b)(6), (b)(7)(C)] memorandum documents a **3:45 p.m.** update indicating HERNANDEZ had axillary lymph node removal for biopsy and was stable. Sputum smears for TB were negative.

The hospital log documents that at **3:38 p.m.,** [(b)(6); (b)(7)(C)] conducted a routine administrative visit. At **3:58 p.m.**, the detainee was returned to the ICU from the recovery room. At **7:49 p.m.**, the vigil officer wrote that the detainee was awake and watching television. She fell asleep at **10:45 p.m.**

**May 22, 2018**
[(b)(6); (b)(7)(C)] memorandum documents a **9:40 a.m.** update indicating HERNANDEZ was stable following axillary lymph node removal. Her fever spiked at 102.2 the night before and she was receiving Bactrim[33] once a day and a penicillin[34] injection weekly. The detainee's blood pressure was lower and being maintained with IV fluids. She remained in the ICU.

The hospital logbook documents that at **2:25 p.m.,** HERNANDEZ was taken for a lumbar puncture procedure[35] which began at **3:00 p.m.** and was completed at **3:27 p.m.** The detainee returned to her room in the ICU at **3:41 p.m.** Throughout the evening, the detainee watched TV or slept.

[(b)(6); (b)(7)(C)] documented in a progress note timed **5:45 p.m.** that detainee HERNANDEZ spiked a fever that afternoon and was receiving antibiotics; also, that she had no appetite but was drinking Ensure and that biopsy results were still pending.

> **Note:** Completion of the lumbar puncture at 3:00 p.m. was not addressed in the 5:45 p.m. update given to [(b)(6); (b)(7)(C)].

---

[32] Afebrile means normal temperature.

[33] Bactrim is an antibiotic.

[34] Penicillin is an antibiotic.

[35] A lumbar puncture is a medical procedure in which a needle is inserted into the spinal canal, most commonly to collect cerebrospinal fluid.

---



**May 23, 2018**

Officers' log entries document HERNANDEZ ate breakfast, after which a nurse commented her heart rate was, "a little high due to eating." A **12:05 p.m.** entry documents the detainee still had a high fever but, "Still manages to smile and be thankful for having the nurses watch over her." At **2:00 p.m.**, the officer logged that the detainee would be getting a blood transfusion and at **4:45 p.m.**, that the detainee had a CT scan.

At **7:38 p.m.**, (b)(6); (b)(7)(C) took over vigil duty. She recalled on interview that HERNANDEZ was sitting up and that it was her impression that the detainee was doing a lot better. A **9:32 p.m.** log entry documents a chest X-Ray was completed.

(b)(6); (b)(7)(C) documented in a progress note timed **10:30 p.m.** that an ICU nurse reported HERNANDEZ had had a high fever all day and a pulse exceeding 150. She remained on oral antibiotics but IV antibiotics may be resumed the next day. The biopsy results were not back; blood cultures showed no growth so far; and lumbar puncture was negative. In her memorandum, (b)(6); (b)(7)(C) wrote that they were unable to get an earlier report and summarized the information documented by (b)(6); (b)(7)(C)

> **Note:** A blood transfusion and CT scan documented in officers' logbook entries were not addressed in the 10:30 p.m. update given to (b)(6); (b)(7)(C)

**May 24, 2018**

In a progress note timed **11:00 a.m.**, (b)(6); (b)(7)(C) documented an update provided to her by an ICU nurse. She wrote that (b)(6); (b)(7)(C) was present during the conversation. (b)(6); (b)(7)(C) progress note and the HSA's memorandum document the following laboratory test and chest X-ray results:

- Blood culture showed no growth;
- RPR[36] positive;
- Malaria negative;
- Toxoplasmosis[37] negative;
- Negative for parasites;
- Urine culture and lumbar puncture both negative;
- Chest x-ray showed small bilateral plural effusion[38].

(b)(6); (b)(7)(C) documented the detainee's condition was serious with guarded prognosis due to HIV status, poor nutritional status for two years, fever of unknown origin, pleural effusion, and

---

[36] RPR is a test for syphilis.
[37] Toxoplasmosis is an infectious disease caused by the one-celled protozoan parasite.
[38] Bilateral plural effusion is characterized by an abnormal amount of fluid around the lungs.

DETAINEE DEATH REVIEW: Jeffry HERNANDEZ                                      Page 17
Medical and Security Compliance Analysis
September 28, 2018



lymphadenopathy suspicious for T-cell lymphoma. [b)(6); (b)(7)(C)] memorandum documents that HERNANDEZ's highest heart rate the night before was 150 with a temperature of 104.5, and that Tylenol and a cooling blanket were used to bring down her temperature. [b)(6);] wrote that the detainee's condition at the time of the update was critical.

[b)(6); (b)(7)(C)] was assigned to vigil duty on the day shift. She documented in the logbook that at **1:10 p.m.**, detainee HERNANDEZ told the nurse she felt congested and was having difficulty breathing. At **1:24 p.m.**, a breathing treatment was administered and at **1:30 p.m.**, an X-Ray was taken. At **1:34 p.m.**, an ultrasound was completed and at **3:22 p.m.**, the detainee was taken to radiology to have fluid removed from her lungs. During interview, [b)(6); (b)(7)(C)] stated a very large amount of fluid was removed from the detainee's lungs, and that HERNANDEZ was "very tough" throughout the procedure.

In her memorandum, [b)(6);] wrote that at approximately 3:00 p.m., a thoracentesis[39] removed 1600 cc of fluid, 700 cc from one side of the chest and 900 cc from the other. By **4:00 p.m.** the detainee's pulse oxygen started falling, dropping to 74 percent, and she developed tachypnea[40], supra ventricular tachycardia[41], and an elevated blood pressure.

A **5:00 p.m.** entry to the logbook documents HERNANDEZ was coughing up a large amount of mucus. [b)(6); (b)(7)(C)] stated during interview that she kept handing her napkins, commenting the detainee was wearing a breathing mask and tube but had difficulty breathing while she was coughing. She laid on her side and kept coughing, and [b)(6); (b)(7)(C)] observed she looked "scared." At one point, [b)(6); (b)(7)(C)] left to get more napkins and when she returned, the detainee could not hold back a cough and expelled mucus on her. [b)(6); (b)(7)(C)] left the area and washed her face.

> **Note**: [b)(6); (b)(7)(C)] was informed by reviewers that the institution's Exposure Control Plan provides information on counseling and blood testing if she has concerns about possible HIV exposure.

[b)(6); (b)(7)(C)] was also on vigil at this time. On interview, he stated that the detainee's condition worsened after the procedure where they drained her lung. He concurred that the detainee was coughing a lot and had a lot of phlegm. At **5:35 p.m.**, [b)(6); (b)(7)(C)] logged, "Detainee having a hard time breathing and coughing a lot of mucus." At **5:40 p.m.**, she logged that HERNANDEZ had a high heart rate and was having a hard time breathing. A **5:55 p.m.** entry documents the process of intubation[42] was started with eight medical staff assisting.

---

[39] Thoracentesis is a procedure to remove the fluid between the lung and chest wall.
[40] Tachypnea is very rapid respirations.
[41] Tachycardia is an abnormally rapid heartbeat.

DETAINEE DEATH REVIEW: Jeffry HERNANDEZ                                     Page 18
Medical and Security Compliance Analysis
September 28, 2018



[b)(6); (b)(7)(C)] logged that the process was completed at **6:35 p.m.**, noting that medical staff had difficulty intubating the detainee because she "had a difficult airway." A **6:40 p.m.** entry documents a chest X-Ray was taken and at **7:07 p.m.**, HERNANDEZ was sedated.

> **Note:** [b)(6); (b)(7)(C)] memorandum documents the decision to intubate was not made until 7:45 p.m., approximately two hours after the time [b)(6); (b)(7)(C)] documented the process was started. Specifically, she wrote, "At approximately 1945 the decision was made to intubate, sedated, and place the patient on a ventilator. Patient also had a central line[43] placed."

During interview of [b)(6); (b)(7)(C)] she said that when she arrived for her shift at **7:40 p.m.** and observed the detainee's condition, she thought, "What happened?" She stated HERNANDEZ was hooked up to medical equipment and was not responsive. [b)(6); (b)(7)(C)] documented in the logbook that the head nurse told her HERNANDEZ "is paralyzed due to condition and is on life support in critical condition." The nurse told the sergeant that the detainee could code during the night.

[b)(6); (b)(7)(C)] documented that at **10:10 p.m.** detainee HERNANDEZ developed bradycardia[44] and pulseless electrical activity (PEA)[45]. Hospital staff was present and immediately started chest compressions, multiple doses of epinephrine[46] were administered, and the detainee was revived by 10:16 p.m. Detainee HERNANDEZ then developed supraventricular tachycardia (SVT)[47] and Adenosine[48] was administered but not effective. Metoprolol was also given to lower the detainee's blood pressure.

**May 25, 2018**
A logbook entry documents that at **12:48 a.m.**, detainee HERNANDEZ coded again. Hospital staff performed cardiopulmonary resuscitation (CPR), used the automated external defibrillator (AED) and gave the detainee medications. At **1:07 a.m.**, detainee Hernandez coded again. At **1:18 a.m.**, the officer documented in the logbook that the nurse stated the detainee was stable. However, at **1:23 a.m.**, the detainee again coded. Hospital staff started but discontinued chest compressions at **1:27 a.m.**, performing rescue breaths only.

---

[42] Intubation is placement of a flexible plastic tube into the trachea to maintain an open airway to facilitate ventilation of the lungs.

[43] Placement of a central line refers to the placement of a catheter into a large vein for fluid replacement and intravenous medication administration.

[44] Bradycardia is an abnormally slow heartbeat.

[45] PEA means there is electrical activity, but the heart does not contract.

[46] Epinephrine constricts blood vessels, which increases blood pressure and increases heart rate.

[47] SVT is an abnormally rapid heart rate.

[48] Adenosine is used to convert SVT to normal.

DETAINEE DEATH REVIEW: Jeffry HERNANDEZ                                        Page 19
Medical and Security Compliance Analysis
September 28, 2018



At **1:33 a.m.**, LMC Nurse Practitioner (NP) [b)(6); (b)(7)(C)] stated he wanted to stop all procedures. [b)(6); (b)(7)(C)] stated during interview that [b)(6); (b)(7)(C)] asked the officers for a contact number for ICE or CCCC as he needed direction regarding continued resuscitation efforts. [b)(6); (b)(7)(C)] documented in the CCCC medical record that [b)(6); (b)(7)(C)] called at 1:30 a.m. to report that detainee HERNANDEZ had been coding every five minutes, had poor brain function, and that all means of treatment were exhausted. The NP stated that because the detainee had no known family, he was looking for direction from the responsible party. [b)(6); (b)(7)(C)] told the NP she would relay the message to the HSA and ICE Field Medical Coordinator (FMC) [b)(6); (b)(7)(C)] She documented the notifications were made within 12 minutes. [b)(6);] informed the review team that the FMC called the NP and gave direction to continue resuscitation efforts because the detainee did not have a Do Not Resuscitate order on file.

Log entries document that HERNANDEZ coded at **1:44 a.m., 2:22 a.m., 3:02 a.m., and 3:04 a.m.** Each time, CPR was performed until the detainee regained a pulse. At **3:29 a.m.**, HERNANDEZ coded again. At **3:32 a.m.**, death was pronounced. [b)(6); (b)(7)(C)] documented notification of the detainee's death by FMC [b)(6);] and Commander [b)(6); (b)(7)(C)] shift supervisor.

> **Note:** [b)(6); (b)(7)(C)] memorandum documents death at 3:32 a.m. was pronounced by two hospital physicians. The names were not provided.

At **5:47 a.m.**, hospital security staff arrived to move HERNANDEZ's body to the morgue on the ground floor of the hospital. CCCC vigil officers observed the body being placed in the morgue and then returned to CCCC. Both [b)(6); (b)(7)(C)] stated they were provided with information on the employee assistance program (EAP) hotline. [b)(6); (b)(7)(C)] stated the EAP number is posted in medical and she ensured healthcare staff knew the service is available. During interview of [b)(6); (b)(7)(C)] she shared that the staff were taking HERNANDEZ's death very hard because she was so sweet and nice.

On the day of the detainee's death, [b)(6); (b)(7)(C)] assigned Facility Investigator [b)(6); (b)(7)(C)] to review events from HERNANDEZ's intake through her departure for CGH to assess staff compliance with policies and procedures. [b)(6); (b)(7)(C)] shared during interview he started as CCCC's investigator a year ago following a 30 year career in law enforcement, 27 years with the New Mexico State Police and three years as police chief in Grants, NM, a nearby community. He said he watched all pertinent video and noted HERNANDEZ waited a long time in both the intake and medical waiting areas. He nonetheless concluded policies and procedures were followed. He documented his findings in a two page report submitted to the warden on May 29, 2018.

DETAINEE DEATH REVIEW: Jeffry HERNANDEZ
Medical and Security Compliance Analysis
September 28, 2018                                                        Page 20

C reative
corrections

[(b)(6); (b)(7)(C)] stated a mortality review was conducted and the report was sent to CCS headquarters. She stated the report could not be shared with the review team, but reported participating staff included the warden, associate warden, physician, HSA, DON, quality improvement RN, and infectious disease RN.

According to [(b)(6)] the preliminary cause of death was cardiac arrest. The death certificate and autopsy report were not available at the time of the site visit.


# CONCLUSIONS

## Medical

Two days after HERNANDEZ requested asylum at the San Ysidro Port of Entry, a CBP officer completed an in-processing medical screening form, identifying her as HIV positive and without medications. A physical examination completed by a physician the same day noted her HIV status, weight loss, cough, headache, and elevated heart rate. She was sent to a hospital to rule out sepsis and active infection. The hospital report documents a chest X-ray was normal and there was no clinical evidence of TB; however, HERNANDEZ was found to have bronchitis. Hospital instructions included Tylenol for fever, antibiotics, and an inhaler. Reviewers do not know whether the medications were provided and given by CBP.

ERO accepted custody of HERNANDEZ three days after she was examined at the hospital, May 14, 2018. She arrived at CCCC approximately 56 hours later. During that time, she did not come into contact with medical professionals because she was in transit between multiple locations pending her ultimate arrival at CCCC; also, because she reportedly did not report and officers did not observe any medical conditions of concern. Medical transfer summaries from SLRDC and EPSPC provide no medical information, including TB clearance, documenting in pre-printed format only that HERNANDEZ was in ERO custody less than 72 hours. Based on reported information and documentation, the May 11, 2018 physical examination report referencing a productive cough and Scripps hospital report documenting TB clearance and diagnosis of bronchitis, with medications, were not available to SLRDC, EPSPC, and CCCC. ERO personnel reported that if the documentation and/or medications was provided by CBP when custody was transferred to ERO, it would have accompanied HERNANDEZ during each step of the transportation process. ERO personnel also reported that if any transportation, SLRDC, or EPSPC officers became aware of any medical concerns during the 56 hours HERNANDEZ was in ERO custody, notification of healthcare professionals would have been expected.



