**SHAWN THOMAS MEERKAMPER** (CA Bar No. 296964)
Transgender Law Center
P.O. Box 70976
Oakland, CA, 94612
Phone: (510) 587-9696, ext. 303
Fax: (510) 587-9699
shawn@transgenderlawcenter.org

**R. ANDREW FREE\*** (TN Bar No. 30513)
Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
Phone: (844) 321-3221
Fax: (615) 829-8959
Andrew@ImmigrantCivilRights.com
*\* Admitted Pro Hac Vice*

**KIMBERLY A. EVANS\*** (DE Bar No. 5888)
Grant & Eisenhofer P.A.
123 Justison Street
Wilmington, DE 19801
Phone: (302) 622-7086
Fax: (302) 622-7100
kevans@gelaw.com
*\*Admitted Pro Hac Vice*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRANSGENDER LAW CENTER, and JOLENE K. YOUNGERS, as personal administrator for the wrongful death estate of Roxsana Hernandez, <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; OFFICE FOR CIVIL RIGHTS AND CIVIL LIBERTIES – UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br> *Defendants.* | Civil Action No.: 3:19-cv-03032-SK <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

I.   INTRODUCTION ............................................................................................................ 1

II.  DEFENDANTS' SEARCHES WERE PATENTLY INADEQUATE .............................. 1

  A. DEFENDANTS ARE REQUIRED AND FAILED TO CARRY OUT AN ITERATIVE REVIEW ............................................................................................................... 1

  B. THE CORECIVIC DOCUMENTS SHOW DEFENDANTS' SEARCHES WERE INADEQUATE ...................................................................................................... 3

   1. The Inadequacy of CRCL's Production Is Apparent From the CoreCivic Documents ................................................................................................ 3

   2. The Inadequacy of ICE's Production Is Demonstrated By The CoreCivic Documents ................................................................................................ 4

  C. DEFENDANTS' PRODUCTIONS CONTAIN EXCESSIVE REDACTIONS AND ALSO NUMEROUS WITHHOLDINGS AS EVIDENCED BY THE CORECIVIC DOCUMENTS ........ 5

III. DEFENDANTS' IMPROPERLY APPLIED THE FOIA EXEMPTIONS ....................... 6

  A. DEFENDANTS' VAUGHN INDICES ARE INSUFFICIENT ............................................... 6

  B. DEFENDANTS' DID NOT REASONABLY SEGREGATE NON-EXEMPT INFORMATION BY IMPROPERLY REDACTED NON-EXEMPT INFORMATION ..................................... 6

  C. DEFENDANTS' FAIL TO REASONABLY JUSTIFY DUPLICATES AND NON-RESPONSIVE DESIGNATIONS ..................................................................................................... 8

  D. DEFENDANTS' ALLEGED REDACTION OF NON-PUBLIC EMPLOYEE NAMES IS SUSPECT ............................................................................................................. 9

  E. DEFENDANTS' FAIL TO PROPERLY INVOKE THE DELIBERATIVE PROCESS PRIVILEGE PURSUANT TO EXEMPTION 5 ................................................................................. 10

  F. DEFENDANTS' IMPROPERLY APPLIED EXEMPTION B(7)(E) ................................. 12

IV.  THE COURT MAY CONSIDER PLAINTIFFS' EXPEDITED PROCESSING REQUESTS, TO WHICH PLAINTIFFS ARE ENTITLED ........................................... 12

V.   PLAINTIFFS ARE ENTITLED TO DECLARATORY RELIEF .................................. 14

VI.  CONCLUSION ............................................................................................................... 15

i

Civil Action No.: 3:19-cv-03032-SK     Plaintiffs' Reply in support of Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendants' Motion

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*,
830 F.3d 667 (D.C. Cir. 2016) ..................................................................................................9

*Amnesty Int'l USA v. CIA*,
728 F. Supp. 2d 479 (S.D.N.Y. 2010) .......................................................................................8

*Bloche v. Dept. of Def.*,
370 F.Supp.3d 40 (D.D.C. 2019) ....................................................................................3, 9, 12

*Campbell v. U.S. Dept. of Justice*,
164 F.3d 20 (D.C. Cir. 1998) ....................................................................................................2

*Citizens for Responsibility and Ethics in Washington v. Fed. Elec. Commn.*,
711 F.3d 180 (D.C. Cir. 2013) ................................................................................................15

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) ................................................................................................11

*Conley v. Gibson*,
355 U.S. 41 (1957) ..................................................................................................................13

*Ctr. for Biological Diversity v. Office of Mgmt. and Budget*,
2008 WL 5129417 (N.D. Cal. 2008) ........................................................................................6

*Electronic Privacy Information Center v. Department of Justice*,
15 F. Supp. 3d 32 (D.D.C. 2014) ............................................................................................15

*Families for Freedom v. U.S. Customs & Border Protection*,
837 F. Supp. 2d 287 (S.D.N.Y. 2011) ...........................................................................7, 8, 10

*Gilmore v. U.S. Dept. of Energy*,
33 F. Supp. 2d 1184 (N.D. Cal. 1998) ....................................................................................15

*Hunt v. CIA*,
981 F.2d 1116 (9th Cir. 1992) ..................................................................................................7

*Kimes v. Stone*,
84 F.3d 1121 (9th Cir. 1996) ..................................................................................................13

*Morley v. CIA*,
508 F.3d 1108 (D.C. Cir. 2007) ..............................................................................................12

*Nat'l Immigration Law Ctr. v. U.S. ICE*,
CV-14-9632 PSG, 2015 U.S. Dist. LEXIS 193911 ................................................................11

ii

**Civil Action No.: 3:19-cv-03032-SK**        **Plaintiffs' Reply in support of Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendants' Motion**

*New York v. U.S. DOC*,
    18-CV-2921 (JMF), 2018 U.S. Dist. LEXIS 172468 (S.D.N.Y. Oct. 5, 2018) ...................... 12

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*,
    2015 WL 4452136 (N.D. Cal. Jul. 20, 2015) ............................................................................ 15