Detainee HERNANDEZ's medical screening at CCCC was initiated approximately 11 hours after video shows her exiting the transport vehicle with 18 other transgender detainees. When vital signs were found abnormal, she was appropriately given priority for full screening by an RN. Interpretation assistance was used and documented. The RN informed the DON and HSA of the vital signs and that HERNANDEZ reported she was HIV positive, had a persistent cough, significant weight loss over several weeks, and appeared malnourished and dehydrated. In turn, the HSA notified the physician. Upon reporting to the facility, the physician promptly examined HERNANDEZ and diagnosed untreated HIV, dehydration, starvation, and fever with a cough. The physician ordered detainee HERNANDEZ's transport to the local hospital by facility vehicle for IV fluids and to rule out infection secondary to HIV and pneumonia. The physical examination was started approximately an hour and a half after the intake screening and the detainee was moved to the facility vehicle for transport approximately 50 minutes thereafter. This demonstrates that CCCC staff acted with due haste once HERNANDEZ was seen by medical professionals.

Following the detainee's transport to CGH, then to LMC, the physician and HSA proactively kept abreast of her condition, diagnostic testing, and treatment. The physician documented the updates she received in the medical record; the HSA did not but included them in a summary memorandum prepared after HERNANDEZ's death.

CCCC health care staff were notified of EAP services, and a mortality review involving key medical and security personnel was reportedly conducted.

**Compliance Findings**

The reviewer identified no deficiencies in the ICE 2011 PBNDS, Medical Care, revised 2016.

**Area of Note**

During the 56 hours HERNANDEZ was in transit between the San Ysidro Port of Entry and CCCC, she was held in two detention facilities for a total of approximately 24 hours; SLRDC for six and EPSPC for approximately 18. Because the Medical Care standard is specific to facilities holding detainees more than 72 hours, its requirements do not apply in this case. Evaluating compliance with ERO directives or contract requirements governing transportation of detainees in transit to their ultimate destination is beyond the scope of this analysis; however, ERO personnel informed reviewers that officers are expected to report medical concerns or complaints to health care professionals. Absent documentation of any concerns, it appears none were voiced by the detainee or observed by officers. However, it is noteworthy and of concern that HERNANDEZ was immunocompromised and ill when SLRDC transportation officers assumed custody on behalf of ERO and by the time she reached CCCC, was so ill that a physician ordered



her immediate transport to the emergency room.   It is unknown whether medications for bronchitis were started while HERNANDEZ remained in CBP custody but if they were, they are unlikely to have run their course and were not provided to the SLRDC officers who assumed custody at San Ysidro.

Because CCCC did not have documentation of TB clearance and because HERNANDEZ's symptoms upon arrival were suggestive of the disease, she was tested at the hospital and was again confirmed negative.  Although she did not have TB, that fact was not known during the 56 hours spent in ERO custody before she arrived at CCCC.  Whether or not noted by transportation officers and staff at SLRDC and EPSPC, there can be no question that HERNANDEZ's productive cough continued while she was in transit.  Whereas Scripps Mercy Hospital cleared her for travel and incarceration, it is possible her bronchitis may have been determined non-contagious.  However, had she had TB, the officers and detainees with whom she came in contact would have been exposed to the highly communicable and dangerous disease.

Reviewers recommend implementation of basic medical screening procedures, including TB symptom screening, by transport officers and personnel at facilities holding detainees in transit.

## Safety and Security

Video shows detainee HERNANDEZ exited a bus with 18 other transgender detainees at 8:13 p.m. on May 16, 2018.  She entered the facility 30 minutes later and over the course of the next five and half hours, security processing for HERNANDEZ and the other detainees was completed.  Translation services were not used during security processing, despite the fact that all staff acknowledged detainee HERNANDEZ spoke no English.   In addition, with exception of the handbook receipt, the forms she signed acknowledging understanding of information provided were in English.

In preparation for the medical intake screening, health care staff took the detainee's vital signs five hours after she was moved to the medical waiting area.  When it was determined she should be moved to an isolation cell for her comfort pending physical examination, security personnel assisted.  After the examination, security staff facilitaed the detainee's transport to the local hospital in a facility vehicle.  There were no identified delays.  Later, she was airlifted by helicopter to a hospital in Albuquerque.  Vigil officers appropriately documented events at both hospitals in a logbook.

A review of staff's actions was completed by the facility investigator.  The review included analysis of pertinent video surveillance footage.

---

**Compliance Findings**

The reviewer identified no deficiencies in the ICE 2011 PBNDS, revised 2016 governing safety and security.

**Area of Concern**

Security personnel did not use interpretation assistance to complete the intake process and with one exception, all forms signed by the detainee were in English.  Because admission processing includes conveyance of information and signing of documents acknowledging understanding, reviewers recommend reinforcement of the expectation to use language interpretation assistance; also, translation of acknowledgment of understanding statements in languages most commonly spoken by ICE detainees.



# EXHIBIT V

00004103/11/2020

| From: | (b)(6); |
|-------|---------|
| To: | (b)(6) | (b)(6); (b)(7)(C) |
| Cc: | (b)(6) | (b)(6); (b)(7)(C) |
| Subject: | FW: CRCL Short Form Complaint Number is 18-08-DHS-0342 (18-CRCL-1392) ERO Response |
| Date: | Friday, September 7, 2018 2:45:50 PM |

To: CRCL

From: ERO Sensitive Inquiry Response Team

Please see IHSC response below.

Regards,

(b)(6); (b)(7)(C)

**Detention and Deportation Officer**

**HQ Custody Programs**

**Enforcement and Removal Operations**

(b)(6); (b)(7)(C)                    Miramar, FL 33027

(b)(6); (b)(7)(C)

---

**From:** (b)(6); (b)(7)(C)

**Sent:** Thursday, September 06, 2018 1:33 PM

**To:** (b)(6); (b)(7)(C)

**Subject:** RE: CRCL Short Form Complaint Number is 18-08-DHS-0342 (18-CRCL-1392) New Request

See response below:

**ICE**

1. Did ICE receive Ms. Hernandez CBP records concerning her health conditions when she was transferred from CBP custody into ICE custody? Did they accompany Ms. Hernandez during transport?

   (b)(5)

2. Provide CRCL with all records related to Ms. Hernandez arrival, intake, custody, and transfer to and from the San Luis Regional Detention Center the El Paso Service Processing Center, and the Cibola County Correctional Center.

   **Records already provided to ICE HQ by the Field Office; as stated above, only medical record was that of San Luis transfer summary.** (b)(5)

   (b)(5)

3. Provide CRCL with all records related to Mrs. Hernandez's intake and health at the San Luis Regional Detention Center, the El Paso Service Processing Center, and the Cibola County Correctional Center.

   (b)(5)

(b)(5)

4. Provide CRCL with all grievances and requests involving Ms. Hernandez from all three ICE facilities, including those initiated by her or submitted on her behalf.

(b)(5)

**V/r,**

(b)(6); (b)(7)(C)

STGi

Special Assistant| ICE Health Service Corps

(b)(6); (b)(7)(C)

**From:** (b)(6); (b)(7)(C)

**Sent:** Friday, August 3, 2018 12:14 PM

**To:** (b)(6); (b)(7)(C)

**Subject:** FW: CRCL Short Form Complaint Number is 18-08-DHS-0342 (18-CRCL-1392) New Request

To: IHSC Taskings

From: Custody Programs

Due date: August 31, 2018.

See below a Short Form Complaint request from CRCL with questions for ICE. Please respond by the due date provided above.

A medical Records request case number 18-CRCL-1365 was also created for this detainee on July 24, 2018.

Regards,

(b)(6); (b)(7)(C)

**Detention and Deportation Officer**

**HQ Custody Programs**

**Enforcement and Removal Operations**

(b)(6); (b)(7)(C)    Miramar, FL 33027

(b)(6); (b)(7)(C)

**From:** (b)(6)

**Sent:** Thursday, August 02, 2018 3:37 PM

**To:** (b)(6); (b)(7)(C)

**Cc:** (b)(6)    (b)(6); (b)(7)(C)

(b)(6); (b)(7)(C)    MONTES, KRISTY L ; (b)(6); (b)(7)(C)    (b)(6); (b)(7)(C)

**Subject:** CRCL Short Form Complaint Number is 18-08-DHS-0342

# EXHIBIT W

**From:** "Blank, Thomas" (b)(6); (b)(7)(C)
**To:** "Homan, Thomas
**Subject:** RE: HRC Letter Regarding the Recent Death of Roxsana Hernandez
**Sent:** Thu, 31 May 2018 12:35:26 +0000

10-4.


Sent with BlackBerry Work
(www.blackberry.com)

**From:** Homan, Thomas < (b)(6); (b)(7)(C)
**Date:** Thursday, May 31, 2018, 8:31 AM
**To:** Blank, Thomas (b)(6); (b)(7)(C)
**Subject:** FW: HRC Letter Regarding the Recent Death of Roxsana Hernandez

Please assign for response

**From:** (b)(6); (b)(7)(C)
**Sent:** Wednesday, May 30, 2018 9:14 PM
**To:** (b)(6); (b)(7)(C)                 Blank, Thomas (b)(6); (b)(7)(C)
**Cc:** (b)(6); (b)(7)(C)
**Subject:** HRC Letter Regarding the Recent Death of Roxsana Hernandez

Dear Deputy Director Homan,

Please find attached a letter from (b)(6); (b)(7)(C)  (b)(5)  of the Human Rights Campaign (HRC), writing to express HRC's deep
concerns regarding the recent death of Roxsana Hernandez, a transgender (b)(6); (b)(7)(C)  who died while in ICE custody.

To follow up, or if you have any questions, please contact (b)(6); (b)(7)(C)  HRC's Government Affairs Director, at (b)(6); (b)(7)(C)

Best,
(b)(6); (b)(7)(C)


Federal Policy Manager | Human Rights Campaign
P: 202.216. (b)(6); (b)(7)(C)
Pronouns: He/Him/His

# EXHIBIT X

**From:** "King, Dean" <Dean.King@ice.dhs.gov>
**Date:** June 13, 2018 at 6:40:25 PM CDT
**To:** Andrew Free <andrew@immigrantcivilrights.com>
**Cc:** "Witte, Diane L" <Diane.L.Witte@ice.dhs.gov>, "Lorenzen-Strait, Andrew R" <Andrew.R.Lorenzen-Strait@ice.dhs.gov>, Flor Bermudez <flor@transgenderlawcenter.org>, "Khoury, Lana" <Lana.Khoury@ice.dhs.gov>, "Farmer, Floyd S" <Floyd.S.Farmer@ice.dhs.gov>
**Subject: RE: Disposition of Property / Dates & Locations of Detention**

Here is our timeline, based on our reports and multiple internal sources. Hope this helps.

May 9: Presents at CBP Port of Entry; Detained on ER
May 9 - May 13: Detained by CBP. Enters Scripps Hospital in San Diego, CA (May 11 for ER visit.)
May 13 - Enters ICE Custody in San Diego (after Scripps)
May 14 - Travels from San Diego to San Luis Detention Center in Arizona (right around midnight of the 14th.)
May 15 - Travels from San Luis, Arizona to El Paso.

May 16 - Arrives at Cibola from El Paso. (2040 hrs)
May 17 - Transfers to Cibola General Hospital (1018 hrs)
May 17 - Airlifted to Lovelace Medical Center in ABQ
May 17 - 25 - ICU at Lovelace
May 25, 2018 - Pronounced dead.


R/

Dean King
SDDO
ICE Albuquerque
505-235-5658

---

**From:** Andrew Free [mailto:andrew@immigrantcivilrights.com]
**Sent:** Wednesday, June 13, 2018 11:35 AM
**To:** King, Dean <Dean.King@ice.dhs.gov>
**Cc:** Witte, Diane L <Diane.L.Witte@ice.dhs.gov>; Lorenzen-Strait, Andrew R
<Andrew.R.Lorenzen-Strait@ice.dhs.gov>; Flor Bermudez
<flor@transgenderlawcenter.org>; Khoury, Lana <Lana.Khoury@ice.dhs.gov>; Farmer,
Floyd S <Floyd.S.Farmer@ice.dhs.gov>
**Subject:** Re: Disposition of Property / Dates & Locations of Detention

Many thanks Officer King.

R. Andrew Free
Law Office of R. Andrew Free
www.Resist.Law
PO Box 90568
Nashville, TN 37209
O: (844) 321-3221x1
F: (615) 829-8959
Andrew@Resist.Law

Sent from my iPhone. Please excuse brevity, typos, and overzealous autocorrections.

On Jun 13, 2018, at 10:05 AM, King, Dean <Dean.King@ice.dhs.gov> wrote:

> I'll let the facility know to release the property to Flor. We are good with
> the visit tomorrow.
>
>
> Dean King
> SDDO
> ICE Albuquerque

505-235-5658

---

**From:** Witte, Diane L <Diane.L.Witte@ice.dhs.gov>
**Date:** Wednesday, Jun 13, 2018, 11:03
**To:** Lorenzen-Strait, Andrew R <Andrew.R.Lorenzen-Strait@ice.dhs.gov>,
Andrew Free <andrew@immigrantcivilrights.com>
**Cc:** Flor Bermudez <flor@transgenderlawcenter.org>, Khoury, Lana
<Lana.Khoury@ice.dhs.gov>, Farmer, Floyd S <Floyd.S.Farmer@ice.dhs.gov>,
King, Dean <Dean.King@ice.dhs.gov>
**Subject:** RE: Disposition of Property / Dates & Locations of Detention

Hi all,

Adding SDDO King to respond on the highlighted portion below.

**Diane L. Witte**

Acting Field Office Director | El Paso Field Office
US Immigration & Customs Enforcement | Enforcement & Removal Operations
915-856-5508 (D) | 202-345-5916 (C)

---

**From:** Lorenzen-Strait, Andrew R
**Sent:** Wednesday, June 13, 2018 10:57 AM
**To:** Andrew Free <andrew@immigrantcivilrights.com>; Witte, Diane L
<Diane.L.Witte@ice.dhs.gov>
**Cc:** Flor Bermudez <flor@transgenderlawcenter.org>; Khoury, Lana
<Lana.Khoury@ice.dhs.gov>
**Subject:** RE: Disposition of Property / Dates & Locations of Detention

Andrew - why the need for us to confirm this timeline?