*Petroleum Info. Corp. v. U.S. DOI*,
    976 F.2d 1429 (D.C. Cir. 1992) .............................................................................................. 11

*Pinson v. Lappin*,
    806 F. Supp. 2d 230 (D.D.C. 2011) .......................................................................................... 8

*Pub. Justice Found. v. Farm Serv. Agency*,
    No. C 20-01103 WHA, 2020 U.S. Dist. LEXIS 184272 (N.D. Cal. Oct. 5,
    2020) ......................................................................................................................................... 2

*Rosenfeld v. U.S. DOJ*,
    No. c 07-03240 .......................................................................................................................... 9

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
    2008 WL 2523819 (E.D. Cal. Jun. 20, 2008) ......................................................................... 15

*Stevens v. U.S. Dept. of Homeland Security*,
    2020 WL 1701882 (N.D. Ill. Apr. 8, 2020) ......................................................................... 6, 10

*U.S. Dept. of State v. Wash. Post Co.*,
    456 U.S. 595 (1982) ................................................................................................................ 10

*Valencia-Lucana v. U.S. Coast Guard*,
    180 F.3d 321 (D.C. Cir. 1999) .................................................................................................. 1

*Wilbur v. CIA*,
    355 F.3d 675 (D.C. Cir. 2004) .................................................................................................. 3

*Wilson v. U.S. Air Force*,
    2009 U.S. Dist. LEXIS 114702 (E.D. Ky. Dec. 9, 2009) ......................................................... 8

**Statutes**

5 U.S.C. § 552(a)(4)(F)(i) ............................................................................................................. 15

5 U.S.C. § 552(b) ............................................................................................................................ 7

5 U.S.C. § 552(b)(6) ................................................................................................................. 7, 10

5 U.S.C. § 552(b)(7)(C) ............................................................................................................... 10

6 C.F.R. § 5.3(b) ............................................................................................................................. 7

6 C.F.R. § 5.5(e)(1)(iv) ................................................................................................................. 13

iii

**Civil Action No.: 3:19-cv-03032-SK**  **Plaintiffs' Reply in support of Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendants' Motion**

6 C.F.R. § 5.5(e)(2) ................................................................................................................... 13, 14

**Other Authorities**

Fed. R. Civ. P. 1, 8(f) .......................................................................................................................... 13

Fed. R. Civ. P. 56(c)(4) ........................................................................................................................ 9

iv

**Civil Action No.: 3:19-cv-03032-SK**   **Plaintiffs' Reply in support of Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendants' Motion**

# I. INTRODUCTION

In enacting the FOIA, Congress sought to ensure that the public is apprised of the activities of their government and can timely acquire information its agencies possess. To achieve these goals, Congress ensured the FOIA imposed strict and short deadlines, requirements for adequacy of searches and narrowly-construed exemptions for withholdings. Defendants, however, failed to adhere to any of these requirements, and leave Plaintiffs without timely, adequate information almost 1.5 years after Plaintiffs submitted their initial requests for critical information concerning the tragic in-custody death of Roxsana Hernandez. Summary judgment and declaratory relief should be awarded to Plaintiffs to ensure Defendants' compliance with these important laws and to ensure Plaintiffs receive the critical information to which they are entitled under the FOIA.

# II. DEFENDANTS' SEARCHES WERE PATENTLY INADEQUATE

Defendants' searches failed to return all responsive records. The issue before the Court is if these documents prove Defendants' search was inadequate, which is based on what Defendants knew upon completing their searches. As here, where an agency knows about, yet fails to follow, obvious leads that would return additional records, its search is inadequate as a matter of law.

## A. DEFENDANTS ARE REQUIRED AND FAILED TO CARRY OUT AN ITERATIVE REVIEW

Defendants must follow obvious leads to the discovery of responsive documents, also known as an "iterative review." *See Hamdan v. U.S. Dept. of Justice*, 797 F.3d 759, 771 (9th Cir. 2015) ("if a review of the record raises substantial doubt, particularly in view of . . . positive indications of overlooked materials, summary judgment is inappropriate.") (internal quotation omitted); *Valencia-Lucana v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (agencies must "follow through on obvious leads to discover requested documents"). This Court has noted:

> An agency has discretion to conduct a standard search in response to a general request, but it must revise its assessment of what is "reasonable" in a particular case to account for leads that emerge during its inquiry. Consequently, the court evaluates the reasonableness of an agency's search based on what the agency knew at its conclusion rather than what the agency speculated at its inception.

*Pub. Justice Found. v. Farm Serv. Agency*, No. C 20-01103 WHA, 2020 U.S. Dist. LEXIS 184272, at \*6-7 (N.D. Cal. Oct. 5, 2020) (quoting *Campbell v. U.S. Dept. of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998) (agencies determinations no longer tenable upon discovery of documents that could not

be located without an expanded search); *Hamdan*, 797 F.3d at 771). Defendants' search results are thus relevant to this Court's inquiry of adequacy—where search results show obvious indicators of other custodians or excludes large categories of known records, the agency has failed to carry its burden. Here, Plaintiffs' have evidenced Defendants' failure to carry out this iterative process. A comparison of documents produced in this litigation with documents produced by CoreCivic (the "CoreCivic Documents") show: (i) certain categories of documents are excluded from Defendants' production, like records related to Roxsana's root cause analysis ("RCA") and drafts of Roxsana's mortality review, and (ii) a need to search other custodians identified in the CoreCivic Documents. Also, despite the fact that the burden to follow obvious leads is born by Defendants, Plaintiffs repeatedly led Defendants to discover more documents, a fact admitted by Defendants. *See* ECF No. 42 at p. 6 (hereinafter "Defs Opp.") ("defendants followed obvious leads to additional documents *when they reasonably came to defendants' attention*") (emphasis added); *id.* at p. 7 ("defendants worked cooperatively *with plaintiffs ex ante to craft adequate searches*[,]" "when *plaintiffs identified* 13 ICE custodians" and "*when plaintiffs notified ICE*") (emphasis added); *id.* at p. 7, n. 3 (ICE's additional search conducted *at plaintiffs' request* located thousands of pages and resulted in releasing 214 pages of additional records") (emphasis added).