Andrew R. Lorenzen-Strait
Deputy Assistant Director
DHS/ICE/ERO/Custody Programs
202.431.4761

Sent with BlackBerry Work
(www.blackberry.com)

---

**From:** Andrew Free <andrew@immigrantcivilrights.com>
**Date:** Wednesday, Jun 13, 2018, 12:35 PM
**To:** Witte, Diane L <Diane.L.Witte@ice.dhs.gov>
**Cc:** Flor Bermudez <flor@transgenderlawcenter.org>, Lorenzen-Strait, Andrew

R <Andrew.R.Lorenzen-Strait@ice.dhs.gov>, Khoury, Lana
<Lana.Khoury@ice.dhs.gov>
**Subject:** Disposition of Property / Dates & Locations of Detention

Officer Witt:

First, thanks again for agreeing to facilitate the transfer of Roxsana's property to my colleague, Flor Bermudez. She will be at Cibola tomorrow to assume custody of this property.  Is there anything we need to do in advance to let folks know she's coming and that she's going to be receiving this stuff? Do you need anything signed from me?

Second, in an effort to cover all the bases in advance of my call with Roxsana's sisters this afternoon to explain the autopsy results, I'm trying to piece together the timeline and location of Roxsana's detention by DHS after arriving at the port of entry. I'd appreciate any help or confirmation you could provide in that regard.

So far, based on ICE's detainee death notification (https://www.ice.gov/news/releases/ice-detainee-honduras-passes-away-new-mexico-hospital), our conversation, and those I've had with Andrew Lorenzen-Strait, I understand the following to be the timeline:

May 9: Presents at CBP Port of Entry; Detained on ER
May 9  - May 13: Detained by CBP. Enters Scripps Hospital in San Diego, CA (date?)
May 13 - Enters ICE Custody in San Diego (while in Scripps? after?)
May 13 - ? - Travels from San Diego to San Luis Detention Center in Arizona
May ? - May 15 - Travels from San Luis, Arizona to Cibola Detention Center
May 15 - Arrives at Cibola
May 17 - Goes to Cibola General Hospital
May 17 - Airlifted to Lovelace Medical Center in ABQ
May 17 - 25 - ICU at Lovelace
May 25, 2018 - Pronounced dead.

Is this correct?

I appreciate that first facts are often tough to gather and confirm within the timeframe set forth by PBNDS 4.7.V.E and Directive 7-9.0, so I understand if the information in the ICE posting isn't totally accurate as to timeline.

Thanks for your continued assistance.

Best regards,

Andrew Free



Tel: (844) 321-3221 Fax: (615) 829-8959
Andrew@ImmigrantCivilRights.com
Mail: P.O. Box 90568 Nashville, TN 37209
**NEW OFFICE ADDRESS** : 2004 8th Ave. South Nashville, TN 37204
www.Resist.Law
Licensed to Practice in Tennessee
Admitted to Practice in U.S. Courts of Appeal for the Fifth, Sixth,
Seventh, Ninth, and Eleventh, and District of Columbia Circuits
Admitted to Practice in U.S. District Courts for the District of Colorado,
District of Columbia, Middle and Eastern Districts of Tennessee, and
Northern District of Illinois

# EXHIBIT Y

DEPA.   MENT OF HOMELAND SECURITY
U.S. Customs and Border Protection
**Discretionary Authority Checklist for Alien Applicants**

| | | | |
|---|---|---|---|
| **Applicant's Name:** | ROY ALEXANDER HERNANDEZ RODRIGUEZ | **Port:** | SAN YSIDRO, CA |
| **Date of Birth:** | 02/16/1985  (b)(7)(E)  (b)(6); | **Date of Action:** | 05/09/2018 |
| **Citizenship:** | HONDURAS | **Passport / A#:** | / 206418141 |

**1) Identity / Citizenship:**

Identity sufficiently determined:          Yes ☒ No ☐
Citizenship sufficiently determined:       Yes ☒ No ☐

**2) Age, Health and Notoriety of Applicant:**

Are age or health relevant factors?       Yes ☐ No ☒
Is the applicant a public figure?          Yes ☐ No ☒
Congressional or media interest?          Yss ☐ No ☒

*\*\*NOTE: Discretionary authority should generally not be exercised if identity or citizenship can not be established.*

**REMARKS (to include origin, destination and intended length of stay):**

FROM HONDURAS TO U.S. FOR AN INDEFINTE STAY

**3) Intended Purpose of Entry:**

Emergency:            Yes ☐ No ☒
Medical:              Yes ☐ No ☒
Pleasure:             Yes ☐ No ☒
Business/Official:    Yes ☐ No ☒
Other:                Yes ☒ No ☐

**4) Database queries:**

(b)(6);  Subject Query):                    POS ☒ NEG ☐
(b)(7 (Match to subject):                   POS ☐ NEG ☐
)(E) (b)(6);                                 POS ☒ NEG ☐
(b)(7)(E)                                    POS ☐ NEG ☐
                                             POS ☒ NEG ☐
(b)(7)( Super query):                        POS ☒ NEG ☐

*\*\*NOTE: In the remarks section below, indicate the specific violation(s) or grounds for inadmissibility. The queries listed in number 4 represent the minimum queries that should be conducted.*

**REMARKS (to include (b)(7)(E)                    if applicable:**

(b)(6);          (b)(6); (b)(7)(C);

**5) Previous Immigration Violations or Inadmissibility:**

Previous Immigration Violation(s):       Yes ☒ No ☐
Previous Inadmissibility:                Yes ☒ No ☐
Previous Beneficiary of Discretion:      Yes ☐ No ☒

**6) Nature of Inadmissibility:**

Minor / Technical                          Yes ☒ No ☐
Criminal:                                  Yes ☐ No ☒
National / Homeland Security               Yes ☐ No ☒

**REMARKS:**

Previous Immigration Violations or Inadmissibility: ER'D FOR 5 YEARS ON 01/23/2014  HOUSTON

**LAW ENFORCEMENT SENSITIVE-FOR OFFICIAL USE ONLY**

**(Last Updated 05/08)**

**7) Threat posed to the United States:**

(b)(7)(E)

*\*\*NOTE: Discretionary authority should generally not be exercised if a threat is posed to the United States.*

**REMARKS:**

Likely to Add to Illegal Population

**8) Other Factors to Consider:**

| | |
|---|---|
| Legitimate reason for entering the United States: | Yes ☐ No ☒ |
| Documentary (Passport / Visa) deficiency only: | Yes ☐ No ☒ |
| Credible claim of official misinformation: | Yes ☐ No ☒ |
| Relationship to a U.S. employer or resident: | Yes ☐ No ☒ |
| Intent to circumvent admissibility requirements: | Yes ☐ No ☒ |
| Misrepresentations made during processing: | Yes ☐ No ☒ |
| Minor children accompanying or already in the United States: | Yes ☐ No ☒ |
| Unaware of visa voidance or consequences of VWP overstay: | Yes ☐ No ☒ |
| Relief available through the parole or waiver process: | Yes ☐ No ☒ |

**REMARKS:**

212 (a) (7) (A) (i) (I) of the Immigration and Nationality Act, a

**Examining CBP Officer:**  (b)(6); (b)(7)(C)  CBP OFFICER  (b)(6); (b)(7)(C)

**Applicable Ground(s) of Inadmissibility:**  212 (a) (7) (A) (i) (I) of the Immigra...ality Act, a

**Applicable Discretionary Action(s):**

| | | |
|---|---|---|
| Withdrawal of Application for Admission: | Yes ☐ No ☒ | |
| Parole to Depart Foreign / Voluntary Return: | Yes ☐ No ☒ | Length of parole sought: _____ days |
| Humanitarian Parole: | Yes ☐ No ☒ | Length of parole sought: _____ days |
| Waiver of Passport Requirement: | Yes ☐ No ☒ | Period of admission sought: _____ days |
| Waiver of Non-Immigrant Visa Requirement: | Yes ☐ No ☒ | |
| Classification: _____ | | Period of admission sought: _____ days |
| Waiver of Immigrant Visa Requirement: | Yes ☐ No ☒ | |
| Waiver of processing fee (if applicable): | Yes ☐ No ☒ | |
| Deferred Inspection: | Yes ☐ No ☒ | Deferral Period and Location: ____ days, _____ |

LAW ENFORCEMENT SENSITIVE-FOR OFFICIAL USE ONLY

(Last Updated 05/08)

# EXHIBIT Z

| | |
|---|---|
| **From:** | (b)(6); (b)(7)(C) |
| **Sent:** | 4 Jun 2018 21:05:23 +0000 |
| **To:** | (b)(6); (b)(7)(C) |
| **Cc:** | |
| **Subject:** | FW: HERNANDEZ Detainee Death Review Info Request |
| **Attachments:** | HERNANDEZ, Jeffry DDR - Info Request Memo.pdf, Cibola logbook 1.pdf, Cibola |

logbook 2.pdf, Cibola logbook 3.pdf, Cibola logbook 4.pdf, Cibola logbook 5.pdf, Arrival.pdf,
Departure.pdf

Good Afternoon,

Please see attachments being submitted in response to your message below.  As a reminder, it appears
that I do not currently have approval to gain entry into the SharePoint site sent to me.  Thank you


(b)(6); (b)(7)(C)
Assistant Field Office Director
ERO El Paso Field Office
915-856-(b)(6); (office)
915-726-(b)(7)( (cell)
(b)(6); (b)(7)(C)

**From:** (b)(6); (b)(7)(C)
**Sent:** Monday, June 04, 2018 10:07 AM
**To:** (b)(6); (b)(7)(C)
**Cc:**
**Subject:** HERNANDEZ Detainee Death Review Info Request

Good morning AFOD Hernandez,

As you know, our office will be reviewing the death of detainee HERNANDEZ who was in ICE custody at
the Cibola County Correctional Center (CCCC) from May 17 – May 25, 2018, and who died on May 25,
2018.  I will be the Team Lead for the review.

Attached to this email is a request for information related to HERNANDEZ.  We ask that your office
provide the requested information by June 8, 2018 via SharePoint (the link is below).  Please let me
know who you would like to designate to upload and I will give them the appropriate permissions.  If
you have any questions about the request, please let me know.  After we review the documents, we'll
send a preliminary witness list of individuals we would like to interview during our onsite review.

I'll also be following up with a request for information from San Luis and El Paso Processing, where the
detainee was also held in custody before arrival at CCCC.

(b)(7)(E)

# EXHIBIT ZZ

| Bates Range | Release Document Name | Description of Document | Date | Exemptions Applied | Explanation of Withholdings |
|---|---|---|---|---|---|
| 000001-000003 | RE: CRCL Short Form Complaint Number is 18-08-DHS-0342 | Email Chain | 08/02/2018 | (b)(5); (b)(6), (b)(7)(C) | Names and contact information of DHS employees were redacted from this record pursuant to FOIA exemption (b)(6). The employees whose names are redacted in the documents are not senior leaders. They are not employees whose actions, decisions, or statements are subject to press coverage. Those employees are not public figures, and there is no public interest present that outweighs their right to personal privacy. DHS also applied FOIA Exemption (b)(7)(C) to protect the names of DHS law enforcement personnel contained with the email messages. These individuals are employees of DHS' law enforcement components and the records containing these employee's names relate to DHS' law enforcement mission of enforcing US immigration laws. Law enforcement personnel have a heightened interest in protecting their personally identifiable information, relative to members of the general public. In particular, because of the sensitivity surrounding immigration enforcement issues, the release of these law enforcement names in connection with these issues could subject these employees to harassment by individuals who disagree with the Department's mission, or to harm. DHS applied FOIA Exemption (b)(5) to protect deliberative information contained in email outlining CRCL's investigation. Such deliberative information is exhibiting CRCL's investigative angle, CRCL's initial thinking about the matters to be investigated and issues to be explored. Disclosure of this information could be harmful to agency in making deliberations open to public and could provide misleading information since such information was provided by CRCL prior to commencement of investigation and exploration of the issues surrounding this investigation. |
| 000004-000013 | List of Pro Bono Legal Service Providers | Listing of Legal Service Providers in California | 04/01/2018 | N/A | |
| 000014 | Certificacion De Nacionalidad | Certification of Nationality Statement | 05/09/2016 | N/A | |
| 000015-000017 | Re: DANA - PLEASE EXPEDITE THIS REVIEW - Cibola Retention Memo | Email Chain | 04/02/2019 | (b)(5); (b)(6); (b)(7)(E) | Names and contact information of DHS employees were redacted from this record pursuant to FOIA exemption (b)(6). The employees whose names are redacted in the documents are not senior leaders. They are not employees whose actions, decisions, or statements are subject to press coverage. Those employees are not public figures, and there is no public interest present that outweighs their right to personal privacy. DHS applied exemption (b)(7)(E) to protect law enforcement sensitive information, including law enforcement investigative codes. DHS also applied FOIA exemption (b)(5) to protect deliberative information in an email exchange between CRCL supervisors and analysts regarding draft memorandum. Disclosure of such deliberations could inhibit the candid discussion of issues between employees and frustrate DHS decision-making. |

| | | | | | |
|---|---|---|---|---|---|
| 000018-000021 | RE: CRCL Short Form Complaint Number is 18-08-DHS-0342 | Email Chain | 10/04/2018 | (b)(5); (b)(6); (b)(7)(C); (b)(7)(E) | Names and contact information of DHS employees were redacted from this record pursuant to FOIA exemption (b)(6).  The employees whose names are redacted in the documents are not senior leaders.  They are not employees whose actions, decisions, or statements are subject to press coverage. Those employees are not public figures, and there is no public interest present that outweighs their right to personal privacy. DHS also applied FOIA Exemption (b)(7)(C) to protect the names of DHS law enforcement personnel contained with  the email messages. These individuals are employees of DHS' law enforcement components and the records containing these employee's names relate to DHS' law enforcement mission of enforcing US immigration laws. Law enforcement personnel have a heightened interest in protecting their personally identifiable information, relative to members of the general public. In particular, because of the sensitivity surrounding immigration enforcement issues, the release of these law enforcement names in connection with these issues could subject these employees to harrassment by individuals who disagree with the Department's mission, or to harm. DHS applied FOIA Exemption (b)(5) to protect deliberative information contained in email outlining CRCL's investigation. Such deliberative information is exhibiting CRCL's investigative angle, CRCL's initial thinking about the matters to be investigated and issues to be explored.  Disclosure of this information could be harmful to agency in making deliberations open to public and could provide misleading information since such information was provided by CRCL prior to commencement of investigation and exploration of the issues surrounding this investigation. |