Defendants' allege that an iterative review is "results-oriented" and inappropriate. Defs. Opp. p. 6. To the contrary, it is a process that focuses on the methodology used and asks if Defendants' search methods were likely to locate the majority of responsive documents. In this case, the obvious answer is "no." Defendants' failure to conduct an iterative review until forced to look further at Plaintiffs' behest best evidences Defendants' patently inadequate search. Defendants also allege that Plaintiffs "have cited no law for the proposition that defendants must search all custodial accounts that plaintiffs identify" for their search to be adequate."[1] *Id.* at p. 8. This argument misses the mark. Defendants' duty to search custodial accounts that Plaintiffs identify flows from the reality that these custodians likely possess responsive documents based on obvious leads from documents already produced.

---

[1] Although Defendants' repeatedly allege that Plaintiffs fail to cite case law (Defs. Opp. pp. 1, 8, 16, 23), it is Defendants who carry the burden to support their document productions. *See Bloche*, 370 F. Supp. 3d at 59.

### B. THE CORECIVIC DOCUMENTS SHOW DEFENDANTS' SEARCHES WERE INADEQUATE[2]

Discrepancies between the CoreCivic Documents and Defendants' productions evidence the inadequacy of Defendants' search for responsive documents. Contrary to Defendants' unsupported contention to the contrary,[3] these discrepancies are material as they raise a question of fact warranting against granting summary judgment in Defendants' favor. The CoreCivic Documents plainly show the existence of documents that ICE should have in their possession but did not produce and custodians who likely have relevant documents but who likely were not searched by Defendants. Plaintiffs do not contend, as Defendants try to claim, that Defendants had to find every single responsive document. *Id.* at pp. 9-10. Rather, the inadequacy of Defendants' search when viewed in its totality is supported by the CoreCivic Documents.

#### 1. The Inadequacy of CRCL's Production Is Apparent From the CoreCivic Documents

The CoreCivic Documents evidence that CRCL is likely to have records pertaining to CRCL's site visit to Cibola County Correctional Center ("CCCC") as part of an investigation related to Roxsana's death that were not produced in this action. An adequate search would have produced these documents. Defendants counter that Plaintiffs' example of a missing CRCL document is "not a CRCL email at all." Defs. Opp. p. 10 (referencing ECF Nos. 40-4 & 40-5, at Ex. O (together "Melchert Decl. 1")). CRCL misses the point. The substance of the email along with 3 other email chains, and 7 documents produced by CoreCivic (but not by CRCL), pertain to CRCL's site visit to CCCC (*see* Second Declaration of Dale Melchert, annexed hereto as Attachments 1 & 2, at ¶¶16, 28-29 & Exs. I & J) (hereinafter "Melchert Decl. 2") which CRCL itself confirms. *See* Defs. Opp. at ¶¶12-13; ECF No. 42-3 at ¶¶12-13; ECF No. 42-1 at ¶9 & Ex. A. Despite this uncontroverted fact, CRCL failed to produce any emails, calendar invitations, or information connected to arranging the visit, inter-agency or otherwise, nor any factual findings from its investigation, despite the ongoing nature of Plaintiffs' FOIA request. Melchert Decl. 1 at

---

[2] Although Plaintiffs previously provided the CoreCivic Documents to Defendants, Plaintiffs have now annexed the entirety of the CoreCivic production to the instant briefing. *See* Melchert Decl. 2 at Ex. F.

[3] Defendants cite *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) in support of their assertion that the discrepancies between the CoreCivic Documents and Defendants' production are legally immaterial. Defs. Opp. p. 10. However, *Wilbur* does not address the comparison of document productions to show discrepancies, but instead reiterates the general principal that Defendants are not obligated to uncover every single responsive document. *Id.* at 678.

3

Civil Action No.: 3:19-cv-03032-SK                    Plaintiffs' Reply in support of Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendants' Motion

Ex. B.  This shows CRCL is likely in possession of additional responsive records not yet produced.  In fact, CRCL admits it found 2 additional documents while reviewing the CoreCivic Documents, one of which pertains to this site visit.  Defs. Opp. p. 11.  CRCL also alleges it did not locate one such record until now because it was not loaded on Defendants' system as of April 5, 2019, the date of CRCL's search.  ECF No. 42-3 at p. 4, ¶¶13-14.  Because the CCCC visit occurred on August 13-15, 2019, other documents were also likely loaded after CRCL's April 5, 2019 search date, evidencing a need for CRCL to re-run its searches.  ECF No. 42-3 at p. 4, ¶¶13-14.  As CRCL has not yet done so, its search was inadequate.

### 2. The Inadequacy of ICE's Production Is Demonstrated By The CoreCivic Documents

The CoreCivic Documents similarly evidence inadequacies of ICE's production.  Initially, again due to Plaintiffs' efforts, ICE located additional documents responsive to the FOIA Requests, some of which ICE admits "were not located during ICE's search," which further evidences the inadequacy of Defendants' search.  Defs. Opp. p. 12 (releasing a previously withheld DHS form regarding a Credible Fear Interview and 9 email chains that were not previously located by ICE).  The remaining 3 categories of CoreCivic Documents, as grouped by Defendants, are address in turn below:

- **Documents Not In ICE's Possession**: ICE erroneously categorized documents Plaintiffs provided in their motion as not in ICE's possession. Defs Opp. p. 12; ECF No. 42-1 at ¶9 & Ex. A.  Seven documents pertain to CRCL's aforementioned site visit to CCCC, which CoreCivic's documents show were emailed from ICE employees on DHS letterhead.  Melchert Decl. 2 at ¶¶16-17 & Exs. I & J.  These emails from ICE employees were, likewise, miscategorized by ICE as not in the agency's possession. *Id.* at ¶17 at Ex. J.  ICE's failure to produce them is not because they "originated with third parties" but rather because they failed to adequately search for all responsive records.  Although these records were in fact ICE records, it is also unpersuasive that simply because records are produced by one of ICE's contractors that ICE would not also have a copy of that record. For example, ICE produced a copy of a record from another contractor, LaSalle, but not from CoreCivic or any of the other 3 companies ICE hired to detain and transport Roxsana.  *See id.* at ¶19 & Ex. K.
- **Documents Not Produced:** Contrary to ICE's assertion that it produced all category 2 records, 13 records remain missing from ICE's productions for which ICE has not identified the bates-stamp page range. *See id*. at ¶18 & Ex. H; Defs. Opp. p. 12.
- **Missing Pages:** Contrary to ICE's assertion that no pages are missing from any documents produced (ECF No. 42-1 at Ex. A, p. 1), upon inspection of two such documents' pagination, ICE only produced page 1 out of 2, and fails to provide an explanation for the missing second pages. *See* Melchert Decl. 2 at ¶20 & Ex. L.

Regarding the RCA, Defendants' declarations, all created for and during the course of this litigation, are inappropriate to support their assertion that a RCA was not created.  Defs. Opp. p.

4

13. ICE's own Root Cause Analysis Guide (the "RCA Guide") provides that a Root Cause Analysis Team will be assembled and shall meet and "decide if an RCA is warranted." *See* Melchert Decl. 2 at Ex. M. Therefore, a decision to not create an RCA should have at the very least generated contemporaneous records, including calendar invites and other emails, about this decision, yet no such records were produced. *Id.* at ¶¶23-24 & Ex. M.

### C. DEFENDANTS' PRODUCTIONS CONTAIN EXCESSIVE REDACTIONS AND ALSO NUMEROUS WITHHOLDINGS AS EVIDENCED BY THE CORECIVIC DOCUMENTS

Defendants also allege that Plaintiffs' assertion that most documents produced by Defendants were either redacted or withheld is "both factually incorrect and misleading." Defs. Opp. p. 14. To the contrary, it is Defendants' argument that is misleading. Defendants state that "out of the 158 *pages* produced by CRCL, 118 *pages* were produced in full and no pages were withheld in their entirety." Defs. Opp. p. 14 (emphasis added). While Defendants reference *pages*, Plaintiffs discuss whole documents. Moreover, Plaintiffs have pointed to *documents* that were either partially redacted or fully withheld, including Defendants' redaction of the *entirety* of drafts of both Roxsana's Mortality Review and detainee death review ("DDR"). *See* ECF No. 40 at pp. 19-20 (hereinafter "Pls. CMSJ"); Melchert Decl. 1 at ¶¶48-49, Ex. R & T. Defendants themselves admit that documents were withheld. *Compare* Defs. Opp. p. 14 ("no pages were withheld") *with* Holzer Decl. 1 at Ex. B ("DHS has determined to withhold in full or in part 12 pages"). Moreover, of the 118 pages that Defendants assert were produced in full, 63 pages were non-substantive, *public* documents. *See* Melchert Decl. 2 at ¶34 & Ex. P. Of these 118 pages, 9 pages are a list of pro bono legal service providers and 54 pages are news digests. *Id.* There is only 1 non-public facing document that CRCL produced with no redactions and it is one page. *Id.* 2 at Ex. Q. Also, Defendants did in fact continue to produce documents as recently as August 27, 2020. *See* Defs. Opp. p. 14. While the production on that date was a reproduction of previously released documents, they contained fewer redactions (*i.e.*, new information not previously provided), and therefore in fact constitute a new production.[4] *See* Melchert Decl. 2 at Ex. D.

---

[4] The First Melchert Declaration contains a scrivener's error at Paragraph 20. ECF No. 40 at Attachment #4, ¶20. The last sentence of Paragraph 20 was inadvertently moved; it should have been the second sentence. Plaintiffs admit and agree that Defendant CRCL produced 12 pages of records of the 631 pages identified by the agency on September 30,

5

Civil Action No.: 3:19-cv-03032-SK    Plaintiffs' Reply in support of Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendants' Motion

## III. DEFENDANTS' IMPROPERLY APPLIED THE FOIA EXEMPTIONS

### A. DEFENDANTS' VAUGHN INDICES ARE INSUFFICIENT

Defendants made no effort to tailor their *Vaughn* Indices' explanations to specific documents withheld and use repeated boilerplate language in multiple entries. For example, of the six total entries on CRCL's *Vaughn* Index that invoke the deliberative process privilege ("DPP") Exemption (b)(5), all but one copy-paste the same generic description to support the exemption, despite pertaining to different documents. *See* ECF No. 38-2 at Ex. G; *see Stevens v. U.S. Dept. of Homeland Security*, 2020 WL 1701882, at *9 (N.D. Ill. Apr. 8, 2020). Similarly, for almost every (b)(7)(E) exemption invoked, the same two generic paragraphs (one for URLs) are repeated with minor variations throughout ICE's *Vaughn* Index, and this repeated language does not appear to be used for the same, or variations of the same, document. *See, e.g.*, ECF No. 38-1 at Ex. A, pp. 3, 4, 8, 10, 15, 17, 19, 23, 28, 46, 54, 110; Melchert Decl. 2 at Ex. R. Copy-paste jobs of boilerplate explanations for entries in a *Vaughn* index should be rejected. *See Ctr. for Biological Diversity v. Office of Mgmt. and Budget*, 2008 WL 5129417, *7 (N.D. Cal. 2008).