| 000022-000024 | FW: CRCL Short Form Complaint Number is 18-08-DHS-0342 | Email Chain | 09/07/2018 | (b)(5); (b)(6); (b)(7)(C); (b)(7)(E) | Names and contact information of DHS employees were redacted from this record pursuant to FOIA exemption (b)(6). The employees whose names are redacted in the documents are not senior leaders. They are not employees whose actions, decisions, or statements are subject to press coverage. Those employees are not public figures, and there is no public interest present that outweighs their right to personal privacy. DHS also applied FOIA Exemption (b)(7)(C) to protect the names of DHS law enforcement personnel contained with the email messages. These individuals are employees of DHS' law enforcement components and the records containing these employee's names relate to DHS' law enforcement mission of enforcing US immigration laws. Law enforcement personnel have a heightened interest in protecting their personally identifiable information, relative to members of the general public. In particular, because of the sensitivity surrounding immigration enforcement issues, the release of these law enforcement names in connection with these issues could subject these employees to harrassment by individuals who disagree with the Department's mission, or to harm. DHS applied FOIA Exemption (b)(5) to protect deliberative information contained in email outlining CRCL's investigation. Such deliberative information is exhibiting CRCL's investigative angle, CRCL's initial thinking about the matters to be investigated and issues to be explored. Disclosure of this information could be harmful to agency in making deliberations open to public and could provide misleading information since such information was provided by CRCL prior to commencement of investigation. |
| 000025-000040 | Detainee Death Review - Jeffry HERNANDEZ | Report | | (b)(6); (b)(7)(C); (b)(7)(E) | Names and contact information of DHS employees were redacted from this record pursuant to FOIA exemption (b)(6). The employees whose names are redacted in the documents are not senior leaders. They are not employees whose actions, decisions, or statements are subject to press coverage. Those employees are not public figures, and there is no public interest present that outweighs their right to personal privacy. DHS also applied FOIA Exemption (b)(7)( C) to protect the names of DHS law enforcement personnel contained with the email messages. These individuals are employees of DHS' law enforcement components and the records containing these employee's names relate to DHS' law enforcement mission of enforcing US immigration laws. Law enforcement personnel have a heightened interest in protecting their personally identifiable information, relative to members of the general public. In particular, because of the sensitivity surrounding immigration enforcement issues, the release of these law enforcement names in connection with these issues could subject these employees to harrassment by individuals who disagree with the Department's mission, or to harm. DHS applied exemption (b)(7)(E) to protect law enforcement sensitive information, including law enforcement investigative codes. |

| | | | | | |
|---|---|---|---|---|---|
| 000041-000044 | FW: CRCL Short Form Complaint Number is 18-08-DHS-0342 (18-CRCL-1392) ERO Response | Email Chain | 09/07/2018 | (b)(5); (b)(6); (b)(7)(C); (b)(7)(E) | Names and contact information of DHS employees were redacted from this record pursuant to FOIA exemption (b)(6).  The employees whose names are redacted in the documents are not senior leaders.  They are not employees whose actions, decisions, or statements are subject to press coverage. Those employees are not public figures, and there is no public interest present that outweighs their right to personal privacy. DHS also applied FOIA Exemption (b)(7)(C) to protect the names of DHS law enforcement personnel contained with  the email messages. These individuals are employees of DHS' law enforcement components and the records containing these employee's names relate to DHS' law enforcement mission of enforcing US immigration laws. Law enforcement personnel have a heightened interest in protecting their personally identifiable information, relative to members of the general public. In particular, because of the sensitivity surrounding immigration enforcement issues, the release of these law enforcement names in connection with these issues could subject these employees to harrassment by individuals who disagree with the Department's mission, or to harm. DHS applied FOIA Exemption (b)(5) to protect deliberative information contained in email outlining CRCL's investigation. Such deliberative information is exhibiting CRCL's investigative angle, CRCL's initial thinking about the matters to be investigated and issues to be explored.  Disclosure of this information could be harmful to agency in making deliberations open to public and could provide misleading information since such information was provided by CRCL prior to commencement of investigation. |

| | | | | | |
|---|---|---|---|---|---|
| 000045-000053 | Cibola County Correctional Center Complaint Nos. 18-08-DHS-0342, 18-08-ICE-0745, 18-11-ICE-0668, 18-11-ICE-0742, 19-02-ICE-0072, 19-03-ICE-0071, 19-03-ICE-0110, and 19-06-ICE-0211 | Memorandum from Officer for CRCL and Attorney Advisor to ICE and CBP regarding complaints received by CRCL relating to Cibola County Correctional Center | April 8, 2019 | (b)(6), (b)(5), (b)(7)(C) | Names and contact information of DHS employees were redacted from this record pursuant to FOIA exemption (b)(6). The employees whose names are redacted in the documents are not senior leaders. They are not employees whose actions, decisions, or statements are subject to press coverage. Those employees are not public figures, and there is no public interest present that outweighs their right to personal privacy. DHS also applied FOIA Exemption (b)(7)(C) to protect the names of DHS law enforcement personnel contained with the email messages. These individuals are employees of DHS' law enforcement components and the records containing these employee's names relate to DHS' law enforcement mission of enforcing US immigration laws. Law enforcement personnel have a heightened interest in protecting their personally identifiable information, relative to members of the general public. In particular, because of the sensitivity surrounding immigration enforcement issues, the release of these law enforcement names in connection with these issues could subject these employees to harrassment by individuals who disagree with the Department's mission, or to harm. DHS applied FOIA Exemption (b)(5) to protect deliberative information contained in memorandum outlining CRCL's investigation. Such deliberative information is exhibiting CRCL's investigative angle, initial thinking about the matters to be investigated and issues to be explored. Disclosure of this information could be harmful to agency in making deliberations open to public and could provide misleading information prior to commencement of investigation. |
| 000054-000055 | Email: BuzzFeed: A transgender woman who was part of the migrant carivan has died in ICE custody | Email from Katie Waldman forwarding article from BuzzFeed regarding death of Roxsana Hernandez | May 30, 2018 | (b)(6) | DHS applied FOIA Exemption (b)(6) to protect the personally identifiable contact information (email addresses) of individuals involved in the documents produced. For all of these redactions, disclosure of such information would constitute a clearly unwarranted invasion of personal privacy. |
| 000057-000158 | Email: DHS Morning Briefing | A summary of daily news reporting relevant to DHS operations | November 29, 2018 | (b)(6) | DHS applied FOIA Exemption (b)(6) to protect the personally identifiable contact information (phone numbers and email addresses) of individuals involved in the documents produced. For individuals who are not senior leaders, DHS also redacted their names. For all of these redactions, disclosure of such information would constitute a clearly unwarranted invasion of personal privacy. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| 2019-ICLI-00053 | 1-12 | Partial | (b)(6) (b)(7)(C) | **Email Communication Regarding Bed Space**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers.<br><br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on third party detainees and alien numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names and alien numbers of a third-party individuals who are identified in these emails, could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 15-18 243-244 594 597-598 611 614-615 1138 | Partial | (b)(6) (b)(7)(C) (b)(7)(E) | **DHS Form I-216, Record of Persons Transferred and DHS Form I-203 Order to Detain or Release Alien, that contains the names and other information of aliens that were transferred to the San Luis Regional Detention Center.**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on third party detainee names, alien numbers, dates of births, and Federal Identification Numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and other third party related information in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The |

2

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(7)(E):**<br>Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were used on law enforcement codes, identifiers, Subject ID numbers, and case numbers that could disclose law enforcement techniques and procedures.<br><br>**Reasons for Redaction(s):**<br>Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions that are not generally known by the public and which could reasonably be expected to risk circumvention of the law. Disclosure of codes, identifiers, and other law enforcement numbers could assist third parties in deciphering the meanings of the codes and/or could enable an individual to navigate, alter, and/or manipulate law enforcement databases were they to gain access to the system. Disclosure of information not commonly known to the public could reasonably be expected to risk circumvention of the law. The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |
| 2019-ICLI-00053 | 34, 35, 37, 47, 49, 51, 52 | Partial | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E) | **Portions of the ICE Air Operation Handbook that discuss security procedures and what law enforcement databases are accessed and how to access these databases.**<br><br>**Redacted Information per (b)(6), (b)(7)(C):** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the phone numbers of ICE employees.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the phone number of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(7)(E):**<br>Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were applied to law enforcement domain names and addresses, law enforcement databases, and security procedures.<br><br>**Reasons for Redaction(s):**<br>Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of what databases law enforcement officers use, how they access those databases, and the domain names and addresses could assist third parties in accessing these databases and, were they able to gain access to these databases, could enable an individual to navigate, alter, and/or manipulate these law enforcement databases. Disclosure of information not commonly known to the public could reasonably be expected to risk circumvention of the law.  The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |
| 2019-ICLI-00053 | 56-58, 59, 240-242, 245, 250, 258-259, 260-264, 265-266, 267, 268, 293-295, 296-298, 299-300, 301-303, 650-651, 654-655, 703, 720-721, 722-725, 726-729, 730-732, 733-736, 737-738, 739, 740-741, 760-764, 765-766, 767, 769, 772-778, 779, 797, 798-799, 800, 818, | Partial | (b)(6) (b)(7)(C) | Emails titled "FW: Hernandez DDR – Cibola video," "FW: EADM – Hernandez," "FW: Hernandez DDR," "Hernandez – Prelim Mortality Review," "Hernandez Follow-up," "FW: Preliminary Autopsy Findings," "RE: San Luis/El Paso SPC: HERNANDEZ DDR Info Request," "RE: HERNANDEZ – Quick," "San Luis AFOD," "HERNANDEZ," "RE: Detainee Death & Request for Medical Records," "RE: HERNANDEZ DDR," "RE: HERNANDEZ," "FW: Cibola Mod," "FW: Preliminary Autopsy Findings," "RE:  Detainee Death Review – Jeffry Hernandez," "HERNANDEZ draft," "Please email it to me – Detainee Death Review – Jeffery HERNANDEZ," "RE: DDR HERNANDEZ," "RE: Detainee Death Review – Jeffery HERNANDEZ," "RE: EADM – Hernandez," "RE: Follow-up on HERNANDEZ case," "RE: Hernandez," "RE: Follow-up on HERNANDEZ case," "FW: DDR HERNANDEZ," "FW: Detainee Death Notice – Jeffry HERNANDEZ," "FW: Detainee Death Review – Jeffry HERNANDEZ," "FW: EADM – Hernandez," "FW: HERNANDEZ DDR," "FW: OMI 2018-03102 Hernandez Rodriguez," "FW: OMI 2018-03102 Hernandez Rodriguez," "RE: Hernandez Follow-up," "RE: HERNANDEZ Preliminary Findings," "RE: Hernandez," "RE: How is your DDR coming for Hernandez at Cibola," "RE: Jeffry Hernandez," "RE:  Just checking," "RE: Media Inquiry: death report on Roxsana Hernandez," "RE: Please email it to me – Detainee |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | 819-820, 821, 822-823, 824-825, 826-828, 829-831, 832, 833, 851-856, 858-859, 860-863, 877, 894, 895-896, 897, 898, 917-921, 926-927, 928-933, 934-939, 941-943, 944-950, 951-953, 954, 955-957, 958-961, 962-964, 972-979,980-982, 983-984, 985-986, 987-988, 996, 999, 1022-1023, 1024-1025, 1026-1028, 1029-1034, 1040-1041, 1042, 1043-1050, 1053, 1055-1081, | | | Death Review – Jeffery HERNANDEZ," "RE: Question," "RE: San Luis/El Paso SPC: HERNANDEZ DDR Info Request," "San Luis AFOD," "RE: Hernandez," "RE: Hernandez – Detainee Death," "RE: Autopsy," "RE: CCC information," "Hernandez," "HERNANDEZ death certificate and autopsy," "HERNANDEZ Detainee Death Review," "Hernandez Follow-up," "HERNANDEZ," "RE: Hernandez DDR scheduling," "RE: Hernandez Detainee Death Review," "RE: Hot – due Monday NLT 10am," "RE: Detainee Death Review – Jeffry HERNANDEZ," "RE: HERNANDEZ," "RE: HERNANDEZ DDR," "RE: HERNANDEZ DDR – Cibola video," "RE: HERNANDEZ DDR Executive Summary," "RE: San Luis/El Paso SPC: HERNANDEZ DDR Info Request," "RE: Request for Information," "RE: Additional Information," "RE: Pending Autopsy Report," "RE: PREA Audit Notification – Cibola County Correctional Center (CCC)," "RE: Preliminary Autopsy Findings," "Fw: Hernandez – Prelim Mortality Review," "Fw: HERNANDEZ DDR preliminary findings," "Fw: HERNANDEZ DDR," "Fw: HERNANDEZ," "RE: San Luis/El Paso SPC: HERNANDEZ DDR Info Request," "San Luis AFOD," "RE: San Luis/El Paso SPC: HERNANDEZ DDR Info Request," "RE: Hernandez DDR scheduling," "RE: IDO Response: ICE FOIA Tasking for 2019-ICFO-39196," "RE: HERNANDEZ," "FW: Latest ES," "FW: Your Friday Get Backs for D1," "RE: Your Friday Get Backs for D1," "RE: Hernandez – Detainee Death," "RE: HERNANDEZ DDR," "RE: HERNANDEZ DDR – Preliminary Findings," "RE: HERNANDEZ DDR," "RE: HERNANDEZ death – question," "RE: Hernandez edits," "RE: Hernandez FOIA request," "FW: Detainee Death & Request for Medical Records," "FW: Detainee Death Review – Jeffry HERNANDEZ," "FW: FYI," "RE: DDR Funding Request," "EADM – Hernandez," "FW: CCC information," "FW: Cibola Mod," "FW: Cibola Staff, Schedule, and Staffing Plan," "Fw: DDR," "Fw: HERNANDEZ," "FW: MR Reporting of Findings -HERNANDEZ," "RE: ICE OPA COB 12-10-18," "RE: |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | 1082, 1083, 1084, 1085-1087, 1088, 1089, 1090, 1092-1093, 1094-1098, 1099, 1100, 1102-1104, 1105-1107, 1109, 1235-1236, 1237, 1251-1256, 1301-1303, 1418-1421, 1461. | | | **OPA ISSUE: ELP-based Washington Post reporter questions about death of transgender former ICE Detainee," "Work Package Folders for Signature/Clearance UACs; Detainee Death of Roxsana Hernandez; FY 2018 Prohibition of Goods Made through Forced Labor; and FY 2018 Visa Security Program (VSP); FYI,"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, office numbers, email addresses, phone numbers, and digital signatures.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 60<br>163<br>165 | | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E) | **Enforce Alien Detention Module (EADM) Screen Shots Entitled "Detention History" and ENFORCE Screen Shots Entitled "Application Suite RCA Recommendation," "Print Detention History," "Detention Details,"** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | 169-171 768 1101 1200 1204-1206 | | | **"ENFORCE" refers to a suite of software applications utilized to access the Enforcement Integrated Database (EID), a DHS-shared common database repository for several DHS law enforcement and homeland security applications which captures and maintains information related to the investigation, arrest, booking, detention, and removal of persons encountered during immigration and criminal law enforcement investigations and operations. EADM is a software application used to access EID.** <br><br> **Redacted Information per (b)(6) and (b)(7)(C):** <br> Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on names and "Logged In" numbers associated with ICE and DHS personnel accessing or inputting information within ENFORCE and/or EADM. <br><br> **Reason for Redaction(s):** <br> The disclosure of the names and personally identifying numbers and/or codes associated with ICE and DHS personnel in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; could place them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and disclosure could minimize the ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | **Redacted Information per (b)(7)(E):** Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were used on Person ID numbers, Subject ID numbers, Case Numbers, URLs, and Event numbers.<br><br>**Reason for Redaction(s):** Exemption (b)(7)(E) was applied to law enforcement sensitive information the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of this information could assist third parties in deciphering the meanings of the various law enforcement numbers that are assigned to subjects, cases, and events, and could enable an individual to navigate, alter, and/or manipulate law enforcement databases were they to gain access to the system. Disclosure of these techniques and practices in navigating the databases could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. Further, how law enforcement officers access databases through specific URLs is a law enforcement technique and procedure that is not commonly known to the public. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |
| 2019-ICLI-00053 | 120-129 141-142 164 166 168 202-203 1152-1158 1172-1173 | Partial | (b)(6)(b)(7)(C) (b)(7)(E) | **Computer screen shots from ICE Enforce Alien Removal Module (EARM) entitled "Search Results," "View Person Details," "View Encounter Summary," "Case Summary," "Supporting Info – Miscellaneous Numbers," "Detention History" "Detention Details," "View Person Record," and "Encounter Details" and screen shots from EID entitled "EID Person Record" and "User Account Management."  EARM is a software application used to access EID.**<br><br>**Redacted Information per (b)(6) and (b)(7)(C):** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | 1198-1199 1201 1203 | | | Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the names and "Logged In" numbers associated with ICE and DHS personnel accessing information in EID.<br><br>**Reason for Redaction(s):**<br>The disclosure of the names and personally identifying numbers associated with ICE and DHS personnel in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; could place them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and disclosure could minimize the ability to effectively conduct future investigations.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(7)(E):**<br>Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were used on Subject ID numbers, Person ID numbers, Case ID numbers, Case numbers, FBI numbers, URLs, detention ID numbers, EID Incident numbers, Event numbers, and the names of law enforcement database systems against which investigatory law enforcement information is requested.<br><br>**Reason for Redaction(s):** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of this information could assist third parties in deciphering the meanings of the various law enforcement numbers that are assigned to subjects, cases, and events, and could enable an individual to navigate, alter, and/or manipulate law enforcement databases were they to gain access to the system.  Disclosure of these techniques and practices in navigating the databases could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.  Further, how law enforcement officers access databases through specific URLs is a law enforcement technique and procedure that is not commonly known to the public.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |
| 2019-ICLI-00053 | 61-62 | Partial | (b)(6) (b)(7)(C) (b)(7)(E) | **Email titled "FW: HERNANDEZ Detainee Death Review Info Request"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(7)(E):**<br>Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were used on law enforcement URLs.<br><br>**Reasons for Redaction(s):**<br>Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of how law enforcement officers access databases through specific URLs could enable an individual to gain access to the system and then navigate, alter, and/or manipulate the information contained within the database.  Further, how law enforcement officers access databases through specific URLs is a law enforcement technique and procedure that is not commonly known by the public.  Disclosure of information not commonly known to the public could reasonably be expected to risk circumvention of the law.  The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| 2019-ICLI-00053 | 63-68 498 566-574 1114-1115 1117-1118 | Partial | (b)(6) (b)(7)(C) | **IHSC Medical Records of Roxsana Hernandez including documents titled "In-Processing Health Screening Form," "New Patient Comprehensive Exam," "Pharmacy Benefits Letter," "Physician's Aftercare Instructions," "Treatment Authorization Request," "Treatment, Authorization & Consultation Form"** <br><br> **Redacted Information per (b)(6), (b)(7)(C):** <br> Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, signatures, DEA#s and Medical license number , email addresses, and phone numbers. <br><br> **Reasons for Redaction(s):** <br> The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| 2019-ICLI-00053 | 69-75<br>79-81<br>83-85<br>88-91<br>619-625<br>643-649<br>1121-1126<br>1130<br>1132<br>1134<br>1135-1136<br>1139-1142 | partial | (b)(6)<br>(b)(7)(C) | **Cibola County Correctional Center Files including documents titled "Escort Trip," "Equipment Checklist," "Driver Vehicle Inspection Report," "Transport Orders," "Receiving and Discharge Checklist," "Inmate/Detainee Commitment Summary," "Disposition of Non-Allowable Property," "Facility Issued Property Receipt," "Inmate/Detainee Mail," "Property Disclaimer," "Monitoring of Inmate/Detainee Telephone Calls," "Incident Statement,"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the names of detention facility employees who performed services on behalf of ICE.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names belonging to third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with the fact that they are providing detention services for ICE; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 111-117<br>183<br>204-211 | partial | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E) | **Printouts from the USCIS Central Index System (CIS) entitled "ID # Search Display," "Status/History Data," "Employment Authorization Document," "CI/EARM Subsystem Display," "Display NFTS File Location Information,"** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | **"ARR/BC Card Display," "Card/History Data," and "EOIR Data Display."** The CIS is a repository of electronic data that contains an index of basic data elements related to an individual as he or she passes through the immigration process.<br><br>**Redacted Information per (b)(6) and (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the names of relatives of Ms. Hernandez.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names belonging to third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(7)(E):**<br>Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were used on law enforcement codes, database access codes and database command codes.<br><br>**Reasons for Redaction(s):** |