### B. DEFENDANTS' DID NOT REASONABLY SEGREGATE NON-EXEMPT INFORMATION BY IMPROPERLY REDACTING NON-EXEMPT INFORMATION

Defendants' fail to reasonably segregate information in violation of the FOIA. *See* 5 U.S.C. § 552(b). For example, Defendants withheld email domain names largely pursuant to Exemptions (b)(6) and (b)(7)(C) even though domain names (*i.e.*, "@ice.dhs.gov.") reveal no private information, do not relate to personal, medical or similar files as used in the documents redacted in this action, are not compiled for law enforcement purposes, and the domains are reasonably segregable.[5] *See, e.g.*, Melchert Decl. 2 at Ex. R pp. 1, 7, 8, 10, 11, 13, 14, 17, 19, 65, 66, 68, 72, 77, 78, 79, 113; ECF No. 38-2 at Ex. G. at pp. 1-4. The CoreCivic Documents evidence that Defendants both improperly redacted email domains and otherwise made it impossible to determine whether FOIA Exemptions were appropriately applied. *See* Pls. CMSJ pp. 11-12.

---

2019. These were the first records Plaintiffs received in this action. *See* Melchert Decl. at ¶¶25-26.

[5] Exemption 6 intends to protect "personnel and medical files and similar files" and Exemption (b)(7)(C) intends to protect "records or information compiled for law enforcement purposes" both to avoid any "unwarranted invasion of privacy[,]" neither of which apply to e-mail domain names. 5 U.S.C. § 552(b)(6) & (b)(7)(C); *see also Families for Freedom v. U.S. Customs & Border Protection*, 837 F. Supp. 2d 287, 294 (S.D.N.Y. 2011).

Defendants state they "cannot confirm or deny whether any of the names on Exhibit P to the Melchert Declaration are, in fact, ICE or CRCL employees, because to do so would violate the precise privacy interests that Exemptions (b)(6) and (b)(7)(c) are intended to protect." Defs. Opp. p. 8. Defendants' position contradicts the Department's own FOIA regulations, which place the burden on requestors like Plaintiffs to "include specific information that may assist a component in identifying the requested records, such as the . . . *name*, author, [or] recipient" of a requested record. 6 C.F.R. § 5.3(b). Plaintiffs did more than what the regulations require in directing Defendants to obviously responsive custodians. *See* Melchert Decl. 1 at Ex. D & J; Melchert Decl. 2 at ¶¶4-8, 10-11. Instead of running additional searches, Defendants effectively invoke a *Glomar* response by neither confirming nor denying the existence of records regarding individuals' names. *See generally Hunt v. CIA*, 981 F.2d 1116, 1117 (9th Cir. 1992). But because Defendants invoke neither Exemption 1 nor 3, *Glomar* responses cannot erase the requirement to adequately search by following obvious leads from results of initial searches.

Defendants' argument that email domain names can cause harm to an employee are nonsensical. Defs. Opp. p. 16 (arguing domain names could "increase cyber threats" or "confirm the addresses' legitimacy and increase the threat of cyber-attacks, threats, intimidation, and personal attacks."). In most cases, as here, domain names identify the agency and are unlikely to be reverse-engineered to disclose private information. *Id.* Defendants also contend (Defs. Opp. p. 16) that Plaintiffs "have cited no case law in support of the proposition that email addresses are reasonably segregable information[,]"[6] but, to the contrary, courts have opined that the redaction of domain names is impermissible:

---

[6] Case law cited by Defendants on this point also does not support that domain names are always properly withheld under Exemptions (b)(6) and (b)(7)(C). Defs. Opp. p. 16. *Wilson v. U.S. Air Force*, 2009 U.S. Dist. LEXIS 114702, at *10 (E.D. Ky. Dec. 9, 2009) (plaintiff therein waived his request for the information withheld pursuant to Exemptions (b)(6) and (b)(7)(C)); *Families for Freedom v. U.S. Customs and Border Protect.*, 837 F. Supp. 2d 287, 302 (S.D.N.Y. 2011) (while the court held that email addresses could be withheld, it also ordered the disclosure of all titles and names of offices that appeared in the emails); *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 523 (S.D.N.Y. 2010) (although Court held withholdings were appropriate, the decision is mostly based on the Court's finding that plaintiffs did not make a sufficient showing of the public's interest in the email addresses sought, as plaintiff's therein provided mere conclusory assertions that the public interest favored disclosure); *Pinson v. Lappin*, 806 F. Supp. 2d 230, 234 (D.D.C. 2011) (holding in *dicta* that redaction of emails and telephone numbers was appropriate because the material *was not responsive* and as *plaintiffs were not contesting these withholdings*, instead focusing on plaintiffs' right to recover costs).

7

Civil Action No.: 3:19-cv-03032-SK    Plaintiffs' Reply in support of Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendants' Motion

> Defendants have not even shown how the domain part of a government email address constitutes a "personnel, medical, or similar file" within the meaning of Exemption 6. As Plaintiffs correctly note, email domains do not "refer to a particular individual." Perhaps, in some instances, an email domain could be so unique that it risked revealing the identity of the address holder, but Defendants have not even attempted to make such a showing here. Instead, they merely assert that "Plaintiffs do not cite any law in support of their argument that the domain part of email addresses should be released." This, of course, has it backwards: in FOIA cases, the burden is always on the agency to justify the withholding of requested information. And even if Defendants had established that email domains were "similar files" for purposes of Exemption 6, they have not shown a "substantial privacy interest" that weighs in favor of withholding. Plaintiffs, meanwhile, have provided a reason why the public has an interest in seeing the domains: the domains normally indicate what government agency employs the individual email address holder, and the "public has a right to know which agencies and departments are involved in making different types of decisions.

*Bloche v. Dept. of Def.*, 370 F. Supp. 3d 40, 59 (D.D.C. 2019) (internal citations omitted); *see generally Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 673-676 (D.C. Cir. 2016). Drafts of Roxsana's mortality review and DDR were similarly withheld in their entirety despite the likelihood of reasonably segregable information. *See* Pls. CMSJ pp. 19-20. Defendants' declarations are not entitled to a presumption of good faith, as Plaintiffs have submitted "evidence that contradicts the government's affidavits or establishes bad faith," *Wilson*, 2009 U.S. Dist. LEXIS at *5, and fail to provide sufficiently detailed *Vaughn* Indices to support reasonable segregation. *See Bloche*, 370 F.Supp.3d at 55.