15

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of these various law enforcement codes used to access, navigate, and manipulate data within a specific database, would provide the information necessary to third-parties, , if they were to gain access to the databases, in how to navigate, alter or manipulate law enforcement databases.  Further, how law enforcement officers access databases, and the codes used within the databases is a law enforcement technique and procedure that is not commonly known.  Disclosure of information not commonly known to the public could reasonably be expected to risk circumvention of the law.  The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |
| 2019-ICLI-00053 | 78 87 94-102 104-110 118-119 130-139 143 145-150 161-162 167 172-181 193-201 235-237 499 | Partial | (b)(6)\(b)(7)(C) (b)(7)(E) | **Various Immigration related Forms and documents of Roxsana Hernandez including "Form I-203 Order to Detain," "Notice to Alien Ordered Removed/Departure Verification," "Notice and Order of Expedited Removal," "Form I-286 Notice of Custody Determination," "Form I-200, Warrant for Arrest of Alien," "Order of Removal," "Form I-867, Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act," fugitive flyers, "Form I-385, Alien Booking Record," CBP Claims Mainframe System checks, "Personal Search Worksheet" Fingerprint Cards, "Deportation Case Check Sheet," "Standard Removal Check Sheet," "ICE ERO Prosecutorial Discretion Checklist," pages from Board of Immigration Appeals record check, "Form I-213, Record of Deportable/Inadmissible Alien," ENFORCE Risk Classification Assessment" printout, Encounter Alerts, Mug shots, "Mexican E/R" "Form I-214 Rights Advisement," "Consequent Delivery System Form LRT/CDS-100," "Final Disposition Report," Form I-876, "Record of Sworn Statement in Proceedings** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | 501-502<br>1129<br>1145-1150<br>1161-1170<br>1174<br>1176-1181<br>1196-1198<br>1207-1215<br>1468-1477<br>1490-1491<br>1494<br>1503-1505<br>1506-1520<br>1534-1543 | | | under Section 235(b)(1) of the Act," Form I-860, "Notice and Order of Expedited Removal," Form I-831, "Continuation Page, and Form I-876B, Jurat for Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act," Form I-296, "Notice to Alien Ordered Removed/Departure Verification," Form I-216, "Record of Persons and Property Transferred," "Point of Contact Information," Form I-217, Information for Travel Document or Passport," "Computer Checklist for Expedited and Other Removals," "Person Query," "Person Encounter Detail," "Query Result," "Person Search Worksheet,"<br><br>**Redacted Information per (b)(6) and (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the names, signatures, telephone numbers, and/or initials of ICE, DHS, and non-DHS law enforcement personnel.<br><br>**Reason for Redaction(s):**<br>The disclosure of the names and other personally identifiable information of ICE and other law enforcement personnel in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; could place them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and disclosure could minimize the ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | could possibly exist in the disclosure of this information. Lastly, the individuals did not give their consent for the disclosure of personally identifiable information. <br><br> **Redacted Information per (b)(7)(E):** <br> Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were used on Subject ID numbers, case numbers, file numbers, FBI numbers, charge codes, event numbers, names of law enforcement database systems against which investigatory law enforcement information is requested and the search results, law enforcement domain names and web addresses.. <br><br> **Reason for Redaction(s):** <br> . Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law.  Disclosure of this information could assist third parties in deciphering the meanings of the various law enforcement codes used to access, navigate, and manipulate data within a specific database, and numbers that are assigned to subjects, cases, and events, and could enable an individual to navigate, alter, and/or manipulate law enforcement databases were they to gain access to the system.  Disclosure of these techniques and practices in navigating the databases could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.  Further, how law enforcement officers access databases through specific domain names and web addresses is a law enforcement technique and procedure that is not commonly known to the public.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| 2019-ICLI-00053 | 152-160 184-192 212-234 1184-1192 | Partial | (b)(6)(b)(7)(C) (b)(7)(E) | **Screen shots from TECS which is a law enforcement information collection, analysis, and sharing environment. TECS collects, maintains, and screens data, as well as conduct analysis, screening, and information sharing. TECS databases contain temporary and permanent enforcement, inspection and intelligence records.** |
| | | | | **Redacted Information per (b)(6) and (b)(7)(C):** |
| | | | | Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the names of ICE and other law enforcement officers accessing TECS and personally identifying numbers assigned to these law enforcement agents accessing TECS. |
| | | | | **Reasons for Redaction(s):** |
| | | | | The disclosure of the names and/or the personally identifying number assigned to law enforcement agents in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; could place them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and disclosure could minimize the ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| | | | | **Redacted Information per (b)(7)(E):** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were used on case numbers, case control numbers, various TECS category codes, and TECS Record ID codes. <br><br> **Reasons for Redaction(s):** <br> Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of this information could assist third parties in deciphering the meanings of the various law enforcement codes used to access, navigate, and manipulate data within a specific database, and numbers that are assigned to subjects, cases, and events, and could enable an individual to navigate, alter, and/or manipulate law enforcement databases were they to gain access to the system. Disclosure of these techniques and practices in navigating the databases could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |
| 2019-ICLI-00053 | 246-249 1257-1261 | Full | (b)(5) | **Preliminary Mortality Review Report** <br><br> **Redacted Information per (b)(5):** <br> 2019-ICLI-00053.0246 through 2019-ICLI-00053.0249 is an initial, non-final draft of the Preliminary Mortality Review Report that was produced 2019-ICLI-00053.1257 through 2019-ICLI-00053.1261. This Preliminary report was drafted by the OPR investigator who conducted investigation into the death of a detainee. This report contains information pertaining to medical care, interviews of detention facility personnel. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | **Reason for Redaction(s):**<br>FOIA exemption (b)(5) was applied to withhold the information contained in this record/report as draft. This document was prepared by the External Reviews and Analysis Unit of OPR (ERAU) and is labeled as a predecisional document in the header and footer of the document. The information contained in this document is withheld per (b)(5) which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. The deliberative process privilege protects the internal deliberations of the government by exempting recommendations, analyses, and discussions undertaken to aid agency decision making.  The privilege also prevents the premature disclosure of proposed policies, serves to avoid public confusion generated by rationales or decisions not ultimately adopted by an agency, and maintains the integrity of agency decision-making processes by encouraging open and candid discussions.  Draft documents, by their nature, are pre-decisional and preliminary versions of what may later become a final document in whole or in part.  Oftentimes draft documents never evolve into a final form; material is withdrawn or discarded during the decision-making process. |
| 2019-ICLI-00053 | 251-257 | Partial | (b)(6)(b)(7)(C) | **Email titled "FW: OMI 2018-03102 Hernandez Rodriguez"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names email addresses, office numbers, and phone numbers and the New Mexico University Office of the Medical Investigator employee names email addresses, and phone numbers. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | **Reasons for Redaction(s):** |
| | | | | The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| | | | | The disclosure of the names and contact information belonging to third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with assisting in the investigation into the death of Ms. Hernandez  being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 269-292 322-337 658-673  269, 322, 658 | Partial | (b)(6)(b)(7)(C) | **Detainee Death Review: Jeffery HERNANDEZ**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on CBP, ICE, and other detention facility and health care provider employee names.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names of CBP and ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names belonging to third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with providing services to detainees on behalf |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | of ICE being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the individuals did not provide consent and the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 307 | Partial | (b)(7)(E) | **Transportation Staffing Plan Cibola County Correctional Center**<br><br>**Redacted Information per (b)(7)(E):**<br>Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were used on staffing levels and route information for transporting detainees.<br><br>**Reasons for Redaction(s):**<br>Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of this number and routes driven by ICE officers could allow third-party individuals with malicious intent to interfere with the orderly transport of detainees and/or to cause harm to the officers and/or detainees.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |
| 2019-ICLI-00053 | 309-310 1108 | Partial | (b)(6)(b)(7)(C) (b)(7)(E) | **Amendment of Solicitation/Modification of Contract**<br><br>**Redacted Information per (b)(6), (b)(7)(C):** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE and detention facility employee names, signatures, office numbers, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names and contact information belonging to third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. <br><br> **Redacted Information per (b)(7)(E):** <br> Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were used on specific information that would identify the number of guards at the detention facility. <br><br> **Reasons for Redaction(s):** <br> Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of unit pricing would, coupled with the other public information regarding this contract, would reveal staffing levels of guards at this detention facility.  The release of this type of information could allow third-party individuals to circumvent the law and/or interfere by taking proactive steps to counter against being detected should they gain access to the detention facility as they would have knowledge of how many guards provide various services at the facility.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |
| 2019-ICLI-00053 | 311-319 | Partial | (b)(6)(b)(7)(C) | **Email titled "FW:  Cibola Staff, Schedule, and Staffing Plan" with attachment "CCS CIBOLA-ICE STAFFING PATTERN"** <br><br> **Redacted Information per (b)(6), (b)(7)(C):** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE, detention facility, and health care provider employee names, email addresses, office numbers, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of these employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names and contact information belonging to third-party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with providing services to detainees on behalf of ICE; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 320-321 656-657 | Partial | (b)(6)(b)(7)(C) | **Memorandum Subject: "Findings – Death of ICE Detainee Jeffry Hernandez (JICMS #201807481)** <br><br> **Redacted Information per (b)(6), (b)(7)(C):** <br> Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, signatures, and phone number. <br><br> **Reasons for Redaction(s):** <br> The disclosure of the names, signatures, and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 338-339 | Partial | (b)(6)(b)(7)(C) (b)(7)(E) | **Email titled "FW:  HERNANDEZ Detainee Death Review Info Request"** <br><br> **Redacted Information per (b)(6), (b)(7)(C):** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, office numbers, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(7)(E):**<br>Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were used on a law enforcement URL.<br><br>**Reason for Redaction(s):**<br>Exemption (b)(7)(E) was applied to a law enforcement URL, which is an unique web address on the internet, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law.  Disclosure of this information could assist third parties in |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | accessing law enforcement databases and systems.  Disclosure of these techniques and practices in accessing law enforcement systems could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.  Further, how law enforcement officers access law enforcement systems is technique and procedure that is not commonly known.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities |
| 2019-ICLI-00053 | 340-342 | Partial | (b)(6)(b)(7)(C) | **Memorandum Subject: "Information Request for JICMS Case #201807481 Detainee Death Review Jeffry HERNANDEZ (A206 418 141)**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names, signatures, and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 343-396 | Partial | (b)(6)(b)(7)(C) | **Handwritten Hospital Post Log Notes for dates 5-17-18 through 5-25-18**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE, detention and medical facility employee names, initials, and signatures.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names, initials, and signatures, of ICE, detention and medical facility employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names and contact information belonging to third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with alleged |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII weighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 397-402 599-600 612-613 | Partial | (b)(6)(b)(7)(C) | **Transportation Paperwork including "Form I-216, Record of Persons Transferred," "Transport Trip Log Paperwork," and "Transport 50 Passenger Bus Seating Chart."**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on law enforcement officer names, and signatures.  Additionally, partial redactions were used on the names, alien numbers, dates of birth, Federal Identification Number, Case numbers, and Subject ID numbers of third-party individuals.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names, vehicle numbers, and signatures of law enforcement officers in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names and other third party related information in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 403-404 | Partial | (b)(6)(b)(7)(C)(b)(7)(E) | **Email titled "FW:  HERNANDEZ Detainee Death Review Info Request"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, office numbers, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. <br><br> **Redacted Information per (b)(7)(E):** <br> Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were used on a law enforcement URL <br><br> **Reason for Redaction(s):** <br> Exemption (b)(7)(E) was applied to a law enforcement URL, which is an unique web address on the internet, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law.  Disclosure of this information could assist third parties in accessing law enforcement databases and systems.  Disclosure of these techniques and practices in accessing law enforcement systems could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.  Further, how law enforcement officers access law enforcement systems is technique and procedure that is not commonly known by the public.  The disclosure of this information serves no |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities |
| 2019-ICLI-00053 | 405-407 421-423 | Partial | (b)(6)(b)(7)(C) | **Memorandum – Significant Event Notice – Death**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on detention and medical facility employees.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names of detention and medical facility employees who performed services on behalf of ICE in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 408-410 | Partial | (b)(6)(b)(7)(C) | **Email titled "Detainee Death/Hospital Update – Hernandez, Jeffry A#206418141"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE, detention and medical facility employee names, email addresses, office numbers, and phone numbers. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | **Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names and contact information belonging to third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 411-420 424-427 486-497 536-540 698-702 | Partial | (b)(6)(b)(7)(C) | **Cibola County Correct Care Solutions Medical Records including: "General Notes," "Progress Notes," and "Physician's Orders," "Master Problem List," "Immunization, Tuberculosis, and Syphilis Testing Record," "Provider History and Physical Health Assessment," "Emergency Room/Inpatient Referral Request," "Medical Summary of Federal Prisoner/Alien in Transit," "Health Services Notice," "Intake Education Information," "Intake Check List," "Receiving Screening," "Consent to Medical Interpretation," Patient Authorization and Consent to Medical Examination and/or Treatment," and "Medical Psychiatric Alert."**<br><br>**Redacted Information per (b)(6), (b)(7)(C):** <br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on detention and medical facility employee names.<br><br>**Reasons for Redaction(s):** <br>The disclosure of the names belonging to detention and medical facility employees that perform services on behalf of ICE in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with providing services to detainees on behalf of ICE; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 428-485 513-535 543-565 | Partial | (b)(6)(b)(7)(C) | **Cibola General Hospital Records including: "Fax Cover Letter," "Emergency Flow Sheet Record," "Cibola General Hospital Emergency Record," "Cibola General Hospital Medication Reconciliation," "Computed Tomography (CT) Patient Questionnaire/Contrast Consent," "Physician Transfer Record," "ED Print," "Cumulative Report," "Radiology Report," "Microbiology Report," "Results Reporting," "All Orders History,"** <br><br> **Redacted Information per (b)(6), (b)(7)(C):** <br> Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the names of medical facility employees. <br><br> **Reasons for Redaction(s):** <br> The disclosure of the names belonging to third-party individuals (non-DHS employees) in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with providing services to detainees on behalf of ICE; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| 2019-ICLI-00053 | 503-504 1523-1524 | Full | (b)(6)(b)(7)(C)[1] | **A two-page DHS form relating to a third-party**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>This document relates to a third-party and as such the entire records was withheld under FOIA Exemptions (b)(6) and (b)(7)(C), as the disclosure of the document itself would provide personally identifiable information.<br><br>**Reasons for Redaction(s):**<br>The disclosure of third-party records in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  This individual has not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 505-508 | Partial | (b)(6)(b)(7)(C) | **Superior Ambulance Service, Inc. Fax Cover Sheet and Medical Flight Record**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the names of Superior Ambulance Service employees |