### C. DEFENDANTS FAIL TO REASONABLY JUSTIFY DUPLICATES AND NON-RESPONSIVE DESIGNATIONS

Defendants fail to adequately justify their non-responsive and duplicate determinations. Defendants' declarations do not support that the declarant has personal knowledge of, or was in an adequate supervisory role over, the individuals that designated documents non-responsive or duplicate. Fed. R. Civ. P. 56(c)(4); *see, e.g.*, *Rosenfeld v. U.S. DOJ*, No. c 07-03240 MHP, 2008 U.S. Dist. LEXIS 64620, at *32-33 (N.D. Cal. Aug. 22, 2008) (declarant's "conclusory assertion of personal knowledge" was insufficient as to field office records due to lack of evidence that the declarant directly supervises or has a sufficient level of contact with the field office). Defendants also do not provide any definition of a "non-responsive" document. Moreover, Defendants' respective definitions of a "duplicate" differ, likely leading to inconsistent duplicate

8

determinations by the two agencies. *Compare* ECF No. 42-1 at ¶20 (ICE defines "duplicates" as records that "contain[] no additional information as compared to the original," yet it is unclear what "the original" is) *with* ECF No. 42-2 at ¶12 (CRCL defines duplicates as "identical records to those produced or referred for processing to another component or agency").

### D.   DEFENDANTS' ALLEGED REDACTION OF NON-PUBLIC EMPLOYEE NAMES IS SUSPECT

Defendants are not entitled to wholesale redact names simply because they are of federal employees. Exemption 6 intends to protect "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Similar files" looks to records likely contain the type of personal information that would be in a medical or personnel file. *U.S. Dept. of State v. Wash. Post Co.*, 456 U.S. 595, 601-602 (1982). Exemption 7(C) protects "records or information compiled for law enforcement purposes" which if released "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Similar to Defendants' arguments in this action, *Stevens v. U.S. Dept. of Homeland Security* addressed ICE's wholesale redaction of federal employee names from emails where ICE argued that "the names it redacted are protected because they belong to lower level employees" like "Deputy Chief," "Chief of Staff," "Deputy Field Office Director," or "Senior Advisor." 2020 WL 1701882, at *9 (N.D. Ill. Apr. 8, 2020). The *Stevens* Court rejected ICE's argument, stating Exemption 6 did not permit such redactions where the records at issue where akin to "'mundane interoffice communications that do not contain any detailed personal information.'" *Id.* (quoting *Families for Freedom v. U.S. Customs & Border Prot.*, 837 F. Supp. 2d 287, 301 (S.D.N.Y. 2011)). The *Stevens* Court similarly rejected the application of Exemption 7(C) to employee names, finding ICE failed to link any document to "a specific investigation," rejecting ICE's broad statements that the emails "involve 'the performance of ICE's law enforcement mission'" and were compiled for "the purpose of detaining 'individuals who are in the United States illegally[]'" and ultimately ordered that ICE disclose all redacted names of federal employees on the emails. *Id.* at *10. The exact same ruling is warranted here, as Defendants have failed to identify the requisite privacy concerns or a specific investigation at issue,

1  instead solely redacting names because they are lower level federal employees.  *See* Defs. Opp.
2  pp. 19-20 (generally explaining how ICE redacted names of lower level federal employees as the
3  only justification for application of Exemptions (6) and (7)(C)).

### E. DEFENDANTS FAIL TO PROPERLY INVOKE THE DELIBERATIVE PROCESS PRIVILEGE PURSUANT TO EXEMPTION 5

6  Contrary to Defendants' assertions, draft versions of the DDR and Mortality Review have
7  lost any predecisional status. The Supreme Court in *NLRB v. Sears, Roebuck & Co.* held that "an
8  intra-agency memorandum previously covered by Exemption 5" loses its protected status "if an
9  agency chooses expressly to adopt or incorporate by reference [the memorandum] in what would
10 otherwise be a final opinion." 421 U.S. 132, 149, 161 (1975) (noting the provision exempts "those
11 documents, and only those documents, that are normally privileged in the civil discovery context");
12 *see also Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) ("[E]ven
13 if the document is predecisional at the time it is prepared, it can lose that status if it is adopted,
14 formally or informally, as the agency position on an issue or is used by the agency in its dealings
15 with the public."). Defendants have produced and made public final versions of both documents.
16 *See* Melchert Decl. 1 at Exs. S, U.  Despite this, Defendants have *completely* withheld any drafts
17 of these documents (*see id.* at Exs. R, T) and their *Vaughn* Index provides only repeated, boiler-
18 plate explanations for why the DPP applies.  *See, e.g.*, ECF No. 38-1 at Ex. A, pp. 3; 4; 8; 10; 15;
19 17; 19; 23; 28; 46; 54; 74; 114.  This will not do.  *See Nat'l Immigration Law Ctr. v. U.S. ICE*,
20 CV-14-9632 PSG (MAX), 2015 U.S. Dist. LEXIS 193911, at *30 (ICE's use of "many of the right
21 buzzwords" was insufficient to invoke the DPP).  In light of *NLRB*, Defendants' withholding of
22 entire drafts of the DDR and mortality review means that one must assume that *nothing* from the
23 drafts were incorporated into the final versions for their withholdings to be lawful. Because the
24 final versions prove this highly unlikely, the drafts, or segregable portions, must be produced.
25 Second, draft versions of the DDR and mortality review are not deliberative and are highly
26 likely to contain reasonably segregable non-exempt information that must be released. Defendants
27 overstate the breadth of the DPP in claiming it applies to agency decision making generally.  *See*
28 Defs. Opp. p. 21. Defendants also cite *NLRB* (*see id.*), however, they apparently overlook that