---

[1] These documents were originally erroneously withheld under FOIA Exemption (b)(3).

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | **Reasons for Redaction(s):**<br>The disclosure of the names and contact information belonging to third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with providing services to detainees on behalf of ICE; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 509-512 | Partial | (b)(6)(b)(7)(C) | **Cibola General Hospital Fax that includes a signature block of an ICE HSC Commander, Transmittal Cover Page, and Memorandum "Release of Information."  The memorandum is an official request from ICE to the Cibola County Correctional Center for a complete copy of Ms. Hernandez' medical records.**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE and medical facility employee names, email addresses, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.

The disclosure of the names and contact information belonging to medical facility personnel and provided services on behalf of ICE in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with providing services to detainees on behalf of ICE; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 575-583 | Partial | (b)(6)(b)(7)(C) | **PHI Air Medical Fax Cover Letter and "Transport Medical Record."**

**Redacted Information per (b)(6), (b)(7)(C):** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the names of PHI Air Medical employees

**Reasons for Redaction(s):**
The disclosure of the names belonging to third-party individuals who provided medical services on behalf of ICE in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with providing services to detainees on behalf of ICE; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 586-591 | Partial | (b)(6)(b)(7)(C)(b)(5) | **Email Titled "RE: HERNANDEZ Detainee Death Review"**

**Redacted Information per (b)(6), (b)(7)(C):**
Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers.

**Reasons for Redaction(s):**
The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. <br><br> **Redacted Information per (b)(5):** <br> FOIA exemption (b)(5) was applied to withhold the information contained in this email that is a draft timeline that was sent from subordinate to superior containing highlighted areas where there  is gaps of information missing and questions relating to the events. <br><br> **Reason for the Redaction(s):** <br> The information contains deliberative material and is withheld per (b)(5) which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. The deliberative process privilege protects the internal deliberations of the government by exempting recommendations, analyses, and discussions undertaken to aid agency decision making.  The privilege also prevents the premature disclosure of proposed policies, serves to avoid public confusion generated by |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | rationales or decisions not ultimately adopted by an agency, and maintains the integrity of agency decision-making processes by encouraging open and candid discussions.  Draft documents, by their nature, are pre-decisional and preliminary versions of what may later become a final document in whole or in part.  Oftentimes draft documents never evolve into a final form; material is withdrawn or discarded during the decision-making process. |
| 2019-ICLI-00053 | 592-593 595-596 | Partial | (b)(6)(b)(7)(C) | **G-391 Form, a Form that identifies the destination and trip information regarding the transportation of detainees.**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on names, , and signatures of ICE employees<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names, and signatures of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| 2019-ICLI-00053 | 601-609 | Partial | (b)(6)(b)(7)(C) | **Email titled "RE: streamlined transfer process Bed Space Requests for Transfer to Cibola from SYS/DOE" that discusses the transfer of several detainees to the Cibola County Correctional Center.**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, office numbers, and phone numbers.<br><br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on third party detainee names and alien numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the name and alien number of  third-party individuals in these records complied for law enforcement purposes could reasonably be expected to |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 610 | Partial | (b)(6)(b)(7)(C) | **Email titled "Updated movement summary for Monday and Tuesday" that discusses the number of detainees that are being moved on different days.**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE and detention facility employee names, email addresses, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names and contact information belonging to detention facility employees that performed services on behalf of ICE in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with providing services to detainees on behalf of ICE; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 616-617 | Partial | (b)(6)(b)(7)(C) | **Investigation Report Form**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the names of detention facility employees.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names of detention facility employees  in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with providing services to detainees on behalf of ICE; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 628-642 | Partial | (b)(6)(b)(7)(C) (b)(7)(E) | **Dallas County Criminal Background Search**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on a third-party name<br><br>**Reasons for Redaction(s):**<br>The disclosure of a third party name in this law enforcement investigation in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(7)(E):**<br>Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were used on law enforcement codes, identifiers, case numbers, and internal domain names that could disclose law enforcement techniques and procedures.<br><br>**Reasons for Redaction(s):**<br>Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of this information could assist third parties in deciphering the meanings of the various law enforcement codes used to access, navigate, and manipulate data within a specific database, and numbers that are assigned to subjects, cases, and events, and could enable an individual to navigate, alter, and/or manipulate law enforcement databases were they to gain access to the system. Disclosure of these techniques and practices in navigating the databases could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. Disclosure of information not commonly known to the public could reasonably be expected to risk circumvention of the law. The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |
| 2019-ICLI-00053 | 652-653 | Partial | (b)(6)(b)(7)(C) | **Handwritten Correctional Facility Log Notes**<br><br>**Redacted Information per (b)(6), (b)(7)(C):** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on detention facility names and initials.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and initials of detention facility employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with providing services to detainees on behalf of ICE; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 674-697 | Partial | (b)(6)(b)(7)(C) | **Creative Corrections Security and Medial Compliance Review**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on CBP, ICE, detention and medical facility employee names.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of CBP and ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.

The disclosure of the names and contact information belonging to detention and medical facility employees that performed services on behalf of ICE in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with providing services to detainees on behalf of ICE; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 704-719 744-759 780-795 801-817 834-850 | Full | (b)(5) (b)(6)(b)(7)(C) | **Drafts of Detainee Death Review**