*NLRB* explains that the DPP "properly construed, calls for . . . [']withholding of all papers which reflect the agency's group thinking *in the process of working out its policy and determining what its law shall be.*'" *NLRB*, 421 U.S. at 153 (quoting Davis, The Information Act: A Preliminary Analysis, 34 U. Chi. L. Rev. 761, 797 (1967)) (emphasis added).  Indeed, the law of this and other federal circuits is that the DPP requires that withheld material relate to an agency's policy or legal judgments.  *See, e.g.*, *Petroleum Info. Corp. v. U.S. DOI*, 976 F.2d 1429, 1435 (D.C. Cir. 1992) ("The [DPP], we underscore, is centrally concerned with protecting the process by which policy is formulated."); *Nat'l Wildlife Fed'n*, 861 F.2d at 1116 (the DPP "shields from public disclosure confidential inter-agency memoranda on matters of law or policy).  Defendants have not identified *any* policy or law decision process that they intend to protect with this exemption or otherwise explain how the drafts at issue implicate such policy or legal decision making. *See* ECF No. 38-1. at Ex. A, p. 20. Assuming the withheld drafts are similar to their final versions, Roxsana's DDR and mortality review consist mostly of purely factual information about her medical care—which Defendants must produce because information contained within such drafts is reasonably segregable.  *See Bloche,* 370 F.Supp.3d at 55 ("the [DPP] does not protect documents in their entirety; if the government can segregate and disclose non-privileged factual information within a document, it must.") (internal quotation marks and citation omitted); *Morley v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007) ("Factual material that does not reveal the deliberative process is not protected by this exemption." (*quoting Paisley v. CIA*, 712 F.2d 686, 698 (D.C. Cir. 1983)); Melchert Decl. 1 at Exs. S, U.  Lastly, Defendants appear to argue that draft press statements reflect policy-like deliberations preceding final decision.  *See* Defs. Opp. p. 22.   But while communications deliberations *can* be protected by the DPP, this privilege does not protect *all* such deliberations.  *New York v. U.S. DOC*, 18-CV-2921 (JMF), 2018 U.S. Dist. LEXIS 172468, at *17-18 (S.D.N.Y. Oct. 5, 2018).  Where documents, like the draft press statements at issue, "amount to little more than deliberations over how to spin a prior decision, or merely reflect an effort to ensure that an agency's statement is consistent with its prior decision, protection would do little to advance the purposes underlying the privilege." *Id.* at *18.  Defendants have not made the necessary showing that the draft press statements "'are of a nature that they would reveal the

11

deliberative process underlying a *not-yet-finalized* policy decision,' including the very decision about what 'message' to deliver." *Id.* at *19 (quoting *Citizens Union of City of N.Y. v. Attorney Gen. of N.Y.*, 269 F. Supp. 3d 124, 164 (S.D.N.Y. 2017).

### F. DEFENDANTS' IMPROPERLY APPLIED EXEMPTION B(7)(E)

A comparison of the records produced both by ICE and CoreCivic reveals how ICE improperly invoked the (b)(7)(e) exemption. Another example of ICE's improper redactions pursuant to Exemption (b)(7)(e), which is generally meant to protect techniques and procedures for law enforcement investigations, is the transcript of Roxsana's credible fear interview. Although produced by both ICE and CoreCivic, ICE redacted Roxsana's response to the question of why she left her home country, which is actually revealed in CoreCivic's document: "I left because my life was threatened by the Maras gang. A group of Maras raped and tried to kill me I was afraid for my life and left Honduras."  Melchert Decl. 2 at Ex. O.  ICE's *Vaughn* Index neither includes nor explains this redaction, it is simply omitted (*see id.* at Ex. R pp. 16-18), and the *Vaughn* Index entry attempting to address this redaction also justifies withholding another 66 pages of documents. *Id.*  The lack of justification for this improper redaction calls into question ICE's other (b)(7)(e) redactions. *See generally* Pls. CMSJ pp. 20-22.

## IV. THE COURT MAY CONSIDER PLAINTIFFS' EXPEDITED PROCESSING REQUESTS, TO WHICH PLAINTIFFS ARE ENTITLED

Requests for expedited processing can be made **"*at any time*."**  6 C.F.R. § 5.5(e)(2) (emphasis added).  Both the August 17, 2020 and the January 2020 Requests (the "Expedited Requests") are encompassed in the Complaint's allegations.  Pleadings should be liberally construed in favor of the pleader. *See* FRCP Rule 1, 8(f); *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957); *Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996).  A liberal reading of the Complaint encompasses Defendants' denial of both Expedited Requests.  The Complaint alleges Defendants committed unlawful withholdings in violation of the FOIA, and the unlawful withholdings include the improper denial of both Expedited Requests as it remains uncontroverted by Defendants that Roxsana's death is a matter of widespread public concern. *See* ECF. No. 1 at ¶¶58-61, 63-67; 69-72; 6 C.F.R. § 5.5(e)(1)(iv).  Moreover, both Expedited Requests concern the January 2019 and

February 2019 FOIA Requests which form the basis of the Complaint. *See generally*, ECF No. 1. Defendants were therefore on notice of these claims. Plaintiffs also explicitly told Defendants that they would appeal the denial of the August 17, 2020 request. *See* Melchert Decl. 1 at Ex. J. Defendants remaining objections to the August 17, 2020 expedited processing request are incorrect and misleading. Defendants are well-aware that the August 17, 2020 request was not a *new* FOIA request (Defs Opp. p. 3), but rather a request to expedite the processing of Plaintiffs' January 2019 and February 2019 FOIA Requests, which are the basis of this action. In making this request, Plaintiffs' both stated they sought expedited processing of the FOIA Requests, and cited statutory provisions regarding expedited processing of *submitted* FOIA requests. *See* Melchert Decl. 1 at Ex. J. Plaintiffs also told Defendants that their response would be treated as a denial:

> Thanks for your response. Plaintiffs will treat it as a denial. Though the agency hasn't triggered our duty to appeal it by informing us of our right to do so, we hereby administratively appeal the denial. Please let us [know] if we can agree that the appeal is futile, and treat it as fully exhausted and ready for judicial review."
> Melchert Decl. 1 at Ex. J.

Defendants never responded as required by the FOIA. Melchert Decl. 2 at ¶11. Defendants also incorrectly label the August 17, 2020 request as "demanding new, expedited searches." Defs. Opp. p. 3. This is misleading. The August 17, 2020 communication clearly states that Plaintiffs "request expediting processing of their requests[,]" in reference to the January 2019 and February 2019 FOIA requests and goes on to explain why expedited processing is warranted. Melchert Decl. 1 at Ex. J. That same communication separately requests that Defendants "*retask* custodians to conduct an adequate search, and expeditiously process all additional documents that such searches return" and "*re-process* all previously produced emails and records" to release additional information. *Id.* (emphasis added). Defendants conflate Plaintiffs' expedited processing request of the FOIA Requests with Plaintiffs' separate but additional requests to re-task and re-process.

Defendants also contend that Plaintiffs have not exhausted all administrative remedies because the August 17, 2020 request was not properly submitted. Defs. Opp. p. 3-4. This argument is irrelevant. The FOIA specifically mandates that "[a] component that receives a misdirected request for expedited processing under the standard set forth in paragraph (e)(1)(iv) of this section shall forward it immediately to the DHS Senior Director of FOIA Operations, the

13

Privacy Office, for determination." 6 C.F.R. § 5.5(e)(2). All cover letters from Defendants' productions include the citation to this case and direct Plaintiffs to communicate with counsel for Defendants, thus Plaintiffs accordingly directed the August 17, 2020 expedited processing request to Defendants' counsel. *See* Melchert Decl. 2 at Ex. E; Melchert Decl. 1 at Ex. J. Thus, the August 17, 2020 expedited processing request was sufficient to trigger review of that request. Defendants lastly allege that Plaintiffs' August 17, 2020 expediting processing request is now "moot" because Defendants *unilaterally determined* that their belated and inadequate responses to the FOIA Requests are complete. This self-serving argument should be rejected. The Court is currently determining this exact issue which is at the heart of both parties' motions for summary judgment— *i.e.*, the adequacy of Defendants' search. Both Expedited Processing requests are thus ripe for adjudication.

## V.   PLAINTIFFS ARE ENTITLED TO DECLARATORY RELIEF

Plaintiffs are entitled to a declaratory judgment that Defendants violated the FOIA's deadlines and failed to make documents "promptly available."[7] *See Gilmore v. U.S. Dept. of Energy*, 33 F. Supp. 2d 1184, 1185, 1189 (N.D. Cal. 1998) (holding agency's failure to process FOIA request in a timely manner was itself an injury); *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 2015 WL 4452136 at *8 (N.D. Cal. Jul. 20, 2015) ("[T]he [agencies'] failure to comply with the FOIA's time limits is, by itself, a violation of the FOIA."); *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 2008 WL 2523819 at *5 (E.D. Cal. Jun. 20, 2008) (same). Defendants have not met FOIA's deadlines, nor have they made documents "promptly available"— *almost 1.5 years passed* since the FOIA Requests were submitted, Defendants' productions came months after the statutory deadline and did not even begin until this action was initiated. *See* Pls. CMSJ pp. 6-8; Melchert Decl. 2 at ¶¶9-12. Plaintiffs' are thus entitled to declaratory relief.[8]

---

[7] Contrary to Defendants' assertion that declaratory relief serves no purpose in the instant action (Defs. Opp. p. 24), in fact, a declaratory judgment in Plaintiffs' favor allows Plaintiffs to refer this matter to Special Counsel, which referral requires written findings. *See* 5 U.S.C. § 552(a)(4)(F)(i).

[8] The cases cited by Defendants to oppose Plaintiffs' request for declaratory relief are inapposite. *See* Defs. Opp. p. 24. *Citizens for Responsibility and Ethics in Washington v. Fed. Elec. Commn.*, 711 F.3d 180 (D.C. Cir. 2013), concerns the exhaustion of administrative remedies before a Plaintiff can litigate a FOIA request, and the portion cited by Defendants pertains to the fact that an agency cannot rely on the administrative exhaustion requirement to block a

## VI. CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Court should GRANT Plaintiffs' Cross-Motion for Summary Judgment in its entirety, DENY Defendants' Motion for Summary Judgment in its entirety, ENJOIN Defendants improper withholdings in violation of the Freedom of Information Act, DECLARE that Defendants violated the mandatory timing requirements of the FOIA, and grant such other and further relief as the Court deems appropriate.

Date: October 19, 2020                                Respectfully submitted,

  /S/ *R. Andrew Free*  
R. Andrew. Free  
(TN Bar No. 30513)  
Law Office of R. Andrew Free  
P.O. Box 90568  
Nashville, TN 37209  
Phone: (844) 321-3221  
Fax: (615) 829-8959  
Andrew@ImmigrantCivilRights.com  
*\* Admitted Pro Hac Vice*

Shawn Thomas Meerkamper  
(CA Bar No. 296964)  
Transgender Law Center  
P.O. Box 70976  
Oakland, CA, 94612  
Phone: (510) 587-9696, ext. 303  
Fax: (510) 587-9699  
shawn@transgenderlawcenter.org

Kimberly A. Evans  
Grant & Eisenhofer P.A.  
123 Justison Street  
Wilmington, DE 19801  
Phone: (302) 622-7086  
Fax: (302) 622-7100  
kevans@gelaw.com  
*\*Admitted Pro Hac Vice*

*Counsel for the Plaintiffs*

---

plaintiff from initiating an action in court, and at no point discusses declaratory relief. *Id.* at 188-190. *Electronic Privacy Information Center v. Department of Justice*, 15 F. Supp. 3d 32 (D.D.C. 2014), found that the plaintiff therein could not recover *injunctive* relief simply by the agency's failure to adhere to the FOIA timelines, when that plaintiff moved for a preliminary injunction simultaneously with the filing of plaintiff's complaint. *Id.*

15

**Civil Action No.: 3:19-cv-03032-SK**      **Plaintiffs' Reply in support of Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendants' Motion**