**Redacted Information per (b)(5)**:
These are initial, non-final drafts of the final Detainee Death Review that was produced and bates stamped - 2019-ICLI-00053.0269 through 2019-ICLI-00053.0292. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | 878-893 901-916 1238-1247 | | | The non-final drafts contain "DRAFT" watermarks and include comment bubbles and track changes.  The non-final draft was withheld pursuant to FOIA Exemption (b)(5) per the deliberative process privilege.<br><br>**Reasons for the Redaction(s):**<br>These drafts are deliberative material and are withheld per (b)(5) which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. The deliberative process privilege protects the internal deliberations of the government by exempting recommendations, analyses, and discussions undertaken to aid agency decision making.  The privilege also prevents the premature disclosure of proposed policies, serves to avoid public confusion generated by rationales or decisions not ultimately adopted by an agency, and maintains the integrity of agency decision-making processes by encouraging open and candid discussions.  Draft documents, by their nature, are pre-decisional and preliminary versions of what may later become a final document in whole or in part.  Oftentimes draft documents never evolve into a final form; material is withdrawn or discarded during the decision-making process.  It is also possible that the process by which a draft evolves into a final document, in and of itself, can be considered deliberative. |
| 2019-ICLI-00053 | 770-771 742-743 899-900 | Full | (b)(5) | **Drafts of Memorandum with Subject "Findings – Death of ICE Detainee Jeffery HERNANDEZ (JICMS #201807481)"**<br><br>**Redacted Information per (b)(5):** |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | These pages are initial, non-final drafts of the Findings – Death of ICE Detainee Jeffery HERNANDEZ (JICMS #201807481) that was produced and bates stamped 2019-ICLI-00053.0320 through 2019-ICLI-00053.0321.  The non-final drafts contain "DRAFT" watermarks and include comment bubbles and track changes.  These non-final drafts were withheld pursuant to FOIA Exemption (b)(5) per the deliberative process privilege. <br><br>**Reasons for the Redaction(s):** <br>These drafts contain deliberative material and is withheld per (b)(5) which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. The deliberative process privilege protects the internal deliberations of the government by exempting recommendations, analyses, and discussions undertaken to aid agency decision making.  The privilege also prevents the premature disclosure of proposed policies, serves to avoid public confusion generated by rationales or decisions not ultimately adopted by an agency, and maintains the integrity of agency decision-making processes by encouraging open and candid discussions.  Draft documents, by their nature, are pre-decisional and preliminary versions of what may later become a final document in whole or in part.  Oftentimes draft documents never evolve into a final form; material is withdrawn or discarded during the decision-making process.  It is also possible that the process by which a draft evolves into a final document, in and of itself, can be considered deliberative. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| 2019-ICLI-00053 | 796 | Partial | (b)(6)(b)(7)(C) (b)(7)(E) | **Email titled "HERNANDEZ call"** <br><br> **Redacted Information per (b)(6), (b)(7)(C):** <br> Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names. <br><br> **Reasons for Redaction(s):** <br> The disclosure of the names of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. <br><br> **Redacted Information per (b)(7)(E):** <br> Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were used on a telephone conference access code. <br><br> **Reasons for Redaction(s):** <br> Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of conference access codes could assist third parties in accessing law enforcement sensitive communications and/or could enable an individual to navigate, alter, and/or evade law enforcement operations should they gain access to these communications.  Further, the codes used to access conference call between law enforcement officers is a law enforcement technique and procedure that is not commonly known.  Disclosure of information not commonly known to the public could reasonably be expected to risk circumvention of the law.  The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities |
| 2019-ICLI-00053 | 857 | Partial | (b)(6)(b)(7)(C) | **Handwritten Note titled "CCCC" that contains notes from interviews with medical facility employees.**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the names of medical facility employees.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names belonging to third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with providing services to detainees on behalf of ICE; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 864-867 | Partial | (b)(6)(b)(7)(C) (b)(7)(E), | **Email titled "RE:  DDR – Executive Summary" that also contains email titled "Re:  Your Friday Get Backs for D1"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers.<br><br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the names and other personally identifiable information of other third-party detainees.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | The disclosure of the names and other personally identifiable information of third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(7)(E):**<br>Partial redactions pursuant to FOIA Exemption (b)(7)(E) were used on law enforcement codes that could disclose law enforcement techniques and procedures.<br><br>**Reasons for Redaction(s):**<br>Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of this information could assist third parties in deciphering the meanings of the various law enforcement codes used to access, navigate, and manipulate data within a specific database and could enable an individual to navigate, alter, and/or manipulate law enforcement databases were they to gain access to the system. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Disclosure of these techniques and practices in navigating the databases could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.  Disclosure of information not commonly known to the public could reasonably be expected to risk circumvention of the law.  The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |
| 2019-ICLI-00053 | 868-869 | Partial | (b)(6)(b)(7)(C)(b)(7)(E) | **Email titled "FW:  HERNANDEZ Detainee Death Review Info Request"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | **Redacted Information per (b)(7)(E):** Partial redactions pursuant to FOIA Exemption (b)(7)(E) were used on a law enforcement internal web address that could disclose law enforcement techniques and procedures. <br><br> **Reasons for Redaction(s):** Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of internal web addresses could assist third parties in accessing law enforcement systems and/or could enable an individual to navigate, alter, and/or manipulate law enforcement databases were they to gain access to the system. Disclosure of information not commonly known to the public could reasonably be expected to risk circumvention of the law.  The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |
| 2019-ICLI-00053 | 870-876 | Partial | (b)(6)(b)(7)(C) | **Email titled "FW:  OMI 2018-03102 Hernandez Rodriguez"** <br><br> **Redacted Information per (b)(6), (b)(7)(C):** Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers. <br><br> Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the New Mexico University Office of the Medical Investigator (NMU OMI) employee names, email addresses, office numbers, and phone numbers. <br><br> **Reasons for Redaction(s):** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of third-party names in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with performing services in regard to the death of Ms. Hernandez; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| 2019-ICLI-00053 | 922-925 | Partial | (b)(6)(b)(7)(C) (b)(7)(E) | **Email titled "RE:  HERNANDEZ Detainee Death Review Info Request"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(7)(E):**<br>Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were used on law enforcement domain names and addresses.<br><br>**Reasons for Redaction(s):**<br>Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of law enforcement domain names and addresses could assist third party individuals to navigate, alter, and/or manipulate law enforcement databases were they to gain access to the system.  Disclosure of information not commonly known to the public could reasonably be expected to risk circumvention of the law.  The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |
| 2019-ICLI-00053 | 940 | Partial | (b)(6)(b)(7)(C) (b)(5) | **Email titled "RE:  FYI" and contains discussions regarding the Detainee Death Report.**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(5):**<br>Redactions pursuant to FOIA Exemptions (b)(5) were applied to recommended edits to the Hernandez Detainee Death Report that are detailed in the email.<br><br>**Reason for the Redaction(s):**<br>This document contains recommended edits and was prepared by OPR ERAU. The information contained in this document is deliberative material and is withheld per (b)(5), which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency documents.  The release of this information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. The deliberative process privilege protects the internal deliberations of the government and with consultations and assistance from external experts by exempting recommendations, analyses, and discussions undertaken to aid agency decision making, specifically here, discussions in furtherance of making legal and policy decisions pertaining to a detainee death. The privilege also prevents the premature disclosure of proposed policies, serves to avoid public confusion generated by rationales or decisions not ultimately adopted by an agency, and maintains the integrity of agency decision-making processes by encouraging open and candid discussions. |
| 2019-ICLI-00053 | 965-971 | Partial | (b)(6)(b)(7)(C) | **Email titled "RE:  OMI 2018-03102 Hernandez Rodriguez"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE and the New Mexico University Office of the Medical Investigator (NMU OMI) employee names, email addresses, office numbers, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6): conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names and contact information belonging to third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with providing services regarding the death of Ms. Hernandez; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 989-995 997-998 | Partial | (b)(6)(b)(7)(C) | **Emails titled "Fw:  Hernandez DDR scheduling," and "Fw:  HERNANDEZ Revision."**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE and detention facility employee names, email addresses, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names and contact information belonging to third-party individuals in these records complied for law enforcement purposes could reasonably |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 1000-1021 | Full | (b)(6)(b)(7)(C) (b)(5) | **Draft of the Creative Corrections Security and Medial Compliance Review**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on CBP, ICE, other law enforcement officers, and detention and medical facility employee names.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names CBP, ICE, and other law enforcement employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names and contact information belonging to detention and medical facility employees  in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with providing services on behalf of ICE; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(5)**:<br>2019-ICLI-00053.1000 through 2019-ICLI-00053.1021 is an initial, non-final draft of the Creative Corrections Security and Medial Compliance Review that was produced and bates stamped 2019-ICLI-00053.0674 through 2019-ICLI-00053.0697.  The non-final draft contains comment bubbles.  The non-final draft was withheld pursuant to FOIA Exemption (b)(5) per the deliberative process privilege.<br><br>**Reasons for the Redaction(s):** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | 2019-ICLI-00053.1000 through 2019-ICLI-00053.1021 contains deliberative material and is withheld per (b)(5) which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. The deliberative process privilege protects the internal deliberations of the government by exempting recommendations, analyses, and discussions undertaken to aid agency decision making.  The privilege also prevents the premature disclosure of proposed policies, serves to avoid public confusion generated by rationales or decisions not ultimately adopted by an agency, and maintains the integrity of agency decision-making processes by encouraging open and candid discussions.  Draft documents, by their nature, are pre-decisional and preliminary versions of what may later become a final document in whole or in part.  Oftentimes draft documents never evolve into a final form; material is withdrawn or discarded during the decision-making process.  It is also possible that the process by which a draft evolves into a final document, in and of itself, can be considered deliberative. |
| 2019-ICLI-00053 | 1036-1038 | Partial | (b)(6)(b)(7)(C)(b)(7)(E)(b)(5) | **Email titled "FW: FYI"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(7)(E):**<br>Partial redactions pursuant to FOIA Exemption (b)(7)(E) were used on the location and operation of cameras within a detention facility.<br><br>**Reasons for Redaction(s):**<br>Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of the location and operations of cameras within a detention facility could enable an individual to navigate, alter, and/or evade law enforcement operations should they gain access to the detention facility. Disclosure of information not commonly known to the public could reasonably be expected to risk circumvention of the law.  The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | **Redacted Information per (b)(5):** Redactions pursuant to FOIA Exemptions (b)(5) were used on recommended edits to the Hernandez Detainee Death Report that are detailed in the email. <br><br> **Reason for the Redaction(s):** This document contains recommended edits prepared the OPR EARU. The information contained in this document is deliberative material and is withheld per (b)(5), which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency documents.  The release of this information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. The deliberative process privilege protects the internal deliberations of the government and with consultations and assistance from external experts by exempting recommendations, analyses, and discussions undertaken to aid agency decision making, specifically here, discussions in furtherance of making legal and policy decisions pertaining to a detainee death. The privilege also prevents the premature disclosure of proposed policies, serves to avoid public confusion generated by rationales or decisions not ultimately adopted by an agency, and maintains the integrity of agency decision-making processes by encouraging open and candid discussions |
| 2019-ICLI-00053 | 1039 | Does Not Exist | | **Bates Number 2019-ICLI-00053.1039 does not exist and was mistakenly accounted for in the November 2019 production release letter.** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| 2019-ICLI-00053 | 1111-1112 | Partial | (b)(6)(b)(7)(C) (b)(7)(E) | **Email titled "FW:  HERNANDEZ Detainee Death Review Info Request"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(7)(E):**<br>Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were used on law enforcement domain names and addresses.<br><br>**Reasons for Redaction(s):**<br>Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of law enforcement domain names and addresses could assist third to navigate, alter, and/or manipulate law enforcement databases were they to gain access to the system.  Disclosure of information not commonly known to the public could reasonably be expected to risk circumvention of the law.  The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |
| 2019-ICLI-00053 | 1113 1495-1502 | Partial | (b)(6)(b)(7)(C)[2] (b)(7)(E) | **Targeting Framework that provides details regarding how Ms. Hernandez was taken into custody and detention.**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on CBP, ICE, and other law enforcement Officer names and login numbers.<br><br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the names of relatives of Ms. Hernandez and their contact information.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names of DHS and other law enforcement names and login numbers in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an |

[2] Portions of these documents were erroneously marked as being withheld under (b)(3).  This information is being withheld under FOIA Exemption (b)(6) and (b)(7)(C).

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.

The disclosure of the names and other personally identifiable information of third-party individuals  in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.

**Redacted Information per (b)(7)(E):**
Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were used on law enforcement domain names and web address, law enforcement case numbers, codes, and identifiers that could disclose law enforcement techniques and procedures.

**Reasons for Redaction(s):** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of codes, identifiers, and case numbers could assist third parties in deciphering the meanings of the codes and/or could enable an individual to navigate, alter, and/or manipulate law enforcement databases were they to gain access to the system.  Further, how law enforcement officers access databases, evaluate cases and perform background checks is a law enforcement technique and procedure that is not commonly known.  Disclosure of information not commonly known to the public could reasonably be expected to risk circumvention of the law.  The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |
| 2019-ICLI-00053 | 1159-1160 | Partial | (b)(7)(E) | **PCQS508 "Person Search" and "Activities for JEFFRY HERNANDEZ (17851616)."  The Person Centric Query Service (PCQS) is an information technology (IT) service that provides United States Citizenship and Immigration Services (USCIS) status verifiers with the ability to submit a single query for all transactions involving an immigrant across a number of connected systems.**<br><br>**Redacted Information per (b)(7)(E):**<br>Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were used on law enforcement domain names and addresses.<br><br>**Reasons for Redaction(s):**<br>Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of law enforcement domain names and addresses could assist third to navigate, alter, and/or manipulate law enforcement databases were they to gain access to the system.  Disclosure of information not commonly known to the public could reasonably be expected to risk circumvention of the law.  The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |
| 2019-ICLI-00053 | 1182-1183 1193-1195 | Full | (b)(6)(b)(7)(C) (b)(7)(E) | **Screen shots from TECS which is a law enforcement information collection, analysis, and sharing environment. TECS collects, maintains, and screens data, as well as conduct analysis, screening, and information sharing. TECS databases contain temporary and permanent enforcement, inspection and intelligence records.**<br><br>**Redacted Information per (b)(6) and (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the names of law enforcement agents accessing TECS and personally identifying numbers assigned to law enforcement agents accessing TECS.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and/or personally identifying number assigned to law enforcement agents in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6)by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; could place them in danger as targets of  law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and disclosure could minimize the ability to effectively conduct future investigations.   The disclosure |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(7)(E):**<br>This page contains exclusively information regarding background investigations and contains law enforcement case numbers, case control numbers, various TECS category codes, and TECS Record ID codes.<br><br>**Reasons for Redaction(s):**<br>Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of this information could assist third parties in deciphering the meanings of the various law enforcement codes used to access, navigate, and manipulate data within a specific database, and various law enforcement numbers assigned to individuals, cases, and events, and could enable an individual to navigate, alter, and/or manipulate law enforcement databases were they to gain access to the system. Disclosure of these techniques and practices in navigating the databases could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.  Disclosure of information not commonly known to the public could reasonably be expected to risk circumvention of the law.  The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| 2019-ICLI-00053 | 1216-1224 1217-1218 | Partial | (b)(6)(b)(7)(C) | **Email titled "RE:  DDR Hernandez"** <br><br> **Redacted Information per (b)(6), (b)(7)(C):** <br> Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers. <br><br> Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on third-party detainee names and other case related information pertaining to detainee deaths. <br><br> **Reasons for Redaction(s):** <br> The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. <br><br> The disclosure of the names and other third party related information in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.  Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 1225-1228 | Partial | (b)(6)(b)(7)(C) | **Email titled "FW:  Your Friday Get Backs for D1"** <br><br> **Redacted Information per (b)(6), (b)(7)(C):** <br> Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers. <br><br> Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on third-party detainee names and other case related information pertaining to other detainee deaths. <br><br> **Reasons for Redaction(s):** <br> The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names and other third party related information in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 1229-1234 | Partial | (b)(6)(b)(7)(C) | **Handwritten interview notes that were taken during OPR's investigation into the detainee death of Roxsana Hernandez.**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the names of ICE employees.<br><br>**Reasons for Redaction(s):** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | The disclosure of the names of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 1248-1250 | Partial | (b)(6)(b)(7)(C)(b)(5) | **Email titled "RE:  OPA Urgent: Accusations transgender detainee suffered abuse in ICE custody prior to death at Cibola"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on employee names, email addresses, and phone numbers of ICE and other DHS employees.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE and other DHS employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(5):**<br>FOIA exemption (b)(5) was applied to withhold the information contained in this email that contains draft statements prepared by the ICE Office of Public Affairs (OPA) regarding the death of Roxsana Hernandez.<br><br>**Reason for the Redaction(s):**<br>The draft statements contained in this email was prepared by OPA and was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. The email is from OPA to ERO leadership regarding draft statements that may be made to the public about the death of Roxsana Hernandez. The proposed statements are entirely deliberative and pre-decisional. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. Further, since this document contains proposals for agency action, release of this document may create confusion regarding what determinations have been made by the agency. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | |
| 2019-ICLI-00053 | 1257-1261 | Partial | (b)(6)(b)(7)(C) | **Memorandum Subject:  Mortality Review – Report of Findings, Jeffry (Roxsana) HERNANDEZ, A206418141"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on employee names and digital signatures of ICE employees.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE and other DHS employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 1262-1265 | Partial | (b)(6)(b)(7)(C) | **Email titled "FW:  HERNANDEZ RODRIGUEZ ROY ALEXANDER / OMI # 2018-03102"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):** |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE and University of New Mexico Office of Medical Investigators employee names, email addresses, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names and contact information belonging to medical facility employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with performing services regarding the death of Ms. Hernandez; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | others. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 1266-1300 | Partial | (b)(6)(b)(7)(C) | **New Mexico University School of Medicine "Death Investigation Report" and "Report of Findings"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the names of UNM OMI employees who conducted the investigation into the death of Roxsana Hernandez.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names of UNM OMI employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| 2019-ICLI-00053 | 1304-1323 | Partial | (b)(6)(b)(7)(C)(b)(5) | **Email titled "FW:  [FOR REVIEW] Additional Detainee Death Reports for ICE.gov"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(5):**<br>These are emails between ERO personnel, ICE Office of the Principal Legal Advisor ("OPLA") attorneys, and the Office of Public Affairs ("OPA") and FOIA exemption (b)(5) was applied to proposed public statements, legal opinions, questions and answers between various ICE personnel and attorneys. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | **Reason for the Redaction(s):** The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email contains (1) edits and recommendations on a proposed public statement from ICE, (2) questions from OPA to ERO to coordinate responses, and (3) recommendations for agency actions.  Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>Additionally, the information in this document is properly withheld under FOIA Exemption (b)(5) because it is attorney-client privileged.  The attorney-client privilege is applicable to the portions of these records. Communications between OPLA and their clients, OPA and ERO, were made for the purpose of securing legal advice regarding ICE's response regarding the death of Roxsana Hernandez.  Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his legal advisor.  The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client.  If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| 2019-ICLI-00053 | 1324-1326 | Partial | (b)(6)(b)(7)(C) | **Email titled "RE:  FYSA – CBP STATEMENT: KOB-TV question – trans migrant dies in ICE custody"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers.<br><br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on third party names and email addresses.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names and contact information of third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by:; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 1327-1338 | Partial | (b)(6)(b)(7)(C)(b)(5) | **Email titled "RE:  OPA Issue: 'NBC Out' asking about May 2018 transgender death of Jeffry 'Roxsana' Hernandez"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers.<br><br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on third party names and email addresses.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names and contact information of third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(5):**<br>FOIA exemption (b)(5) was applied to withhold the information contained in this email that contains draft statements prepared by the ICE Office of Public Affairs (OPA) regarding the death of Roxsana Hernandez.<br><br>**Reason for the Redaction(s):**<br>The draft statements contained in this email was prepared by OPA and was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. The email is from OPA to ERO leadership regarding draft statements that may be |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | made to the public about the death of Roxsana Hernandez.  The proposed statements are entirely deliberative and pre-decisional.  Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.  Further, since this document contains proposals for agency action, release of this document may create confusion regarding what positions have actually been adopted by the agency. |
| 2019-ICLI-00053 | 1339-1341 1342-1344 1345-1367 1388-1389 | Partial | (b)(6)(b)(7)(C) | **Emails titled "RE:  ICE COMMENT RE: Autopsy results of Roxsana Hernandez," "RE:  FYSA: MEDIA QUERY: Roxsana Hernandez death review reports," "RE:  [EXTERNAL] RE: URGENT: NBC News inquiry re: Roxsana/Jeffrey Hernandez," and "FW: Media Inquiry: death report on Roxsana Hernandez"** <br><br> **Redacted Information per (b)(6), (b)(7)(C):** <br> Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers. <br><br> Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on third-party journalist names, email addresses, and phone numbers. <br><br> **Reasons for Redaction(s):** <br> The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names and contact information of third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| 2019-ICLI-00053 | 1368-1377[3] | Partial | (b)(6)(b)(7)(C) (b)(5) | **Email titled "RE:  [FOR REVIEW] Additional Detainee Death Reports for ICE.gov Posting"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(5):** |

---

[3] Please note that on page 2019-ICLI-00053.1369, ICE withheld a paragraph under Exemptions (b)(6)(b)(7)(C), however, the Exemption listed should have be (b)(5).

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | These are emails between ERO personnel, ICE Office of the Principal Legal Advisor ("OPLA") attorneys, and the Office of Public Affairs ("OPA") and FOIA exemption (b)(5) was applied to proposed public statements, legal opinions, questions and answers between various ICE personnel and attorneys.<br><br>**Reason for the Redaction(s):**<br>The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email contains (1) edits and recommendations on a proposed public statement from OPA to ERO to coordinate responses, and (3) recommendations for agency actions.  Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>Additionally, the information in this document is properly withheld under FOIA Exemption (b)(5) because it is attorney-client privileged.  The attorney-client privilege is applicable to the portions of these records. Communications between OPLA and their clients, OPA and ERO, were made for the purpose of securing legal advice regarding ICE's response regarding the death of Roxsana Hernandez.  Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his legal advisor.  The attorney-client privilege |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client.  If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. |
| 2019-ICLI-00053 | 1378-1384 | Partial | (b)(6)(b)(7)(C) (b)(5) | **Email titled "RE:  ICE response to media queries RE: Questions re: death of Roxsana Hernandez Rodriguez"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers.<br><br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on journalist names, email addresses, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | The disclosure of the names and contact information of third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(5):**<br>These are emails between ERO personnel and the Office of Public Affairs ("OPA") and FOIA exemption (b)(5) was applied to proposed public statements, questions and answers between various ICE personnel.<br><br>**Reason for the Redaction(s):**<br>The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email contains (1) edits and recommendations on a proposed public statement from ICE, (2) questions from OPA to ERO to coordinate responses, and (3) recommendations for agency actions. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency. |
| 2019-ICLI-00053 | 1396 | Partial | (b)(6)(b)(7)(C) | **FOIA Request from American Oversight**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the last page containing the FOIA requesters third-party name, email address, and signature.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names, signatures, and contact information of third-party individuals c in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | |
| 2019-ICLI-00053 | 1400-1417 | Partial | (b)(6)(b)(7)(C) | **Email titled "Form submission from: FOIA Request Form"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on third party FOIA requesters names, email addresses, phone numbers, and mailing address.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 1422 | Partial | (b)(6)(b)(7)(C)(b)(5) | **Email titled "Follow-up questions"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers.<br><br>**Reasons for Redaction(s):** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. <br><br> **Redacted Information per (b)(5):** <br> These are emails between ERO personnel and the Office of Public Affairs ("OPA") and FOIA exemption (b)(5) was applied to proposed public statements, questions and answers between various ICE personnel. <br><br> **Reason for the Redaction(s):** <br> The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email contains (1) edits and recommendations on a proposed public statement from ICE, (2) questions from OPA to ERO to coordinate responses, and (3) recommendations for agency actions.  Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency. |
| 2019-ICLI-00053 | 1423-1424 | Partial | (b)(6)(b)(7)(C) (b)(5) | **Email titled "Accusations transgender detainee suffered abuse in ICE custody prior to death at Cibola"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |

99

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | **Redacted Information per (b)(5):** These are emails between ERO personnel and the Office of Public Affairs ("OPA") and FOIA exemption (b)(5) was applied to proposed public statements. **Reason for the Redaction(s):** The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. This email contains (1) edits and recommendations on a proposed public statement from ICE, (2) questions from OPA to ERO to coordinate responses, and (3) recommendations for agency actions. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency. |
| 2019-ICLI-00053 | 1425 | Partial | (b)(6)(b)(7)(C) | **Email titled "FW:  HRC Letter Regarding the Recent Death of Roxsana Hernandez"** **Redacted Information per (b)(6), (b)(7)(C):** Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers. Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the Human Rights Campaign third-party names, email addresses, and phone numbers. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | **Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names and contact information of third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| 2019-ICLI-00053 | 1426-1434 | Partial | (b)(6)(b)(7)(C) (b)(5) | **Email titled "RE:  OPA Issue: 'NBC Out' asking about May 2018 transgender death of Jeffry 'Roxsana' Hernandez"** <br><br> **Redacted Information per (b)(6), (b)(7)(C):** <br> Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers. <br><br> Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on journalist third-party names and email addresses. <br><br> **Reasons for Redaction(s):** <br> The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. <br><br> The disclosure of the names and contact information of third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(5):**<br>FOIA exemption (b)(5) was applied to withhold the information contained in this email that contains draft statements prepared by the ICE Office of Public Affairs (OPA) regarding the death of Roxsana Hernandez.<br><br>**Reason for the Redaction(s):**<br>The draft statements contained in this email was prepared by OPA and was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative. The email is from OPA to ERO leadership regarding draft statements that may be made to the public about the death of Roxsana Hernandez.  The proposed statements are entirely deliberative and pre-decisional.  Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.  Further, since this document contains proposals for agency |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | action, release of this document may create confusion regarding what positions have actually been adopted by the agency. |
| 2019-ICLI-00053 | 1435-1436 | Partial | (b)(6)(b)(7)(C) | **Email titled "RE:  HRC Letter Regarding the Recent Death of Roxsana Hernandez"** **Redacted Information per (b)(6), (b)(7)(C):** Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers. Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on Human Rights Campaign third party names and email addresses. **Redaction(s):** The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. The disclosure of the names and contact information of third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 1437-1440 1446-1449 | Partial | (b)(6)(b)(7)(C) | **Various Office of Public Affairs Daily Close of Business Reports"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names and email addresses.<br><br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on journalist third-party names.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of third-party names in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 1441-1445 | Partial | (b)(6)(b)(7)(C)(b)(5) | **Email titled "FW: For DD Approval: Proposed media tour of Cibola transgender pod June 12"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names and email addresses.<br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. **Redacted Information per (b)(5):** These are emails between ERO personnel and the Office of Public Affairs ("OPA") and FOIA exemption (b)(5) was applied to proposed public statements, questions and answers between various ICE personnel. **Reason for the Redaction(s):** The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative.  This email contains (1) edits and recommendations on a proposed public statement from ICE, (2) questions from OPA to ERO to coordinate responses, and (3) recommendations for agency actions.  Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.  Further, since this document contains proposals for agency action, which may not have been adopted, release of this |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | document may create confusion regarding what positions have actually been adopted by the agency. |
| 2019-ICLI-00053 | 1450 | Partial | (b)(6)(b)(7)(C) | **Email titled "Transgender death"** <br><br> **Redacted Information per (b)(6), (b)(7)(C):** <br> Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names and email addresses. <br><br> Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on third-party journalist names. <br><br> **Reasons for Redaction(s):** <br> The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. <br><br> The disclosure of third-party names in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by:; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 1451-1453 | Partial | (b)(6)(b)(7)(C) | **Email titled "NCTE Demands ICE Release Transgender Detainee"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers.<br><br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the National Center for Transgender Equality employee names, email addresses, and phone numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names and contact information of third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 1454-1455 | Partial | (b)(6)(b)(7)(C) | **Email titled "Why did ICE kill Roxsana Hernandez"**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on ICE employee names, email addresses, and phone numbers.<br><br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on journalist third-party name and email address. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | **Reasons for Redaction(s):**<br>The disclosure of the names and contact information of ICE employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names and contact information of third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| 2019-ICLI-00053 | 1462 | Partial | (b)(6)(b)(7)(C) | **CBP Memo for medical clearance to transport**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on medical employee  names, medical license numbers and DEA numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names and medical numbers of third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 1463-1464 | Partial | (b)(6)(b)(7)(C) | **CBP Detainee Assessment**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on CBP Officer signatures.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the signatures of CBP Officers in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 1465-1467 | Partial | (b)(6)(b)(7)(C)(b)(7)(E) | **Discretionary Authority Checklist for Aline Applicants**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on CBP Officer names and signatures.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names of CBP Officers in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. Further, these individuals have not consented to the release of their PII.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(7)(E):**<br>Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were used on law enforcement case numbers and codes, and identifiers that could disclose law enforcement techniques and procedures.<br><br>**Reasons for Redaction(s):**<br>Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of this information could assist third parties in deciphering the meanings of the various law enforcement codes used to access, navigate, and manipulate data within a specific database, and various law enforcement numbers assigned to individuals, cases, and events, and could enable an individual to navigate, alter, and/or manipulate law enforcement databases were they to gain access to the system. Disclosure of these techniques and practices in navigating the databases could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.  Disclosure of information not commonly known to the public could reasonably be expected to risk circumvention of the law.  The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| 2019-ICLI-00053 | 1544-1554 | Partial | (b)(6)(b)(7)(C) (b)(7)(E) | **Various CBP Printscreens titled "FBI Print Rapsheet Screen," "Candidate," "Encounter History," "Candidate Bio,"**<br><br>**Redacted Information per (b)(6) and (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on CBP and FBI law enforcement officer names and login numbers.<br><br>**Reason for Redaction(s):**<br>The disclosure of the names and login numbers of FBI employees in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; could place them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and disclosure could minimize the ability to effectively conduct future investigations.   The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(7)(E):**<br>Partial redactions pursuant to FOIA Exemptions (b)(7)(E) were used on Subject ID numbers, case numbers, file numbers, FBI numbers, event numbers, codes, and law enforcement domain names and web addresses.<br><br>**Reason for Redaction(s):** |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Exemption (b)(7)(E) was applied to law enforcement sensitive information, the release of which could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of this information could assist third parties in deciphering the meanings of the various law enforcement codes used to access, navigate, and manipulate data within a specific database, and various law enforcement numbers assigned to individuals, cases, and events, and could enable an individual to navigate, alter, and/or manipulate law enforcement databases were they to gain access to the system. Disclosure of these techniques and practices in navigating the databases could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.  Disclosure of information not commonly known to the public could reasonably be expected to risk circumvention of the law.  Further, how law enforcement officers access databases through specific domain names and web addresses is a law enforcement technique and procedure that is not commonly known to the public.  The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |
| 2019-ICLI-00053 | 1556 | Partial | (b)(6)(b)(7)(C) | **CBP Form I-443, Multiple Inspection Referral**<br><br>**Redacted Information per (b)(6) and (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on a CBP officer name.<br><br>**Reason for Redaction(s):**<br>The disclosure of the name of a CBP Officer in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted |

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; could place them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and disclosure could minimize the ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| 2019-ICLI-00053 | 1557-1561[4] 1 Excel Spreadsheet | Partial | (b)(6)(b)(7)(C) | **Typed and Handwritten Interview notes, 1 Excel Spreadsheet titled "Hernandez Mortality Review Presentation Notes"**<br><br>**Redacted Information per (b)(6) and (b)(7)(C):**<br>Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on the names of medical personnel.<br><br>**Reason for Redaction(s):**<br>The disclosure of the names of third-party individuals in these records complied for law enforcement purposes could reasonably be expected to constitute an unwarranted invasion of personal privacy by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; could place them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and disclosure could minimize the ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is |

---

[4] These pages were incorrectly labeled with bates numbers 1544 through 1548, and were released in the May 2020 supplemental production.

*Transgender Law Center v. Immigration and Customs Enforcement*
Civil No.: 1:19-cv-03032
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |